IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Sonrai Systems, LLC, and<br>Advanced Custom Engineered Systems &<br>Equipment Co.<br><br>     Plaintiffs,<br>v.<br><br>Anthony M. Romano, Geotab, Inc., Assured<br>Telematics, Inc. and John Does 1-10,<br><br>     Defendants. | Civil No. 1:16-cv-3371<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs, Sonrai Systems, LLC ("Sonrai") and Advanced Custom Engineered Systems & Equipment Co., ("ACES") (collectively, "Plaintiffs"), for their Complaint against Anthony M. Romano ("Romano"), Geotab, Inc. ("Geotab"), Assured Telematics, Inc. ("ATI") (collectively, "Defendants"), state as follows:

### SUMMARY OF CLAIMS

1. This case is about trust and betrayal. The centerpiece is a secret collaboration between Plaintiffs' key executive and at least two of their business partners to use Plaintiffs' confidential information and trade secrets. In addition, Defendants collaborated to divert actual and prospective opportunities from Plaintiffs and to create a competing product. The unlawful activities were perpetrated over the course of at least a year while Romano worked for Plaintiffs.

2. Plaintiffs have asserted claims against Romano for: (1) misappropriation of trade secrets under the Illinois Uniform Trade Secret Act. 765 ILCS 1065/1 *et. seq.*; (2) breach of contract; (3) breach of fiduciary duty; (4) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a); and (5) unjust enrichment. Plaintiffs have asserted claims against Geotab for

(1) misappropriation of trade secrets under the Illinois Uniform Trade Secret Act. 765 ILCS 1065/1 *et. seq.*; (2) breach of contract; (3) tortious interference with contractual relations; and (4) unjust enrichment. Plaintiffs have asserted claims against ATI for: (1) tortious interference with contractual relations; (2) misappropriation of trade secrets under the Illinois Uniform Trade Secret Act. 765 ILCS 1065/1 *et. seq.*; and (3) unjust enrichment.

## THE PARTIES

3.      ACES is a Illinois corporation having a place of business located at 25W102 Ramm Drive, Naperville, IL 60564. ACES is an innovative designer and developer of systems and methods for monitoring mobile fleet applications such as waste service fulfillment events. ACES holds dozens of patents and patent applications, as well as a multitude of confidential and proprietary designs related to waste management, mobile tracking systems and similar technologies. ACES also owns numerous trade secrets relating to vehicle information systems, as well as automated data collection systems relaying truck chasis data and body data.

4.      Sonrai is an Illinois limited liability company with its principal place of business located at 25W102 Ramm Drive, Naperville, IL 60564; its members are all Illinois residents. Sonrai is an information technology company with extensive experience in the equipment manufacturing, waste collection and management industries.

5.      Romano is a resident of the state of Pennsylvania with an address at 343 Strathmore Rd., Havertown, Pennsylvania, 19083-3733.

6.      Geotab is a corporation organized under the laws of Ontario, Canada with its principal place of business at 1075 North Service Road West, Unit 21, Oakville, Ontario, L6M2G2, Canada.

7.      ATI is a Massachusetts corporation with its principal place of business at 64 Windsor Drive, Milton, MA 02186.

8.     Defendants John Does 1-10 are individuals and/or corporations that have participated in one or more of the claims asserted in this case or participated in acts derived from the same set of operative facts that pertain to the claims asserted in this case.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as this is an action regarding a dispute between parties of different states (in the case of Defendants Romano and ATI) or countries (in the case of Defendant Geotab), and the amount in dispute exceeds $75,000.00.  Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.  Venue is also proper under § 1391(b)(1) for **D**efendant, Geotab since it is not resident in the United States.

10.     This Court has personal jurisdiction over Romano.  Romano was an employee of Plaintiffs since 2006.  During the course of his employment, Romano made frequent visits to the State of Illinois in this District to regularly conduct business activities.  Romano has committed tortious acts in Illinois and this District.  Romano's wrongful conduct arises out of and is related to the business he has transacted and the tortious acts he has committed within this state and district.

11.     This Court has personal jurisdiction over ATI.  ATI has visited the State of Illinois and this District to conduct business.  For example, in January 2016, ATI attended a business event in this District, a Waste Management tradeshow, at which time it met with Plaintiffs.  ATI also advertises in Illinois, thorough, among other activities, advertising on sanitation equipment.  ATI transacts business with Plaintiffs in this district and has committed tortious acts in Illinois in this District.  ATI's wrongful conduct arises out of and is related to the business it has transacted and the tortious acts it has committed within this state and district.

