IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SONRAI SYSTEMS, LLC, and ADVANCED CUSTOM ENGINEERED SYSTEMS & EQUIPMENT CO., <br><br> Plaintiffs, <br><br> v. <br><br> ANTHONY M. ROMANO, GEOTAB, INC., ASSURED TELEMATICS, INC. and JOHN DOES 1-10, <br><br> Defendants. | Case No. 16-cv-03371 <br><br> The Honorable Thomas M. Durkin |

**DEFENDANT ASSURED TELEMATICS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant Assured Telematics, Inc. ("ATI") sells GPS fleet tracking devices (the "Geotab Devices") for Defendant Geotab, Inc. ("Geotab"). According to the allegations of the Complaint, there is some question about whether Plaintiffs Sonrai System, LLC ("Sonrai") and Advanced Custom Engineered Systems & Equipment Co. ("ACES") (collectively, "Plaintiffs") developed software and technology that Geotab is now selling without properly compensating Plaintiffs. Regardless of the truth of such allegations, there are no allegations that ATI had any involvement or knowledge of the software included in the Geotab Devices. Notwithstanding the dearth of allegations against ATI, Plaintiffs attempt to sweep ATI (without any legal or factual basis for doing so) into allegations that actually target Sonrai's former Vice President, Defendant Anthony M. Romano. Plaintiffs rest their Complaint on an entirely speculative theory that ATI and Geotab somehow colluded with Romano to steal business and trade secrets from Plaintiffs. Plaintiffs fail to support this theory with *any* specific factual allegations. Instead, Plaintiffs string together a collection of unsupported conclusions that flout federal pleading standards. The

sparse facts that Plaintiffs do allege demonstrate that the claims against ATI are either preempted by the Illinois Trade Secret Act (the "ITSA") and/or fail as a matter of law as well. These flaws are fatal, and the Complaint must be dismissed.

### FACTS

Plaintiffs' claims stem from an alleged "secret collaboration between Plaintiffs' key executive [Romano], and at least two of their business partners [Geotab and ATI] to use Plaintiffs' confidential information and trade secrets" and "to divert actual and prospective opportunities from Plaintiffs and to create a competing product." (Compl. ¶ 1.) According to the Complaint, Sonrai developed an "Event Validation System" technology that is somehow related to "various intellectual property rights" owned by ACES. (*Id.* ¶¶ 3, 13.) The Event Validation System software allegedly "is hosted on servers maintained by" Defendant Geotab, and one example of the Event Validation System hardware, "a small form-factor device sold by Defendant Geotab that simply plugs directly [sic] a port in the truck", was allegedly provided through Plaintiff Sonrai's "exclusive reseller Assured Telematics, Inc." (*Id.* ¶¶ 6, 14; *see also id.* ¶ 32.) The Complaint further alleges that "ATI sells products that incorporate the Trade Secret Technology and other confidential information in the Geotab devices and software applications." (*Id.* ¶ 32.) The Complaint does not specifically identify any products, other than the Geotab Device, that ATI sells.

The bulk of Plaintiffs' factual allegations involve Defendant Romano. Romano began working with Plaintiffs in 2006 as "Vice President for Sonrai," and on May 10, 2006, Romano entered into a "Confidential Information and Non-Competition Agreement" (the "Contract") with ACES. (*Id.* ¶¶ 18–19, Ex. A.) Romano also signed an "Electronic Access Policy" document, in which he certified his "knowledge, acceptance and adherence to [ACES's] policies, rules, regulations and procedures regarding Electronic Access." (*Id.* ¶ 19; *see also id.* Ex. B, p. 7.) The

document explicitly states that "[t]hese policies do not create any promises or contractual obligations between [ACES] and its employees." (*Id.*, Ex. B, p. 7.)

