IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SONRAI SYSTEMS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ANTHONY M. ROMANO, GEOTAB, INC., and HEIL CO. D/B/A/ENVIRONMENTAL SOLUTIONS GROUP, <br><br> Defendants. | Civil Action No. 1:16-cv-03371 <br><br> District Judge Thomas M. Durkin <br><br> Magistrate Judge Jeffrey Cummings |

**GEOTAB'S MOTION TO REQUIRE REMOTE DEPOSITIONS
OF ITS EXPERT WITNESSES DUE TO THE COVID-19 PANDEMIC**

Defendant Geotab, Inc. ("Geotab") moves pursuant to Federal Rule of Civil Procedure 26(c) for a protective order requiring Plaintiff, Sonrai Systems, LLC ("Sonrai"), to the extent Sonrai intends to take the deposition(s) of Geotab's expert witnesses, to take such deposition(s) telephonically or using a videoconferencing technology having sufficient security to protect information designated as confidential under the Agreed Confidentiality Order, as amended (Dkt. Nos. 154, 293), due to the health concerns surrounding the COVID-19 pandemic. In support of its Motion for a Protective Order, Geotab states as follows:

**I.     FACTS**

    **A.     This Is An Old Case**

1. This case is now in its fifth year of pendency. Dkt. No. 1, dated March 16, ***2016***.

2. Fact discovery was extended four times. Dkt. Nos. 176, 193, 219, 244.

3.      A year ago, this Court acknowledged that the schedule of this litigation has "been hung up in the past," but instructed Sonrai that "those days are over," and that "[w]e are going to keep moving forward and get this done." Ex. 1 at 14:15-21.

4.      Since then, expert discovery has been extended six times. Dkt. Nos. 317, 360, 361, 363, 368, 392. This does not include the instance when the Court allowed Sonrai to serve its expert reports late. Dkt. No. 322 ("plaintiff filed its motion seeking leave to file its expert reports instanter on 11/13/19 when they were due to be exchanged on 11/12/19 by this Court's 10/1/19 order 317.").

5.      The most recent extension was at Sonrai's request, only a month after agreeing with defendants to a schedule for completing expert discovery. In granting Sonrai's extension, the Court *sua sponte* invited Geotab to submit a brief on why it requested Sonrai to take the depositions of Geotab's expert by remote means. Dkt. No. 392.

        **B.**     **Covid-19 Remains A National Health Emergency**

6.      Chief Judge Pallmeyer has now entered five versions of General Order 20-0012, which relates to the COVID-19 pandemic. March 12, 2020, was the date of the initial order, which stated that the "Centers for Disease Control and Prevention and other public health authorities have advised the taking of precautions to reduce the possibility of exposure to the [corona]virus and slow the spread of the [COVID-19] disease." The order continued and/or suspended most gatherings of individuals, but stated that "proceedings by telephone or video conferencing" were permissible.

7.      On March 16, 2020, Chief Judge Pallmeyer amended the order given that public health authorities "recommended that the public implement social-distancing measures." Phone conferencing and video conferencing remained permissible. While the deadlines in civil cases were extended by 21 days, some limited conduct in criminal cases continued, but even then, the

Amended Order suggested initial appearances and arraignments be made by video conference and that warrants be reviewed by electronic means.

8. The Second Amended General Order 20-0012 was entered on March 30, 2020, and extended deadlines in civil cases by a further 28 days, and expanded the use of videoconferencing and teleconferencing in criminal cases. The Third Amended General Order 20-0012 dated April 24, 2020, extended deadlines in civil cases by a further 28 days. Videoconferencing and teleconferencing continued to be permissible in criminal cases. The Fourth Amended General Order 20-0012, entered on May 26, 2020, did not extend deadlines in civil cases. The Order states that "[c]ivil case hearings, bench trials, and settlement conferences may be scheduled and conducted by the presiding judge *by remote means*," and that in person hearings were limited only to those that "*cannot be conducted remotely*."

9. On June 12, 2020, Chief Judge Pallmeyer signed General Order 20-0022, in which she states "I find that [various criminal proceedings] *cannot be conducted in person in this district without seriously jeopardizing public health and safety*," and ordered the use of video conferencing or teleconferencing for those criminal proceedings that were to occur.