12.     This Court has personal jurisdiction over Geotab.  Geotab advertises in Illinois, through among other activities, advertising its company on sanitation equipment. Geotab transacts business with Plaintiffs in this district and has committed tortious acts in Illinois in this District.  Geotab's wrongful conduct arises out of and is related to the business it has transacted and the tortious acts it has committed within this state and district.

### Background

13.     Sonrai has developed its exclusive "Event Validation System," and various intellectual property rights related to this system are owned by ACES. Among other things, the event validation system establishes a computer based visual confirmation that waste hauling service has been completed in real-time on a satellite map to be viewed by the waste hauling truck fleet operator. This gives the fleet operator benefits in the areas of transit visibility, work order management, dispatch operations, route optimizing and tracking, and inventory asset optimization, among other benefits.

14.     As part of this Event Validation System solution, Sonrai causes to be delivered certain hardware for use in its system, such as a small form-factor device sold by Defendant Geotab that simply plugs directly a port in the truck.  Sonrai has provided such hardware through its exclusive reseller Assured Telematics, Inc. ("ATI") and Plaintiffs' software solution is hosted on servers maintained by Geotab.

15.     Sonrai's work in the area of Event Validation Systems has been noted in the industry.  As reported in Forbes magazine, Sonrai's work made it one of the recipients of the Sustainability Partnership Game Changer Award for "a strategic plan of sustainable partnerships that would modernize waste and recyclables collection for the 21st century."

### Identification of Trade Secrets

16.     The "Trade Secret Technology" as used in the Complaint relates to confidential marketing and sales information, and confidential information relating to specific customers as well as further technical trade secrets corresponding to service fulfillment software interface developed for use with GPS tracking devices and all similar materials, and confidential information pertaining to ACES and Sonrai which include, by way of example, product details, company information, operational data, information systems maintained in confidence:

- Collection of Truck Operational Data. Complete Visibility to All Collection and Truck Events;

- Queue-Based Messaging Architecture;

- Queue-Based Architecture Technology Considerations;

- Standards-Based Web Services & Technology Considerations;

- Continuous Capture of Events;

- Real-time Events Streams and Decision Making;

- Reliable, Robust and Scalable Architecture;

- Real-time Web Services for Data Inquiries;

- Historical and Aggregate Data Analysis;

- Internal Data Architecture;

- Data Delivery Architecture;

- Lift Event Logic and Service;

- Vehicle Warning Logic and Service;

- Vehicle Status Information; and

- Asset Definition.

17.     The "Trade Secret Technology" constitutes trade secrets under the Illinois Uniform Trade Secret at 765 ILCS 1065/1, *et. seq.*  The actual Trade Secret Technology is confidential and maintained in secret.

### The Employment of Romano

18.     Beginning in 2006, Defendant Romano worked for Plaintiffs out of Plaintiffs' offices in this district.  He received regular paychecks from ACES as well as other compensation from ACES and Sonrai, and he was given the title of Vice President for Sonrai.  In addition to the compensation and his title, Romano was also given the use of company laptop and a company phone.

19.     On or about May 10, 2006, Romano entered into a "Confidential Information and Non-Competition Agreement" with ACES (Exhibit A) as well as an "Electronic Access Policy" ("EAP") (Exhibit B).  As part of the NDA and EAP, Romano acknowledged that he would be provided access to and would be entrusted with Trade Secret Technology and other confidential information of Plaintiffs.  Romano agreed to maintain all the Trade Secret Technology and other confidential information secret and recognized that Plaintiffs will suffer immediate and irreparable harm, loss and damage not adequately compensated by monetary damages if employee divulges the confidential information to any person or entity.

20.     The Trade Secret Technology and other confidential information that Plaintiffs made to Romano, which are the subject of this lawsuit, were all done pursuant to the NDA and EAP.  Specifically, Plaintiffs made available to Romano disclosures of confidential marketing and sales information, and confidential information relating to specific customers as well as further Technical Trade Secrets corresponding to its service fulfillment software interface developed for use with stock GPS tracking devices, such as those sold by Defendant, Geotab.

21.     Under the Electronic Access Policy, Romano agreed that the all information created, sent or received – including all e-mail messages and electronic files on Plaintiffs' laptop and cellphone given to him to use on behalf of Plaintiffs– is the property of Plaintiffs.

**Romano Schemes to Build His Own Business with Plaintiffs' Assets**

22.     Beginning in 2014, Romano developed a plan to personally leverage and exploit Plaintiffs' assets; specifically, Plaintiffs' technology, customers, contacts and other trade secret and proprietary information.