On or about January 30, 2014, Geotab entered into a Confidential Information Agreement ("Confidentiality Agreement") with Sonrai, in which both companies agreed to "protect confidential information and trade secrets disclosed by either one of us to the other …." (*Id.* Ex. B; *see also id.* ¶¶ 89–91.) The Complaint does not allege that ATI entered into a confidentiality agreement—or any other kind of agreement—with anyone.

Plaintiffs allege that "[b]eginning in 2014, Romano developed a plan to personally leverage and exploit Plaintiffs' assets; specifically, Plaintiffs' technology, customers, contacts and other trade secret and proprietary information." (*Id.* ¶ 22.) They further allege that Romano sent Sonrai's confidential information to Progressive Waste Solutions, Inc. ("Progressive") and made further attempts to "disrupt Sonrai's relationship with Progressive." (*Id.* ¶¶ 24–27.) However, there is not a single non-conclusory factual allegation regarding the purported "secret collaboration" between Romano and ATI. In fact, the entirety of the Complaint's allegations are:

> Romano worked for, cooperated with and assisted ATI and Geotab in promoting the Geotab product including the Trade Secret Technology. Further, Romano colluded with ATI to sell the Geotab product including the Trade Secret Technology to various companies. For instance, Romano used ATI quotes (outside of Sonrai's invoicing system) to solicit actual and/or prospective clients, including Big Truck Rental.

(*Id.* ¶ 33.) The allegation is entirely conclusory and unsupported, and thus, it fails to adequately support Plaintiffs' claims against ATI, which should be dismissed. The only allegations in the Complaint regarding ATI, specifically, are:

> The products and software sold by ATI have a component which is paid to Sonrai to address use of the Trade Secret Technology and other confidential information. The proceeds received by ATI are distributed to Geotab and Sonrai. . . . ATI has not reimbursed nor properly distributed to Plaintiffs the proceeds from the sale of Geotab products including the Trade Secret Technology.

(*Id.* ¶¶ 32, 34.) Plaintiffs' allegations here do not even make sense, as there is no allegation at all that ATI owed Sonrai any payment of any kind pursuant to any agreement. That gaping hole in Plaintiffs' allegations requires dismissal of the Complaint against ATI.

Based on these razor-thin allegations, and nothing more, Plaintiffs assert claims against ATI for: (1) tortious interference with contractual and business relations; (2) misappropriation of trade secrets under the ITSA; and (3) unjust enrichment. (*Id.* ¶ 2.) None of the claims is plausible, and all should be dismissed.

## LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## ARGUMENT

Without any factual support for their claims against ATI, Plaintiffs ground their complaint on unsupported -- and unsupportable -- legal conclusions. Plaintiffs variously assert claims against ATI for misappropriation of trade secrets, unjust enrichment, and tortious interference with contractual and business relationships. Each of these claims fail. Not only do

Plaintiffs fail to plead the critical elements of *any* claim they assert against ATI, the Complaint demonstrates that Plaintiffs' misappropriation of trade secrets claim fails as a matter of law, while the unjust enrichment claim is preempted by the ITSA. The facts alleged here certainly have not "nudged [Plaintiffs'] claims across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680. Therefore, Plaintiffs' claims against ATI must be dismissed.

**I. PLAINTIFFS HAVE NOT PLED SUFFICIENT FACTS TO SUPPORT A MISAPPROPRIATION OF TRADE SECRETS CLAIM AGAINST ATI, AND THE FACTS THEY DO PLEAD DEMONSTRATE THAT THEIR CLAIM FAILS AS A MATTER OF LAW.**

Plaintiffs fail to state a claim against ATI for misappropriation of trade secrets (Count V) for two reasons: (1) the allegations of the Complaint demonstrate that the information at issue is not a trade secret, because no effort was made to keep the alleged trade secret a secret; and (2) Plaintiffs have pled no facts to support their naked and conclusory allegation that ATI misappropriated anything.[1]

To state such a claim for misappropriation of trade secrets under the ITSA, a plaintiff must "demonstrate that the information at issue was a trade secret, that it was misappropriated and that it was used in the defendant's business." *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003). The ITSA defines a "trade secret" as information that "(1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or