10. Johns Hopkins University reports the number of confirmed cases of COVID-19 in the United States and the number of deaths determined to be caused by COVID-19 at the website https://coronavirus.jhu.edu/us-map (last visited June 18, 2020) ("Johns Hopkins Data"). Below is the data for COVID-19 cases and deaths in the United States on the same dates as the General Order 20-0012, its amendments, and General Order 20-0022 were dated, as well as the most recent numbers available as of June 18, 2020:

3

| Date | U.S. COVID-19 Cases | U.S. COVID-19 Deaths |
|---|---|---|
| March 12 | 1,600 | none |
| March 16 | 4,400 | none |
| March 30 | 162,600 | 4,400 |
| April 24 | 902,100 | 46,300 |
| May 26 | *1.7 million* | *94,400* |
| June 12 | *2 million* | *109,900* |
| June 17 | *2.2 million* | *112,900* |

11.  The below charts of COVID-19 cases and deaths due to the disease is reproduced from the Johns Hopkins coronavirus website. As can be seen, both cases and deaths due to COVID-19 continue to climb.

**Confirmed COVID-19 Cases In The U.S.**



4

**Confirmed COVID-19 Deaths In The U.S.**



12. On May 27, 2020, Geotab offered both of its experts for deposition by phone or video on a wide swath of dates in June 2020, given the deadline for taking such depositions at the time was in early July. *See* Ex. 2 at 1. Sonrai's counsel only responded that "I am taking these depositions live. Not by phone" and offered no reason or explanation for refusing to take the depositions remotely, nor did he accept any of the dates offered for the depositions. *Id.*

13. On June 9, 2020, in response to Sonrai's request to extend the schedule once again, Geotab explained the reasons for requesting depositions to be held either telephonically or by videoconferencing—due to the COVID-19 pandemic—and even recommended a platform in which to take the depositions by videoconferencing. *See* Ex. 3 at 1. Sonrai's counsel responded that he intended to take the depositions live, without addressing Geotab's concerns about the COVID-19 pandemic. *Id.*

### C. In-Person Depositions Of Geotab's Expert Witnesses Would Involve Interstate Travel

14. Geotab's two expert witnesses both reside in the vicinity of Durham, North Carolina. Geotab's attorneys reside in Massachusetts and Illinois. For a deposition of Geotab's two expert witnesses to occur in-person, either Geotab's two expert witnesses, Geotab's attorneys, or both would be required to travel (presumably by air) to a different state.

15. All travelers arriving to Massachusetts are instructed to self-quarantine for fourteen days following arrival. *See* https://www.mass.gov/info-details/frequently-asked-questions-about-covid-19 (last visited June 18, 2020). Thus, if Geotab's attorneys from Massachusetts were to travel out of state for a deposition, they would be expected to self-quarantine for fourteen days upon their return to Massachusetts.

### D. Travel Increases The Risks Of Catching And Spreading The Virus That Causes COVID-19

16. The Centers for Disease Control and Prevention ("CDC") states on their website that "COVID-19 cases and deaths have been reported in all 50 states, and the situation is constantly changing," and that "*travel increases your chances of getting infected and spreading COVID-19*." *See* https://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-in-the-us.html (last visited June 18, 2020). The CDC also states that "[a]ir travel requires spending time in security lines and airport terminals, which can bring you in close contact with other people and frequently touched surfaces," and that "social distancing is difficult on crowded flights, and you may have to sit near others (within 6 feet), sometimes for hours." *Id.* The CDC concludes that *air travel "may increase your risk for exposure to the virus that causes COVID-19*." *Id.*

17. At least some health professionals recommend to "*stay home unless it's absolutely necessary to go out*," and that "*opting to stay home instead of going out can save*

6

*lives*." See https://www.frederickhealth.org/News-Calendar/News/2020/March/How-to-Stop-the-Spread-of-COVID-19-With-Social-D.aspx (last visited June 18, 2020).

### E. Members of Geotab's Counsel's Immediate Family Are In A High Risk Category If Exposed To COVID-19

18. As explained to Sonrai by email (*see* Ex. 3), the undersigned attorney for Geotab, who would be attending an in-person deposition of Geotab's experts, if this Court were to order such in-person depositions, has members of his immediate family that he sees on a regular basis that are in a high risk category if exposed to COVID-19. Some family members are over the age of 70 years old. Another family member has had one internal organ and portions of two other organs removed due to childhood cancer.

### F. The Location Geotab's Experts Reside, Durham, North Carolina, Is An Emerging COVID-19 Hotspot

19. On June 10, 2020, The News & Observer, the largest newspaper in circulation in the state of North Carolina, reported that "Dr. Deborah Birx [the Coronavirus Response Coordinator for the White House Coronavirus Task Force] and the White House Coronavirus Task Force are worried about COVID-19's spread in a handful of North Carolina counties, including … Durham." *See* Ex. 4 (https://www.newsobserver.com/news/coronavirus/article243421351.html (last visited June 18, 2020)). The article states that "[e]ach day this week, North Carolina has reported a record high for residents hospitalized with COVID-19." *Id.* In Durham County specifically, the county in which Geotab's expert witnesses reside, the "doubling time," that is "how long the total number of cases in each county takes to double," was 28 days on May 27th, but then "began to drop, hitting 18 days" as of June 10th. *Id.* Thus, the COVID-19 pandemic in Durham, North Carolina, is getting worse, not better.