23.     As part of that scheme, Romano planned to demand an ownership interest in Sonrai, and if that demand were unsuccessful, Romano would build his own business – independently or with Sonrai competitors – using Plaintiffs' assets.  At all times, Romano kept his activities secret from Plaintiffs, and pretended to be conducting business on their behalf.

**Romano and Progressive**

24.     In the course of his duties for Plaintiffs, in May of 2014, Romano learned of a Request for Information that was issued to Progressive Waste Solutions ("Progressive") seeking in-vehicle system and back office operations solutions.  The details of the request – and Sonrai's response to it – contained confidential information that was not intended for any other purpose. On May 21st, Romano sent a copy of the Progressive bid request to Dover ESG (the Environmental Solutions Group, a subsidiary of the Dover Corporation) in an email entitled "Black Ops."  Romano did not inform Plaintiffs about this disclosure, which is particularly disturbing given that Dover is not just a potential customer but also a competitor.  Plaintiffs recovered this message from the company laptop used by Romano.  Romano was not authorized to send such confidential information about the dealings between Plaintiffs and Progressive to Dover ESG.

25.     Sonrai's bid for placement of its technology with Progressive in response to the RFI was successful, as it installed and tested hundreds of units in Progressive trucks across nine different locations over the following year.

26.     On October 18, 2015, Romano made a presentation and contract proposal to Progressive on behalf of Sonrai to provide the ongoing servicing of Progressive's fleet of trucks using the Trade Secret Technology.    Sonrai had successfully placed and tested equipment utilizing the Trade Secret Technology and other confidential information.    Plaintiffs later came to understand that Progressive's senior management had approved of the proposal.

27.     Until at least February 11, 2016, Romano worked in concert with his daughter Sara Romano (at that time still working for Plaintiffs) to disrupt Sonrai's relationship with Progressive.    Specifically, Romano colluded with his daughter to alter or misuse certain aspects of Sonrai's software interface to display inaccurate customer reports.    That same day, Romano contacted a Progressive executive, Chuck Palmer, to induce Progressive to move the servicing and support program moved from Sonrai to a supplier recommended by Geotab, Plaintiffs' purported business partner.

**Romano Colludes with Geotab**

28.     Geotab provides software and hardware that relate to the Trade Secret Technology.

29.     Romano was working with Progressive to provide services in connection with taking that business away from Sonrai and to a supplier of Geotab's choice.    Romano stated that he had "[l]anded a whale.    Progressive waste is interested in securing my services."

30.     On March 2, 2016, Progressive, through Palmer, wrote Geotab stating that Progressive's units were all being moved over to a "recommended Geotab supplier." Progressive also noted that Geotab had granted Progressive "Admin" access to assist Progressive

in reaching their conclusion to switch to a supplier recommended by Geotab. In so doing, Geotab made available confidential information (data related to other Sonrai customers, including user interfaces and displayed information enabled by the Sonrai server controlled by Geotab.) However, Geotab had a Confidential Information Agreement with Sonrai that precluded access to such information. As that agreement states, "[i]f one of us receives Information, we must hold it in trust and in confidence." Geotab did not seek permission from Plaintiffs to disclose Sonrai's confidential customer information that resulted from the "Admin" access it provided to Progressive.

31.     Geotab has used Sonrai's trade secret technology and confidential information.

**Romano Colludes With ATI**

32.     ATI is in the business of reselling products such as the Geotab device and associated software applications. ATI sells products that incorporate the Trade Secret Technology and other confidential information in the Geotab devices and software applications. The products and software sold by ATI have a component which is paid to Sonrai to address use of the Trade Secret Technology and other confidential information. The proceeds received by ATI are distributed to Geotab and Sonrai.

33.     Romano worked for, cooperated with and assisted ATI and Geotab in promoting the Geotab product including the Trade Secret Technology. Further, Romano colluded with ATI to sell the Geotab product including the Trade Secret Technology to various companies. For instance, Romano used ATI quotes (outside of Sonrai's invoicing systems) to solicit actual and/or prospective clients, including Big Truck Rental.

34.     ATI has not reimbursed nor properly distributed to Plaintiffs the proceeds from the sale of Geotab products including the Trade Secret Technology.

**Romano's Bid for an Ownership Stake Fails, So He Resigns and Destroys Evidence**

35.     In December, 2015 Romano made a series of demands that he be given a partial ownership stake in Sonrai.  Specifically, on December 7, 2015 and continuing thereafter, Romano made several demands for a 20% ownership stake in Sonrai.  Sonrai responded by stating that it was open to discussing options, but when an offer of ownership was not forthcoming, Romano became combative.