---

[1] In addition to the defects noted below, Sonrai also lacks standing to bring a claim under the ITSA because it has admitted that it does not own the trade secrets. *See Venango River Corp. v. Nipsco Indus., Inc.*, No. 92 C 2412, 1994 WL 702759, at *9 (N.D. Ill. Dec. 15, 1994). The Complaint alleges only that ACES owns intellectual property rights to the Event Validation System. (Compl. ¶ 13.) While Plaintiffs describe various Trade Secret Technology "pertaining to ACES and Sonrai" (*id.* ¶ 16; *see also id.* at ¶ 82 (referring to "Plaintiffs' Trade Secret Technology")), they do not specifically allege that Sonrai owned any trade secret.

confidentiality." 765 ILCS 1065/2(d). The first requirement "precludes trade secret protection for information generally known or understood within an industry," even if such information is not available to the public at large. *Learning Curve Toys*, 342 F.3d at 722. The second requirement "prevents a plaintiff who takes no affirmative measures to prevent others from using its proprietary information from obtaining trade secret protection." *Id.* Therefore, while the trade secrets need not be disclosed in detail, "the information and the efforts to maintain its confidentiality" must still be "described in general terms." *Covenant Aviation Sec., LLC v. Berry*, 15 F. Supp. 3d 813, 818 (N.D. Ill. 2014). Thus, "[a] complaint without any factual allegations regarding the plaintiff's efforts to maintain the confidentiality of their alleged trade secret ***cannot withstand a motion to dismiss***." *Abbott Labs. v. Chiron Corp.*, No. 97 C 0519, 1997 WL 208369, at *3 (N.D. Ill. Apr. 23, 1997) (emphasis added); *see also Marc Maghsoudi Enters., Inc. v. Tufenkian Imp./Exp. Ventures, Inc.*, No. 08 C 441, 2009 WL 3837455, at *2 (N.D. Ill. Nov. 16, 2009) (dismissing a claim for misappropriation of trade secrets because the complaint did "not allege that any steps were taken to ensure that [the plaintiff's information] would remain confidential").

Here, not only do Plaintiffs fail to plead sufficient facts regarding any affirmative efforts to keep their "Trade Secrets" secret, but the facts alleged in the Complaint actually demonstrate that Plaintiffs openly shared such information. It is true that Plaintiffs allege that they "took reasonable steps to maintain the confidentiality of their trade secrets, and they required Romano to sign the 'Confidential Information and Non-Competition Agreement' prior to the disclosure of its trade secrets," but that alone is not enough. (Compl. ¶ 48.) "While 'an agreement restricting the use of information may be considered a reasonable step to maintain secrecy of a trade secret,' such an agreement, without more, is not enough." *Fire 'Em Up, Inc. v. Technocarb Equip.*

*(2004) Ltd.*, 799 F. Supp. 2d 846, 851 (N.D. Ill. 2011) (quoting *Dick Corp. v. SNC-Lavalin Constr., Inc.*, No. 04 C 1043, 2004 WL 2967556, at *10 (N.D. Ill. Nov. 24, 2004)).

Notwithstanding the above-cited case law, there is nothing more in this Complaint to support the required allegation that Plaintiffs took steps to keep their alleged trade secrets confidential. Plaintiffs offer no additional facts to support their bald assertion that they took "reasonable steps" to maintain the confidentiality of their information. Rather, throughout the rest of the Complaint, they simply parrot the language of the ITSA. (Compl. ¶ 17 ("The 'Trade Secret Technology' constitutes trade secrets under the Illinois Uniform Trade Secret Act at 765 ILCS 1065/1, *et seq*. The actual Trade Secret Technology is confidential and maintained in secret."); *id.* ¶ 46 ("the Trade Secret Technology described herein is not and was not generally known to Plaintiff's competitors in the industry"); *id.* ¶ 47 ("ACES and Sonrai's Trade Secret Technology and confidential information were generally not known or readily accessible and were maintained in confidence by Plaintiffs."); *id.* ¶ 83 ("At all times, Plaintiffs have taken reasonable measures to protect the Plaintiffs' Trade Secret Technology and other confidential information, and Plaintiffs derive economic value and competitive advantage from such information not being generally known to the public or trade."). Such a "threadbare recital" of the trade secret definition without any detail supporting these conclusory statements is not sufficient to state a claim. *See Iqbal*, 556 U.S. at 678; *Bell Atl.*, 550 U.S. at 556.