7

20. The article shows that COVID-19 cases in North Carolina continues to rise (*id.*):

**<u>Confirmed COVID-19 Cases In North Carolina</u>**



21. The United States District Court for the Middle District of North Carolina, which is the district in which Durham, North Carolina resides, has issued guidelines for civil and criminal hearings during COVID-19 restrictions in Standing Order 16 (amended). *See* https://www.ncmd.uscourts.gov/sites/ncmd/files/Amd_SO13_3_COVID-19.pdf (last visited June 18, 2020). That order states as follows:

> The President of the United States has proclaimed that the worldwide pandemic Coronavirus (***COVID-19***) outbreak that has reached the United States ***constitutes a national emergency***, and the Governor has declared a state of emergency for the State of North Carolina. The Centers for Disease Control and Prevention and other public health authorities have advised taking precautions to reduce the possibility of exposure to the virus and to slow the spread of the disease. The President has issued stay-at-home guidelines, and the Governor has imposed a safer-at-home order, extended through at least June 26, 2020. In order to protect public health, and to reduce the size of public gatherings and ***avoid unnecessary travel.***

8

22. Standing Order 16 does not extend any deadlines in pending cases in that district, but instead *urges the use of "video-conferencing or telephonically," "especially in civil cases."* *Id.*

### G. Conducting Court Proceedings By Videoconferencing, Including Depositions, Is Now Commonplace During The COVID-19 Pandemic

23. As stated above, the Fourth Amended General Order 20-0012 of the Northern District of Illinois states that "[c]ivil case hearings, bench trials, and settlement conferences may be scheduled and conducted by the presiding judge *by remote means*," and that in person hearings were limited only to those that "*cannot be conducted remotely*." And Standing Order 16 of the Middle District of North Carolina *urges the use of "video-conferencing or telephonically," "especially in civil cases."*

24. The National Law Review reports in an article published June 16, 2020, that "[d]uring these unusual times, *Zoom depositions have become the new norm*." *See* https://www.natlawreview.com/article/my-zoom-deposition-next-month-no-problem (last visited June 18, 2020). The article continues that "[e]veryone, including the parties, attorneys, and court reporters, *are safely in their homes*." The article reports that such depositions are easy to conduct *Id.* ("In the past, you had to drive to an attorney's office and spend several hours in a conference room. Now, the Court Reporter's office will make all the arrangements, and all you have to do is click on the Zoom link five minutes before the deposition starts.").

25. Indeed, the undersigned attorney for Geotab has been personally involved in two depositions by videoconference since the COVID-19 pandemic began, one on the side taking the deposition and one defending the deposition, and attests that such depositions are no more burdensome than in-person depositions.

26. Even Sonrai has taken a deposition by videoconferencing technology already in this case, taking the deposition of Waste Connections' corporate representative, Charles Palmer, *by Skype* on December 5, 2018 – years before the current COVID-19 outbreak – in lieu of questioning Mr. Palmer in person.

## II. LEGAL STANDARD

27. Federal Rule of Civil Procedure 26(c) provides that this Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed.R.Civ.P. 26(c). "This Court is also vested with broad discretion to decide when a protective order is appropriate and what degree of protection is required." *Learning Resources, Inc. v. Playgo Toys Enterprises Ltd, et al.*, No. 19-CV-00660, Dkt. No 13, 2020 WL 3250723, at *1 (N.D. Ill. June 16, 2020) (J. Cummings) (requiring a deposition to be held by videoconferencing technology due to the COVID-19 pandemic).

28. "Federal Rule of Civil Procedure 30(b)(4) authorizes this Court in its discretion to order that a deposition be taken by telephone or other remote means." *Id.;* Fed.R.Civ.P. 30(b)(4); *Usov v. Lazar*, No. 13-CV-818, 2015 WL 5052497, at *1 (S.D.N.Y. Aug. 25, 2015); *Graham v. Ocwen Loan Servicing, LLC*, No. 16-CV-80011, 2016 WL 7443288, at *1 (S.D.Fla. July 1, 2016) ("[C]ourts enjoy wide discretion to control and place appropriate limits on discovery, which includes authorizing depositions to be taken by remote means").

29. "When exercising its discretion, this Court must balance claims of prejudice and those of hardship and conduct a careful weighing of the relevant facts." *Learning Resources,* 2020 WL 3250723, at *1.