36.     Romano eventually issued an ultimatum that he would resign if he was not given an ownership stake.  When Sonrai did not accede, Romano resigned on January 11, 2016.

37.     When Romano resigned, he did not return Sonrai's laptop and cellphone. Accordingly, on February 6, 2016, Plaintiffs wrote Romano demanding return of the laptop and cellphone, as well as the refund of money which had been advanced by Plaintiffs to Romano.

38.     On February 11, 2016, Romano returned the laptop, though it appeared to have been "wiped" of the information which, according to the "Electronic Access Policy" was owned by Plaintiffs.

39.     After reacquiring the laptop and cellphone from Romano, Plaintiffs hired computer forensic experts to recover the information that had been "wiped."   During that process, Plaintiffs learned that prior to deleting the laptop hard drive, from October 16, 2015 through February 11, 2016, Romano had backed-up the hard drive on his separate backup devices.

40.     Recovered information from Romano's laptop included text messages stating:

- "Should I scrub the phone."

- "I'm [f*******] killing myself to clean this machine and get it to the Philly Airport by 9 o'clock.  How much does our position lessen if you have it by Friday."

- "I just feel myself in a panic and scrambling to get this done."

41. This and other evidence demonstrates a concerted effort to destroy information and evidence relating to Plaintiff's confidential information and the subject matter of this litigation.

42. The recovered information from Romano's laptop also demonstrates that he disclosed the Trade Secret Technology and other confidential information, including confidential marketing efforts and confidential technical information to third parties.

43. Despite repeated requests for the return of the confidential information taken and stored on Romano's backup drives, Romano has failed to return the information or to identify who have been the targets or recipients of Plaintiffs' confidential information.

## COUNT I

### Trade Secret Misappropriation (Against Romano)

44. Plaintiffs re-allege and incorporate Paragraphs 1 through 43 of this Complaint as though fully set forth herein.

45. The Trade Secret Technology and other confidential information, set forth individually and collectively preceding paragraphs of this Complaint, are statutory "trade secrets" protected by the Illinois Trade Secrets Act, 765 ICLS 1065/1 et. seq.

46. As described above, Defendants were provided confidential access to such trade secret information through its access to the Trade Secret Technology and other confidential information. The proprietary business and technical information of Plaintiff, i.e., the Trade Secret Technology that Defendants accessed constitutes trade secrets because Plaintiff, as described herein, derived independent economic value from that information and keeping that information secret; such information is not generally known nor readily ascertainable by proper means from other persons who can obtain economic value from its disclosure or use; and because the information was the

subject of reasonable efforts to maintain its secrecy, by Plaintiffs. The Trade Secret Technology described herein is not and was not generally known to Plaintiff's competitors in the industry.

47.     ACES and Sonrai's Trade Secret Technology and confidential information were generally not known or readily accessible and were maintained in confidence by Plaintiffs. Plaintiffs derived independent economic value from keeping this Trade Secret Technology and confidential information in confidence, which it had developed over years of substantial time, effort, expense, and research.

48.     At all times, Plaintiffs took reasonable steps to maintain the confidentiality of their trade secrets, and they required Romano to sign the "Confidential Information and Non-Competition Agreement" prior to the disclosure of its trade secrets.

49.     Romano misappropriated Plaintiffs' Trade Secret Technology and other confidential information by at least sending them without authorization to ESG and ATI. Further, Romano misappropriated Plaintiffs' Trade Secret Technology and other confidential information by using it to induce Progressive to switch from Sonrai as a software service supplier.

50.     Romano's misappropriation of the Trade Secret Technology and other confidential information has been willful and malicious and entitled Plaintiffs to exemplary damages and an award of attorneys' fees and costs pursuant to Illinois Trade Secret Act 765 ILCS 1065/1 *et. seq.*

51.     Plaintiffs are also entitled to injunctive relief to prevent the threatened or actual misappropriation of the Trade Secret Technology and other confidential information by Defendants pursuant to the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et. seq.*

52.     Plaintiffs have sustained and will continue to sustain damages, in an amount to be proven at trial, as a direct result of Romano's misappropriation of the Trade Secret Technology and other confidential information.