Moreover, and belying their assertions that they took reasonable steps to maintain secrecy, Plaintiffs, in fact, ***admit*** that Sonrai shared certain technology with both ATI and Progressive, even though they do not allege that they entered into confidentiality agreements with ATI or Progressive. (Compl. ¶¶ 14, 24–26.) In particular, Sonrai installed "hundreds of units" of "equipment utilizing the Trade Secret Technology and other confidential information"

in "Progressive trucks across nine different locations." (Compl. ¶¶ 24–26.) Plaintiffs have failed to "allege facts bearing on an essential element of the statutory definition of a trade secret, *i.e.*, that the alleged trade secret information 'is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.'" *Fire 'Em Up*, 799 F. Supp. 2d at 850.

Even if Plaintiffs did adequately allege the existence of a trade secret (which they did not), they still fail to allege any facts that establish any trade secret was misappropriated by ATI. As one federal court in this District has explained: "Disclosure of a trade secret to others who are under no obligation to protect the confidentiality of the information, extinguishes the right to trade secret protection." *Marc Maghsoudi Enters.*, 2009 WL 3837455, at *2. In *Marc Maghsoudi Enterprises*, the plaintiff "failed to plead facts alleging that the parties had a confidentiality agreement" or that the defendant "had a legal obligation created by contract or law, requiring it to maintain the secrecy of" the trade secrets at issue. *Id.* Here, too, Plaintiffs allege absolutely no facts to suggest that ATI had an obligation to protect the confidentiality of any of Plaintiffs' information. They do not allege that ATI entered into a confidentiality agreement with either Plaintiff, nor do they allege that ATI entered into *any* confidentiality agreement with Geotab, much less one that covered Plaintiffs' information.

Because they have failed to plead facts sufficient to support any element of a claim for misappropriation of trade secrets, Plaintiffs' claim under the ITSA must be dismissed. *See id.* (finding that because the "Complaint alleges disclosure of the trade secret, but does not plead any facts related to an agreement to protect plaintiff's information, [the plaintiff]'s trade secret claim is not plausible on its face.").

## II. PLAINTIFFS' UNJUST ENRICHMENT CLAIM IS ENTIRELY BASED ON ALLEGATIONS THAT ATI MISAPPROPRIATED TRADE SECRETS AND THUS IS PREEMPTED BY THE ITSA.

Although Plaintiffs do not plead facts to support their allegations that trade secrets were misappropriated by ATI, they nevertheless base their unjust enrichment claim on the same allegations. Any tort claim "based on misappropriation" of a trade secret, however, is preempted by the ITSA. *Hecny Transp., Inc. v. Chu*, 430 F.3d 402 (7th Cir. 2005); *see also Mkt. Track, LLC v. Efficient Collaborative Retail Mktg., LLC*, No. 14 C 4957, 2015 WL 3637740, at *16 (N.D. Ill. June 11, 2015); 765 ILCS 1065/8. It is of no consequence that Plaintiffs fail to allege that the information at issue was actually a trade secret, because "the preemptive language in the ITSA [covers] claims that are essentially claims of trade secret misappropriation, even when the alleged 'trade secret' does not fall within the Act's definition." *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 733 (7th Cir. 2014) (specifically finding a claim for unjust enrichment based on alleged misappropriation of the plaintiff's marketing proposal preempted by ITSA).