### III. ARGUMENT

#### A. The COVID-19 Pandemic Provides Good Cause For Holding Remote Depositions

30. "COVID-19 related health concerns provide good cause for a remote videoconference deposition under the circumstances of this case." *Id*. "The President of the United States has declared a national emergency due to the spread of the COVID-19 virus, and the Centers for Disease Control have noted that the best way to prevent illness is to minimize person-to-person contact." *Sinceno v. Riverside Church in City of New York*, No. 18-CV-2156, 2020 WL 1302053, at *1 (S.D.N.Y. Mar. 18, 2020) (ordering "that all depositions in this action may be taken via telephone, videoconference, or other remote means"). To protect Court personnel, the bar, and the public against the severe risks posed by COVID-19, federal courts around the country – including the Middle District of North Carolina where Geotab's experts are located – have authorized video teleconferencing for a number critical criminal proceedings that had previously been conducted in person and imposed a moratorium on various other court proceedings. *See* General Order 16 (https://www.ncmd.uscourts.gov/sites/ncmd/files/Amd_SO13_3_COVID-19.pdf). These restrictions remain in effect through the present day.

31. The general concern over the risks posed by COVID-19 are heightened in this case for several reasons. First, members of Geotab's counsel are in a high risk category if exposed to COVID-19. Second, counsel for the parties will be traveling to Durham, North Carolina, which is an emerging COVID-19 hotspot. Third, Geotab's counsel located in Massachusetts would be subject to a 14-day quarantine upon return to Massachusetts from North Carolina. Fourth, the CDC has advised the public that traveling increases the risk of contracting and spreading the virus that causes COVID-19.

32. Lastly, good cause exists for proceeding with the depositions, even if they are to be held remotely and not in person, because this case has now been going on for over four years without having completed expert discovery. Federal Rule of Civil Procedure 1 states that Geotab has a right to a "just, speedy, and inexpensive determination" and should not be held hostage until the COVID-19 pandemic permits in-person depositions as preferred by Sonrai.

**B.      Remote Depositions Would Not Prejudice Any Party**

33. "[R]emote depositions are a presumptively valid means of discovery even without the in-person interaction, and many courts have held that remote videoconference depositions offer the deposing party a sufficient opportunity to evaluate a deponent's nonverbal responses, demeanor, and overall credibility." *Learning Resources,* 2020 WL 3250723, at *3 (internal citations omitted).

34. Moreover, no party would be prejudiced as shown through the prior conduct in this case. Each party in this litigation, including Sonrai, has already ***voluntarily*** attended previous depositions remotely. Indeed, Sonrai ***questioned*** Waste Connections' corporate representative, Charles Palmer, ***by Skype*** during a December 5, 2018, deposition in lieu of attending the deposition in person. Sonrai's voluntary choice to question Mr. Palmer remotely by Skype instead of attending the deposition in person shows Sonrai's willingness to take depositions by videoconference technology. Sonrai cannot argue that Mr. Palmer was not an unimportant witness, and thus their choice to depose him by Skype is different than deposing Geotab's experts. This is because Sonrai went through great lengths to depose Mr. Palmer a *second time*, highlighting the importance of the Palmer deposition. Clearly, Mr. Palmer was an important witness, and yet Sonrai chose to question him in 2018 by Skype, a form of videoconferencing.

35. Lastly, to the extent that Sonrai objects because it lacks access to appropriate teleconferencing technology, Geotab would be glad to make available to all parties the LiveLitigation platform (*see* https://livelitigation.com/) through the O'Brien and Levine Court Reporting Service for the depositions of Geotab's experts, if Geotab's motion is granted.

## IV. CONCLUSION

36. Any *preference* that Sonrai may now have to depose Geotab's experts in person is outweighed by the risks posed by the COVID-19 pandemic and the hardship that Geotab will likely experience if its counsel is forced to travel to Durham, North Carolina, or is unable to be physically present during Geotab's experts' depositions, if held in person.

37. For these reasons, the Court should grant Geotab's motion for a protective order and require that, to the extent Sonrai intends to take the deposition(s) of Geotab's expert witnesses, that such deposition(s) be held either telephonically or using a videoconferencing technology having sufficient security to protect information designated as confidential under the Agreed Confidentiality Order, as amended (Dkt. Nos. 154, 293).

Dated: June 19, 2020

Respectfully submitted,

Kathleen A. Lyons
Arne M. Olson
OLSON & CEPURITIS, LTD.
20 N. Wacker Drive, 36th Floor
Chicago, IL 60606
Tel: (312) 580-1180
klyons@olsonip.com
aolson@olsonip.com

*/s/ Jason W. Balich*
Michael A. Albert
Jason W. Balich (*pro hac vice*)
Marie McKiernan (*pro hac vice*)
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
(617) 646-8000
malbert@wolfgreenfield.com
jbalich@wolfgreenfield.com
mmckiernan@wolfgreenfield.com

*Counsel for Defendant Geotab, Inc.*

**CERTIFICATE OF SERVICE**

      I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

                                                */s/ Jason W. Balich*
                                                Jason W. Balich