## COUNT II

### Breach of Contract (Against Romano)

53.     Plaintiffs re-allege and incorporate Paragraphs 1 through 52 of this Complaint as though fully set forth herein.

54.     The parties' Confidential Information and Non-Competition Agreement define the term Confidential Information as meaning "all information (including without limitation, confidential, marketing and sales information, confidential data relating to customers and suppliers, and trade secrets) which the company has taken reasonable efforts to keep confidential or which have not become publicly known by legitimate means concerning or relating to the internal affairs or operation of the company an opportunity to obtain an advantage over its competitors who do not know or use the same, the company has purchased or developed the confidential information at substantial expense in a market in which the company faces intense competitive pressures."

55.     Pursuant to the above referenced contracts, Romano agreed that the "Confidential Information" was the sole and exclusive property of Plaintiffs, that he should use the utmost diligence to guard the "Confidential Information" from improper disclosure and that he shall not use or disclose the Confidential Information to any other person or entity.

56.     Pursuant to the above referenced Agreements, Romano recognized that the Agreement shall remain in force so long as the Trade Secret Technology and other confidential information had not become publicly known through legitimate means.

57.     In the Agreements, Romano agreed not to use, publish or otherwise disclose to others, either during or subsequent during his employment by Plaintiffs, any Trade Secret Technology or other confidential information of Plaintiffs.

58. The Agreements between Plaintiffs and Romano precluded Romano's disclosure of not only Plaintiffs' trade secrets but also any confidential information which may not be trade secrets.

59. The Agreements between Plaintiffs and Romano recognized that breach of the Agreements would result in immediate and irreparable harm, loss and damages not adequately compensable by money damages should Romano divulge the "Confidential Information."

60. Romano breached the Agreements by disclosing and/or using the Trade Secret Technology and other confidential information protected by the Agreements for purposes other than identified in the Agreements, and by engaging competitors or potential competitors in the business of servicing waste disposal customers, in violation of the Agreement.

61. Romano further breached the Agreements by disclosing the Trade Secret Technology and other Confidential Information protected by the Agreements without Plaintiff's consent during the term of the Agreements to parties that were not permitted access to the confidential information.

62. Specifically, and without limitation, Romano breached the Agreements by disclosing the Trade Secret Technology and other confidential information to companies such as Environmental Solutions Group, well as other yet to be named companies.

63. Romano has breached the Agreements with Plaintiffs by copying, using and/or disclosing Plaintiffs' Trade Secret Technology and other confidential information for purposes other than the performance of his duties for Plaintiffs and by retaining, using and disclosing Plaintiffs' Trade Secret Technology and other confidential information to Geotab, ATI and other third parties, and by working for ATI and Geotab during the term of his employment by Plaintiffs without disclosing the conflict of interest to Plaintiffs.

64.     The actions of Romano constitute breaches of the contracts attached as Exhibits A and B.

65.     As a direct and proximate of Romano's breach and Romano's improper use and disclosure of the Trade Secret Technology and other confidential information during the terms of the contracts, Plaintiffs have been injured (and continue to suffer) damages that are in excess of the jurisdictional limits of this Court.

66.     Additionally, Plaintiffs and Romano agreed that a monetary remedy may be inadequate to protect the Trade Secret Technology and other confidential information and that Plaintiff may seek injunctive relief.

## COUNT III

### Breach of Fiduciary Duty (Against Romano)

67.     Plaintiffs repeat and reallege the averments of Paragraphs 1 through 66 as if fully set forth herein.

68.     At all relevant times, Romano owed Plaintiffs a fiduciary duty by virtue of his position of trust and confidence, as well as the parties' confidential relationship.

69.     Romano abused his respective position of trust and confidence with Plaintiffs to further his private interests, failed to protect the corporate property of Plaintiffs, and deprived Plaintiffs of profit or advantages in the marketplace.

70.     Romano violated the duty of loyalty required of him to not to engage in competition with Plaintiffs while employed by Plaintiffs.

71.     Romano acted with fraud, oppression, and/or malice.

72.     Romano breached his fiduciary duties by, among other actions: (1) soliciting Plaintiffs' actual and potential customers for his own financial gain; (2) secretly plotting with

Plaintiffs' business partners to divert business from Plaintiffs; and (3) using Plaintiffs' confidential information and technology to create products to compete with Plaintiffs.

73.     Plaintiffs have sustained losses and damages as a direct and proximate result of Romano's wrongful actions described herein in an amount to be determined at trial.