Plaintiffs' unjust enrichment allegations rest solely on their allegations that ATI misappropriated trade secrets. Under Illinois law, the elements for a claim of unjust enrichment are: (1) the defendant received a benefit; (2) the benefit was to the plaintiff's detriment; and (3) the defendant's retention of that benefit would be unjust. *See HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160, 545 N.E.2d 672, 678–79 (1989). Plaintiffs attempt to state a claim that ATI was unjustly enriched because it "***benefitted from its use of the Trade Secret Technology and other confidential information***" without paying "Plaintiffs for the benefits derived from use of the Trade Secret Technology and other confidential information resulting therefrom . . . ." (Compl. ¶¶ 106–07.)

The only supporting factual statement (which, tellingly, is alleged in the same count as Plaintiffs' misappropriation of trade secrets claim), explicitly states, "Among other things, ATI

-9-

and Geotab have profited by knowingly directing users to access Plaintiffs' Trade Secret Technology residing on the Geotab website. . . . ATI [has] been and will continue to be unjustly enriched . . . ." (*Id.* ¶¶ 84, 85.) Plaintiffs' unjust enrichment claim is, without question, identical to its claim of trade secret misappropriation. It "reduces [to a claim] for restitution for the alleged misappropriation of the purportedly secret information" and is thus preempted by the ITSA. *Stereo Optical Co. v. Judy*, No. 08 C 2512, 2008 WL 4185689, at *4 (N.D. Ill. Sept. 8, 2008). Because Plaintiffs' unjust enrichment claim is preempted, it should be dismissed.

### III. PLAINTIFFS' CLAIMS AGAINST ATI FOR TORTIOUS INTERFERENCE WITH CONTRACTUAL AND BUSINESS RELATIONSHIPS ALSO FAIL.

In Count VII, Plaintiffs bring claims for both tortious interference with contractual relationships and tortious interference with business expectancies. (Compl. at 20.) Like every other claim they assert against ATI, Plaintiffs' factual support for these claims is entirely lacking: Plaintiffs fail to plead facts that support a single element of either claim, much less "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556). These claims, too, must be dismissed.

#### A. Plaintiffs Do Not Allege Sufficient Facts to Support a Claim for Tortious Interference with Any Contractual Relationships.

Plaintiffs allege that ATI interfered with two different contractual relationships: (1) Sonrai's contractual relationships with Progressive, Dover, and Paines' Inc.com., and (2) Plaintiff's contractual relationship with Romano. (*Id.* ¶¶ 99–102.) Under Illinois law, a claim for tortious interference with a contractual relationship requires: "(1) the existence of a valid and enforceable contract between the plaintiff and another, (2) the defendants' awareness of the contract, (3) the defendants' intentional and unjustified inducement of a breach of the contract, (4) a subsequent breach by the other, caused by the defendants' wrongful conduct, and

(5) damages." *Serv. By Air, Inc. v. Phoenix Cartage & Air Freight, LLC*, 78 F. Supp. 3d 852, 866 (N.D. Ill. 2015). Neither of the contractual relationships alleged state such a claim.

There is not a single factual allegation in the Complaint to support that Sonrai had any kind of contractual relationship with Progressive, Dover, or Paines' Inc.com. Plaintiffs' conclusory allegation that Sonrai "had contracts … with Progressive, Dover and Paines' Inc.com" is simply not sufficient under federal pleading standard. (*Id.* ¶ 102.) "Simply alleging that defendants interfered with the relationship or expectancy does not adequately state a claim, as that is merely a legal conclusion." *Arvegenix, LLC v. Seth*, No. 13-CV-1253, 2014 WL 1698374, at *7 (C.D. Ill. Apr. 29, 2014). Therefore, Plaintiffs' claim based on tortious interference with a contract between Sonrai and Progressive, Dover or Paines' Inc.com must fail.