**COUNT IV**

**Computer Fraud and Abuse Act (Against Romano)**

74.     Plaintiffs repeat and reallege the averments of Paragraphs 1 through 73 as if fully set forth herein.

75.     All computers used by Romano without authorization or in excess of authorized access, or to destroy or impair Plaintiffs' information, including but not limited to all servers, desktop computers, laptop computers, external hard drives, "Blackberry" and/or "Q" devices, and thumb drives, USB drives, and "flash" drives, were at all relevant times used in interstate commerce and are protected computers pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(e).  The Trade Secret Technology and other confidential information is stored on, and may be accessed from, one or more of these protected computers owned by Plaintiffs, access to which is strictly controlled via various security measures, including secret passwords, and all are used in or affect interstate or foreign communications or commerce.

76.     Romano intentionally accessed the secure, protected computers of Plaintiffs or other protected computers without authorization or exceeding their authorization, and thereby obtained information from those protected computers, in violation of 18 U.S.C. § 1030(a)(2)(C).

77.     Romano knowingly and with the intent to defraud, accessed the secure, protected computers of Plaintiffs or other protected computers, or caused others to access the secure, protected computers of Plaintiffs, without authorization or in excess of their authorized access and in furtherance of the intended fraud obtained the valuable Plaintiffs proprietary trade secrets

- 16 -

and confidential information and/or other valuable information or the valuable use of the secure Plaintiffs' network and computers, which has a value exceeding five thousand dollars ($5,000.00) in a one-year period, in violation of 18 U.S.C. § 1030(a)(4).

78.     Romano knowingly caused the transmission of a program, information, code, or command and/or intentionally accessed the protected computers of Plaintiffs and/or other protected computers, and, as a result, intentionally and without authorization, recklessly caused damage and loss to the secure, protected computers of Plaintiffs and/or other protected computers in violation of 18 U.S.C. § 1030(a)(5)(A)-(C).

79.     Romano, through its actions in violation of 18 U.S.C. § 1030(a)(2), (a)(4), and (a)(5)(A)-(C), have caused Plaintiffs to incur losses for responding to an investigation of Plaintiffs' misconduct, including damage and security assessments, exceeding five thousand dollars ($5,000.00) during a one-year period in violation of 18 U.S.C. § 1030(g) and (c)(4)(A)(i)(I); the investigation of such losses continues.

80.     In addition to an award of compensatory damages Plaintiffs also are entitled to injunctive relief pursuant to 18 U.S.C. § 1030(g), restraining and enjoining Romano and all those in privity, concert or participation with Romano from engaging in such wrongful acts in violation of 18 U.S.C. § 1030(a)(2), (a)(4), and (a)(5) (A)-(C).

## COUNT V

### Misappropriation of Trade Secrets (Against Geotab and ATI)

81.     Plaintiffs repeat and reallege the averments of Paragraphs 1 through 80 as if fully set forth herein.

82.     Plaintiffs' Trade Secret Technology and other confidential information, set forth individually and collectively in the preceding paragraphs of the Complaint, are statutory "trade secrets" protected by the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et. seq.*

83. At all times, Plaintiffs have taken reasonable measures to protect the Plaintiffs' Trade Secret Technology and other confidential information, and Plaintiffs derive economic value and competitive advantage from such information not being generally known to the public or trade.

84. There was a misappropriation of trade secrets by Geotab and/or ATI, acting individually and in concert, to acquire, disclose and/or use, by improper means, the Plaintiffs proprietary Trade Secret Technology and other confidential information for their own benefit and/or the benefit of others without or exceeding Plaintiffs' authorization and consent. Among other things, ATI and Geotab have profited by knowingly directing users to access Plaintiffs' Trade Secret Technology residing on the Geotab website.

85. Plaintiffs have sustained and will continue to sustain damages, and Geotab and/or ATI have been and will continue to be unjustly enriched in an amount to be proven at trial, as a direct result of Geotab's and/or ATI's threatened or actual misappropriation of the Plaintiffs' proprietary trade secrets and confidential information.

86. Geotab's and ATI's misappropriation of Plaintiffs' Trade Secret Technology and other confidential information has been willful and malicious and entitles Plaintiffs to exemplary damages and an award of attorneys' fees and costs pursuant to the Illinois Trade Secrets Acts, 765 ILCS 1065/1 *et. seq.*

87. Plaintiffs also are entitled to injunctive relief to prevent further misappropriation of the Trade Secret Technology and other confidential information by Defendants pursuant to the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et. seq*.

## COUNT VI

### Breach of Contract (Against Geotab)

88.     Plaintiffs reallege and incorporate Paragraphs 1 through 87 of this Complaint as though fully set forth herein.

89.     On or about January 30, 2014, Geotab and Sonrai entered into a Confidential Information Agreement ("Confidentiality Agreement") (Exhibit C).