Plaintiffs also fail to state a claim based on tortious interference of a contractual relationship between Plaintiffs and Romano. As an initial matter, Plaintiffs have not plead *any* contract between Sonrai and Romano. Rather, the Complaint explicitly states that on "May 10, 2006, Romano entered into a 'Confidential Information and Non-Competition Agreement' *with ACES* . . . ." (Compl. ¶ 19 (emphasis added).) Indeed, the Contract attached to the Complaint is between "Advanced Custom Engineered Systems & Equipment Co." and "Anthony Romano"— the Contract makes no reference to Sonrai. (*See id.* Ex. A.) While the Complaint variously refers to "[t]he *parties'* Confidential Information and Non-Competition Agreement" and "a contractual relationship with *Plaintiffs*" (Compl. ¶¶ 54, 101 (emphases added)), "[i]t is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Home Repair, Inc. v. Universal Restoration Servs., Inc.*, 90 F. App'x 142, 145 (7th Cir. 2003). Because the Complaint does not plead "the

existence of a valid and enforceable contract" between Sonrai and Romano, Sonrai's claim for tortious interference with a contractual relationship should be dismissed.

ACES also fails to state a claim for tortious interference of a contractual relationship. ACES does not even specify exactly which "valid and enforceable contracts" support its tortious interference claim, but the Complaint alleges two possibilities: the Confidential Information and Non-Competition Agreement ("Agreement") or the "Electronic Access Policy" document. (Compl. ¶ 19.) However, neither of these documents can support ACES's claim. The Electronic Access Policy cannot serve as the basis for a tortious interference with contractual relationships claim, as that document explicitly states it does not "create any promises or contractual obligations between [ACES] and its employees." (*Id.*, Ex. B, p. 7.) Therefore, it is not a valid and enforceable contract. To state a claim, ACES therefore must adequately allege ATI's interference with the alleged Agreement between ACES and Romano. ACES cannot do so.

Even were the Court to assume there does exist a valid contract between ACES and Romano for purposes of this Motion, Plaintiffs fail to allege facts to establish any other elements of a tortious interference claim. First, there are no facts in the Complaint that plausibly suggest that ATI knew about the Agreement. Rather, all that is plead is that ATI "knew of Romano's contractual relationship with Plaintiffs." (*Id.* ¶ 101.) Not only does the Complaint not specify to which contractual relationship it is referring, the allegation is plainly the sort of naked recitation of the elements of a cause of action that numerous courts have found to be insufficient.

ACES similarly fails to allege that ATI intentionally and unjustifiably induced Romano to breach the Agreement. "In order to meet the third element for tortious interference with a contract, that defendant induced the third party to breach its contract, Plaintiff must show that Defendant actively participated in inducing the breach." *Block v. Illinois Sec'y of State*, No. 09-

C-117, 2010 WL 706043, at *4 (S.D. Ill. Feb. 24, 2010). This requires "some active persuasion, encouragement, or inciting that goes beyond merely providing information in a passive way." *Id.* (quoting *In re: Estate of Albergo*, 275 Ill. App. 3d 439, 446 (Ill. App. Ct. 1995)). The only allegations in the Complaint that Romano and ATI had any kind of relationship are:

> Romano worked for, cooperated with and assisted ATI and Geotab in promoting the Geotab product including the Trade Secret Technology. Further, Romano colluded with ATI to sell the Geotab product including the Trade Secret Technology to various companies. For instance, Romano used ATI quotes (outside of Sonrai's invoicing systems) to solicit actual and/or prospective clients, including Big Truck Rental.

(*Id.* ¶ 33.) Even assuming that using ATI quotes outside of Sonrai's invoicing system to solicit clients violated Romano's Agreement, the *most* ACES alleges is that Sonrai provided Romano information. The Complaint never alleges that ATI actively persuaded, encouraged, or incited Romano to violate his Agreement. And not only does ACES fail to even allege that any damages resulted from this alleged breach (*see id.* ¶¶ 98–104), it also does not allege any facts at all supporting damages. Neither Sonrai nor ACES has stated a claim for tortious interference with a contractual relationship against ATI, and this claim should thus be dismissed.