90.     In the Agreement, both Sonrai and Geotab agreed not to use publish or otherwise disclose to others products for any unlawful or abusive purposes:  "Customer agrees not to use the Services or Devices for any unlawful or abusive purpose or in any way that interferes with company or the Devices.  Customer will comply with all laws while using the Services or Devices and will not transmit any communication that would violate any federal, state, or local law court, or regulation.  Resale of the Services is prohibited except by authorized Dealers.  By using the Services and/or the Devices, Customer agrees to abide by the terms and conditions of any software license agreements applicable to any software associated with the Services or Devices."

91.     The purpose of the Confidentiality Agreement was to protect confidential information and trade secrets disclosed by either one of us to the other (the "Information") and to restrict the use of Information as described in this Agreement and only to evaluate a possible business transaction (the "Purpose").

92.     The Confidentiality Agreement permitted the parties to use any confidential information as "reasonably required for the [evaluation of a possible business transaction]."

93. The Confidentiality Agreement further required each party to use the same care, effort and measure to maintain all confidential information protected as the parties would do to protect their own information.

94. Geotab breached this Agreement by copying, using and/or disclosing Plaintiffs' Trade Secret Technology and other confidential information subject to the Confidentiality Agreement for purposes other than those discussed in the Confidentiality Agreement and by retaining, using and disclosing the Trade Secret Technology and other confidential information to other third parties without obtaining the prior approval.

95. Plaintiffs have been injured by Geotab's breach of the Confidentiality Agreement.

96. The contract between Sonrai and Geotab precluded Geotab's disclosure of not only Sonrai's trade secrets but also any confidential information which may not be trade secrets.

97. The actions of Geotab constitute breaches of the contract by which Sonrai has been damaged.

## COUNT VII

### Tortious Interference with Contractual Relationships and Business Expectancies
### (Against Romano, ATI and Geotab)

98. Plaintiffs reallege and incorporate Paragraphs 1 through 97 of this Complaint as though fully set forth herein.

99. As alleged above, Romano and Plaintiffs entered into valid and enforceable contracts.

100. Plaintiffs had a reasonable expectation that Romano would fulfill his obligations under his agreements with Plaintiffs.

101. ATI and Geotab knew of Romano's contractual relationship with Plaintiffs, but wrongfully and unjustifiably interfered with those relationships.

- 20 -

102.     In addition, Sonrai had contracts and valid business expectancies with Progressive, Dover and Paines' Inc.com.

103.     Romano, Geotab and ATI knew of those contracts and business expectancies, yet knowingly and unjustifiably colluded to disrupt them, by, among other things, facilitating Romano's diversion of business from at least Progressive, Dover and Paine's.com to themselves.

104.     Defendants' interference was successful, and Sonrai has been damaged as a result.

## COUNT VIII

### Unjust Enrichment
### (Against Romano, ATI and Geotab)

105.     Plaintiffs reallege and incorporate Paragraphs 1 through 104 of this Complaint as though fully set forth herein.

106.     Romano, ATI and Geotab have been unjustly enriched and has benefitted from its use of the Trade Secret Technology and other confidential information.

107.     Neither Romano, ATI nor Geotab have paid Plaintiffs for the benefits derived from use of the Trade Secret Technology and other confidential information resulting therefrom.

### REQUEST FOR RELIEF

For **Count I**, Plaintiffs respectfully requests that this Court enter judgment against Defendant Romano granting the following relief:

a.     A permanent injunction precluding any further use or disclosure of Plaintiffs' Trade Secrets Technology or other confidential information;

b.     The entry of judgment in favor of Plaintiffs and against Romano;

c.     Compensatory damages, including Plaintiffs' actual losses and Romano's unjust enrichment;

d.     Exemplary damages;

e.     An award of Plaintiffs' attorney's fees and costs; and

      f.      Such other relief that Plaintiffs are entitled to under law, and any further relief that this Court or a jury may deem just and proper.

For **Count II**, Plaintiffs respectfully requests that this Court enter judgment against

Defendant Romano granting the following relief:

      a.      A permanent injunction precluding any further Breach of Contract or use or disclosing of Plaintiff's Trade Secrets Technology and/or Confidential Information;

      b.      The entry of judgment in favor of Plaintiffs and against Romano;

      c.      Compensatory damages, including Plaintiffs' actual losses and Romano's unjust enrichment; and

      d.      Such other relief that Plaintiffs are entitled to under law, and any further relief that this Court or a jury may deem just and proper.