**B. Plaintiffs' Tortious Interference With Business Expectancies Claim Is a Mere Recitation of the Elements of the Cause of Action With No Factual Support.**

Plaintiffs' claim against ATI for tortious interference with business expectancies merely recites the elements of the cause of action and, thus, also fails. To state a claim for tortious interference with business expectancy, a plaintiff must allege: (1) a reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of the expectancy; (3) the defendant's intentional and unjustified interference that prevents the realization of the business expectancy; and (4) damages resulting from the interference. *Serv. By Air*, 78 F. Supp. 3d at 867–68. "Simply alleging that defendants interfered with the relationship or expectancy does not adequately state a claim, as that is merely a legal conclusion." *Arvegenix*,

2014 WL 1698374, at *7. But here, Plaintiffs do exactly what *Arvegenix* warns against: pleading naked and conclusory allegations.

Plaintiffs state that "Sonrai had contracts and valid business expectancies with Progressive, Dover and Paines' Inc.com.," and that "ATI knew of those contracts and business expectancies, yet knowingly and unjustifiably colluded to disrupt them, by, among other things, facilitating Romano's diversion of business from at least Progressive, Dover and Paine's.com to themselves." (Compl. ¶¶ 102–04.) As the allegations make clear, only Sonrai is alleging tortious interference with business relations—ACES does not even attempt to allege that it has a cause of action. But nowhere in the Complaint does Sonrai allege *any* facts that support its allegations that it had a business expectancy with Progressive, Dover, or Pains' Inc.com, much less that ATI knew about such an expectancy. The only interaction that Sonrai alleges with respect to Progressive is that it responded to a Request for Information that resulted in Sonrai installing its technology in Progressive's trucks. (*Id.* ¶¶ 24–25.) However, there are absolutely no facts alleged that suggest Sonrai expected to have a continuing relationship with Progressive.

Sonrai's factual support for its allegation that it had business expectancies with Dover and Paines' Inc. is even more nonexistent. Sonrai alleges that Romano sent a copy of Sonrai's Progressive bid request to Dover, but that is it. (*Id.* ¶ 24.) There are no allegations that Sonrai itself had any contact at all with Dover, such that Sonrai had an expectancy of entering into a valid business relationship with it. And the only mention of Paines' Inc.com in the entire Complaint is the bare allegation that Sonrai had a valid business expectancy with it.

Even if Sonrai did have a valid business expectancy with Progressive, Dover, or Paines' Inc.com, there are no facts to support the assertion that ATI knew of Sonrai's business expectancy. While Sonrai alleges that Romano and Geotab both interacted with persons at

-14-

Progressive and Romano interacted with Dover, none of these allegations even mentions ATI. (*Id.* ¶¶ 24–31.) Sonrai's claim for interference with business expectancies is a "[t]hreadbare recital[ ] of the elements of a claim supported by mere conclusory statements," which simply "do not suffice" to state a claim. *Iqbal*, 556 U.S. at 663 (citing *Bell Atl.*, 550 U.S. at 555). Count VII should be dismissed.

## CONCLUSION

For the reasons stated above, Plaintiffs' claims against Defendant Assured Telematics, Inc. should be dismissed in their entirety with prejudice.

Dated: May 27, 2016

Respectfully submitted,

ASSURED TELEMATICS, INC.

By: /s/ A. Colin Wexler

A. Colin Wexler
Kerry D. Nelson
Emily D. Gilman
GOLDBERG KOHN LTD.
55 East Monroe Street, Suite 3300
Chicago, Illinois 60603
(312) 201-4000

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on May 26, 2016, she caused a copy of **DEFENDANT ASSURED TELEMATICS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT** to be served via the Court's ECF/electronic mailing system upon all counsel of record.

/s/ Emily D. Gilman