For **Count III**, Plaintiffs respectfully requests that this Court enter judgment against

Defendant Romano granting the following relief:

      a.      A permanent injunction precluding any further breach of Romano's fiduciary duty to Plaintiffs;

      b.      The entry of judgment in favor of Plaintiffs and against Romano;

      c.      Compensatory damages, including Plaintiffs' actual losses and Romano's unjust enrichment;

      d.      Exemplary damages;

      e.      An award of Plaintiffs' attorney's fees and costs; and

      f.      Such other relief that Plaintiffs are entitled to under law, and any further relief that this Court or a jury may deem just and proper.

For **Count IV**, Plaintiffs respectfully request that this Court enter judgment against

Defendant Romano granting the following relief:

      a.      Enter judgment in favor of Plaintiffs against Romano;

      b.      Award permanent injunctive relief pursuant to 18 U.S.C. § 1030, et. seq., restraining and enjoining Romano and all those in privity, concert or participation with him from engaging in acts and practices in violation thereof;

c.      award compensatory damages pursuant to 18 U.S.C. § 1030, et. seq., in an amount in excess of $5,000.00 to be proven at trial;

d.      Enter an order compelling Romano to return any and all of Plaintiff's proprietary trade secrets and confidential information including all types of scientific, technical and engineering information, files, documents, drawings, schematics, programs, object code, source code, designs, prototypes and the like, in Romano's possession, custody or control, and wherever and however stored physically, electronically, graphically, photographically, or in writing, and all derivations and compilations and/or other memorializations of such purloined information; together with such other affirmative relief required to compel compliance with this order, including the use of electronic evidence experts and other technicians;

e.      Enter an order compelling Romano's to disclose its actual and potential customers and any and all persons and entities to which Romano's disclosed Plaintiffs' proprietary trade secrets and confidential information; and

f.      Such further relief as this Court may deem just and proper, in law or equity.

For **Count V**, Plaintiffs respectfully request that this Court enter judgment against

Defendants Geotab and ATI granting the following relief:

a.      A permanent injunction precluding any further use or disclosure of Plaintiffs' Trade Secrets Technology or other confidential information;

b.      The entry of judgment in favor of Plaintiffs and against Geotab and ATI;

c.      Compensatory damages, including Plaintiffs' actual losses and Geotab's and ATI's unjust enrichment;

d.      Exemplary damages;

e.      An award of Plaintiffs' attorney's fees and costs; and

f.      Such other relief that Plaintiffs are entitled to under law, and any further relief that this Court or a jury may deem just and proper.

For **Count VI**, Plaintiffs respectfully request that this Court enter judgment against

Defendant Geotab granting the following relief:

a.      A permanent injunction precluding any further Breach of Contract or use or disclosing of Plaintiff's Trade Secrets Technology and/or Confidential Information;

b.      The entry of judgment in favor of Plaintiffs and against Geotab;

      c.      Compensatory damages, including Plaintiffs' actual losses and Geotab's unjust enrichment; and

      d.      Such other relief that Plaintiffs are entitled to under law, and any further relief that this Court or a jury may deem just and proper.

For **Count VII**, Plaintiffs respectfully request that this Court enter judgment against Defendants Romano, Geotab and ATI granting the following relief:

      a.      An award of compensatory damages in an amount to be determined at trial;

      b.      An award of punitive damages in an amount to be determined at trial; and

      c.      Such other and further relief as this Court and/or jury may deem proper and just.

For **Count VIII**, Plaintiffs respectfully request that this Court enter judgment against Defendants Romano, Geotab and ATI granting the following relief:

      a.      An award of compensatory damages in an amount to be determined at trial;

      b.      An award of punitive damages in an amount to be determined at trial; and

      c.      Such other and further relief as this Court and/or jury may deem proper and just.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable in this case.

Respectfully submitted,

_/s/ Paul K. Vickrey_
Paul K. Vickrey (vickrey@nshn.com)
Dean D. Niro (dniro@nshn.com)
Arthur A. Gasey (gasey@nshn.com)
**NIRO LAW**
181 West Madison Street, Suite 4600
Chicago, Illinois 60602
Tel.:    (312) 236-0733
Fax:    (312) 236-3137

David Stieper (david@stieperlaw.com)
**STIEPER LAW OFFICES, LTD.**
2500 West Higgins Road, Suite 1200
Hoffman Estates, IL 60169-7243
Tel:   (847) 519-7970
Fax:  (847) 519-7971

*Attorneys for Sonrai Systems, LLC. and Advanced*
*Custom Engineered Systems & Equipment Co.*