**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SONRAI SYSTEMS, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 16 C 3371 |
| | ) | |
| **ANTHONY ROMANO, GEOTAB,** | ) | **Judge Thomas M. Durkin** |
| **INC., and HEIL CO., d/b/a** | ) | |
| **ENVIRONMENTAL SOLUTIONS** | ) | **Magistrate Judge Jeffrey I. Cummings** |
| **GROUP,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is defendant Anthony Romano's motion for a protective order to defendant Sonrai Systems, LLC to return and destroy attorney-client privileged documents (Dckt. #384). The documents in question are a sequence of text messages that were exchanged between Romano and attorney Kate Kanabay between February 10 and February 11, 2016. The parties dispute: (1) whether the text messages are protected by the attorney-client privilege; (2) if so, whether Romano waived any privilege due to his delay in objecting to Sonrai's use of the text messages after he had notice that Sonrai had acquired the texts and intended to rely on them in this lawsuit; and (3) whether the text messages fall outside the coverage of the attorney-client privilege based upon the "crime-fraud" exception. For the reasons set forth below, Romano's motion is denied.

**I.      BACKGROUND**

Plaintiff Sonrai Systems, LLC brought this suit against its former employee Anthony Romano, Geotab, Inc. and Heil Co. alleging, *inter alia,* breach of fiduciary duty arising out of an

alleged scheme by Romano to usurp Sonrai's customers and assist his new employer Heil in developing and launching a product first developed by Sonrai. Sonrai asserts that its forensic investigation of Romano's devices reveals that by at least December 2015, about a month before his resignation from Sonrai, Romano was communicating with his long-time personal attorney Kate Kanabay, employees and executives at Heil, and others in the waste industry regarding his departure from Sonrai and his plans with Heil moving forward.

Sonrai has filed a renewed motion for sanctions in which it asserts that discovery has shown that Romano downloaded and transferred confidential and proprietary Sonrai data from his Sonrai-issued laptop to a number of external hard drives (which have never been produced); wiped clean his Sonrai-issued laptop before returning it to Sonrai; and failed to return his Sonrai-issued iPad. (Dckt. #325.) According to Sonrai, all of this happened in the backdrop of Romano's ongoing conversations with Heil and others regarding his imminent plans to leave Sonrai. The text messages that are the subject of this motion are an integral part of Sonrai's motion for sanctions. The evidence relevant to determining whether the text messages between Romano and his attorney Kanabay are privileged is as follows:

Romano, the principal salesperson for Sonrai, resigned from Sonrai on January 11, 2016. (Dckt. #335 at Ex. 1 at 73.) Shortly thereafter, on January 17, 2016, Sonrai's Chief Operating Executive Dennis Keizer conducted an exit interview with Romano. (Dckt. #335 – Pl.'s Mem. in Support of Mot. for Sanctions at Ex. 11 (Keizer Aff. at ¶4).) Keizer asked Romano to return: (a) his Sonrai-issued laptop and hard drive; (b) all software, discs or back-ups of any electronic information obtained through his employment at Sonrai; (c) customer lists and vendor lists; (d) project or development work with any of Sonrai's contacts or customers; and (e) his Sonrai issued phone and iPad. (*Id.* at ¶4 and Ex. A.)

2

After Romano failed to return his Sonrai-issued devices by February 6, 2016, Sonrai's former counsel David Stieper sent a letter to Romano demanding that he return all Sonrai-issued devices and property in his possession by February 11.  The stated purpose of the letter was to enforce Sonrai's "post-employment covenants including Sonrai's legal right to obtain immediate return of Sonrai property" in Romano's possession or control.  (Dckt. #403 – Sonrai's Reply in Support of Mot. for Sanctions at Ex. 1.)  Stieper made it clear that Sonrai's property included "a computer laptop, software, patent information and patent pending information, confidential sales, customer and pricing information, proprietary mapping information, processes and other information and intellectual property of Sonrai." (*Id*.)  Stieper also made clear that Sonrai expected a representation from Romano that he had not "duplicated or otherwise shared" Sonrai's confidential and proprietary information with any third parties, including Sonrai's customers or competitors.  (*Id*.)

Finally, Stieper informed Romano that his possession of Sonrai's confidential information "is in violation of Illinois Trade Secrets Act and Illinois Common law" and he expressed Sonrai's intent to protect its confidential data by "pursu[ing] all legal and equitable remedies against [Romano] and any third-party [with] which [he] shared this confidential [information]" including filing a lawsuit against him "as a result of [his] misappropriation and misuse of Sonrai property." (*Id*.).  The letter served as Sonrai's "final demand" and Stieper closed by warning Romano that Sonrai would "have no alternative but to seek refuge in Court" if he did not return Sonrai's property by Sonrai's deadline (February 11, 2016).  (*Id*.)

The next day, Romano's attorney  Kanabay sent an e-mail response to Sonrai's letter, stating that Romano would "promptly" turn over the laptop to her to "facilitate the exchange of the parties' property."  (Dckt. #335 at Ex. 15.)  Kanabay stated further:

> While in my possession, the laptop will not be used, and the information contained on the laptop will not be accessed by anyone. If there is particular information that Sonrai needs from the laptop immediately, I will coordinate with [Romano] and provide such information to the extent feasible.

(*Id*.) Kanabay made it clear that Romano "is aware of his legal obligations with regard to any confidential information of Sonrai he may possess." (*Id*.)

Kanabay then pivoted and asserted a laundry list of rights that Romano had against Sonrai. (*Id.*) Among other things, Kanabay claimed that Romano was due reimbursement for expenses, payment for three weeks of accrued vacation, a share of equity in Sonrai, and damages for Sonrai's tortious interference with Romano's business relationships and creation of a hostile working environment. Kanabay closed her e-mail with the following:

> As you are likely aware, the parties have a long history, and it would be unfortunate if past business practices have to be rehashed in a public forum. We believe it is in everyone's best interests to resolve all disputes between [Romano] and Sonrai and to enter into a full mutual release as soon as possible.

(*Id*.)

On February 10, 2016 (the day before Sonrai's deadline for return of the property), Romano and Kanabay exchanged the following text messages over the course of a few hours:

| | |
|---|---|
| **Romano:** | Should I scrub the phone. Take it back to factory defaults. |
| **Kanabay:** | Not sure it matters. Be sure to leave the app stuff you mentioned. |
| **Romano:** | Leaving 2 files on Mac desktop. Rep serv contract and Polk county invoice. |
| **Kanabay:** | Love it. |
| **Romano:** | I'm f***ing killing myself to clean this machine and get it to the Philly airport by 9 o'clock. How much does our position lessen if you have it by Friday? |
| **Kanabay:** | Don't kill yourself. Friday is fine. |

| | |
|---|---|
| **Romano:** | I just feel myself in a panic and scrambling to get this done. Would love to have it out bound to you today so you can say with certainty that you have in your office but tomorrow so much better for me. |
| **Kanabay:** | Hard to believe one day diff will matter much. |
| **Romano:** | Hate that answer. |
| **Kanabay:** | Well I'm sorry! I can't predict the future and what could happen you know. |
| **Romano:** | If u tell them u got it and not be available tomorrow. 2 birds dead 1 stone. |
| **Kanabay:** | I'm really not worked up about it. Send it tomorrow. |
| **Kanabay:** | Can you drop it off when you drop off Sara? Then Tomorrow if they ask, I could say it's out of your hands. |
| **Romano:** | Don't smart sending it with her to them. I'm gonna try to make ups. |
| **Kanabay:** | I meant drop it at ups in the morning early |
| **Romano:** | Gotcha could do that. |

The following morning, the conversation continued:

| | |
|---|---|
| **Kanabay:** | Morning. Where we at? |
| **Romano:** | Machine is in route to you**.** |
| **Kanabay:** | Phone too? |

A few hours later, Romano said:

| | |
|---|---|
| **Romano:** | I need a consulting agreement. Do you have a template or language you're comfortable with? Landed a whale. Progressive waste is interested in securing my services. |

(Dckt. #335 at Ex. 16.)

Ultimately, Sonrai received the laptop and phone at issue from Kanabay. Sonrai promptly had a forensic image of the laptop created, which revealed the above text messages that Romano had deleted. A subsequent forensic investigation of the laptop revealed further that

between February 10 and 11, 2016, 236 gigabytes of data was erased from the laptop and 30 gigabytes of data was transferred from the laptop to an external drive. (Dckt. #335 at Ex. 10 (Quellos Aff.).) Romano has maintained throughout this litigation that he only deleted personal data – including his communications with Kanabay – from his devices. However, Sonrai's forensic investigation has revealed that Romano also appears to have deleted a substantial amount of Sonrai's data. (*See* Dckt. #335 at Ex. 11 at ¶9 & Exs. C-E.) (noting that the forensic examination used file carving to recover 19 gigabytes of data which included Sonrai-related files and data).[1]

## II.    ANALYSIS

Not surprisingly, Sonrai relies heavily in its renewed sanctions motion on the above text message exchange between Romano and Kanabay to support its claim of spoliation and request for default judgment against Romano. In the instant motion for a protective order, Romano argues that the text messages are protected by the attorney-client privilege and he denies that he waived his privilege. Romano seeks an order requiring Sonrai to return and destroy any privileged attorney-client communications between Romano and Kanabay and prohibiting the use of such communications in this litigation. Sonrai opposes this motion arguing first that the text messages are not protected by the attorney-client privilege because they are "simply a play-by-play of Romano's activities and emotions" and do not include privileged legal advice. (Dckt. #399 – Sonrai's Response at 4.) Sonrai argues further that even if the text messages are privileged, Romano has waived that privilege by failing to act in a timely manner to remedy the

---

[1] For perspective, "one gigabyte of e-mails is over 100,000 pages of documents, assuming there are not attachments, which is a faulty assumption." *Snider v. Danfoss,* No. 15 CV 4748, 2017 WL 2973464, at *2 n.5 (N.D.Ill. July 12, 2017), *report and recommendation adopted*, No. 15 CV 04748, 2017 WL 3268891 (N.D.Ill. Aug. 1, 2017); *Riley v. California,* 573 U.S. 373, 394 (2014) ("Sixteen gigabytes translates to millions of pages of text, thousands of pictures, or hundreds of videos.").

disclosure and, further, that the crime-fraud exception divests the text messages of any privilege that they might otherwise have enjoyed.

> **A. The Text Messages Between Romano And Kanabay Fall Within The Definition Of The Attorney Client Privilege Because They Involved Legal Advice And Were Made In Confidence**

Romano, as the party asserting the attorney-client privilege over the text messages, has the burden of establishing all essential elements of the privilege. *See, e.g., United States v. Lawless,* 709 F.2d 485, 487 (7th Cir. 1983). The attorney-client privilege applies:

> (1) Where legal advice of any kind is sought; (2) from a professional legal adviser in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at [the client's] instance permanently protected; (7) from disclosure by himself or by the legal adviser; (8) except the protection be waived.

*Id.*; *United States v. White,* 970 F.2d 328, 334 (7th Cir. 1992); *Sullivan v. Alcatel-Lucent USA, Inc.,* No. 12 CV 7528, 2013 WL 2637936, at *2 (N.D.Ill. June 12, 2013) (same, citing Illinois case law).

"Communications from the attorney to the client also may be protected, but only (1) if it is shown that the client had a reasonable expectation in the confidentiality of the statement; or put another way, if the statement reflects a client communication that was necessary to obtain informed legal advice (and) which might not have been made absent the privilege; or (2) if the communications tend to directly or indirectly reveal a client confidence." *Thorncreek Apartments III, LLC v. Vill. of Park Forest*, No. 08 CV 1225, 2011 WL 3489828, at *3 (N.D.Ill. Aug. 9, 2011) (internal quotations omitted); *see also Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000), amended (Apr. 4, 2000) ("[S]tatements made by the lawyer to the client will be protected in circumstances where those communications rest on confidential information

obtained from the client…or where those communications would reveal the substance of a confidential communication by the client.") (internal citations omitted).

At issue between the parties is whether the text messages involved legal advice and were made in confidence.  Although Sonrai contends that the text thread between Romano and Kanabay is simply a play-by-play of Romano's actions and the logistics of returning the devices to Sonrai, Romano asserts[2] – and the Court finds – that the thread contains legal advice under the definition of the attorney-client privilege.

As explained above, a few days before this text thread began, Stieper (Sonrai's attorney) sent to Romano a letter demanding the return of all of Sonrai's property in his possession, which Sonrai defined as not only the devices themselves, but also patent information, confidential sales, customer and pricing information, and other intellectual property and data on the devices.  In her response on Romano's behalf, Kanabay confirmed that Romano "was aware of his legal obligations with regard to any confidential information of Sonrai he may possess."  In this factual context, Romano's question to Kanabay whether he should "scrub" the phone, and the exchange that followed relating to Romano's "clean[ing] [of] this machine" (*i.e.*, the deletion of data from the laptop) and the legal significance of failing to return Sonrai's property within the deadline set by Sonrai clearly reflect Romano's requests for legal advice.  The text messages also reflect that Kanabay provided legal advice – the soundness of which need not be addressed at this junction – regarding these matters.

The Court further finds that the text messages between Romano and Kanabay were made in confidence notwithstanding the fact that they were made and/or maintained on Romano's

---

[2] *See* Dckt. #383 at 4 ("The recovered communications were between attorney and client and concerned legal advice regarding Mr. Romano's orderly separation from Sonrai and his business endeavors thereafter.")

8

Sonrai-issued devices.  *See RBS Citizens, N.A. v. Husain,* 291 F.R.D. 209, 216 (N.D.Ill. 2013)

("The attorney-client privilege only shields communications that were intended to be

confidential").  Although the Seventh Circuit has not decided whether there can be a reasonable

expectation of privacy on a company-issued device, Romano has provided persuasive authority

supporting his position.  For example, in *Curto v. Med. World Commc'ns, Inc.*, No. 03 CV 6327,

2006 WL 1318387 (E.D.N.Y. May 15, 2006), an employment discrimination case, the plaintiff

used her company-issued laptop to communicate with her attorney while employed by defendant.

Defendant terminated plaintiff and demanded return of the laptop.  Before returning the laptop,

plaintiff "deleted all personal files and written communications to counsel."  *Id.* at *1.  As here,

defendant's subsequent forensic examination of the laptop uncovered plaintiff's communications

with her attorney, which defendant then introduced into the litigation during discovery.

In determining whether plaintiff's communications on the company laptop were

protected, the *Curto* court reviewed, among other things, a balancing test set forth in *In re Asia

Global Crossing, LTD.*, 322 B.R. 247 (S.D.N.Y.Bankr. 2005).  Under that test, courts are tasked

with considering four factors: "(1) does the corporation maintain a policy banning personal or

other objectionable use, (2) does the company monitor the use of the employee's computer or e-

mail, (3) do third parties have a right of access to the computer or e-mails, and (4) did the

corporation notify the employee, or was the employee aware, of the use and monitoring

policies?"  *Id.* at 257.

After applying the *Asia Global* factors, the *Curto* court concluded that plaintiff had not

waived her right to assert the attorney-client privilege and work product protection with regard to

any of the documents recovered by defendants on any company-issued devices.  *Curto*, 2006 WL

1318387, at *3-8.  Other courts have reached the same conclusion after considering the *Asia*

*Global* factors. *See, e.g., United States v. Nagle*, No. 09 CR 384, 2010 WL 3896200, at *5 (M.D.Pa. Sept. 30, 2010) ("In light of the foregoing assessment of the factors set forth in [*Asia Global*], the court concludes that Campbell's belief that in storing the chronology on his [company-issued] computer's hard drive it would remain private was objectively reasonable"); *DeGeer v. Gillis*, No. 09 CV 6974, 2010 WL 3732132, at *9 (N.D.Ill. Sept. 17, 2010) ("Applying these factors to the limited record, the Court concludes that DeGeer did not waive the privilege"); *compare Goldstein v. Colborne Acquisition Co., LLC*, 873 F.Supp.2d 932, 937 (N.D. Ill. 2012) (considering the *Asia Global* factors and determining that the defendants' "subjective belief that their [e-mail] communications were confidential was not a reasonable one in light of the company policy in place…").

The Court's consideration of the *Asia Global* factors tips the scales in Romano's favor on this issue. First, as Romano argues, Sonrai's CEO Chris Flood testified that he did not believe Sonrai had an electronic use policy and that he had no objection to Romano using Sonrai-issued devices for appropriate personal uses. (Dckt. #384 at Ex. 2 – Flood Dep. Tr. at 14-20.) Romano also testified that he was given the computer for "not only work, but as [his] personal machine." (Dckt. #335 at Ex. 1 at 81.) Turning to the next two factors, the Court has seen no evidence that Sonrai could remotely monitor Romano's devices or that any third parties had access to the devices. Indeed, Romano testified that he was in the office less than once a month, so his company-issued devices were rarely physically present in Sonrai's offices. *See Curto*, 2006 WL 1318387, at *5 ("Plaintiff's laptops were not connected to [Defendant's] computer server and were not located in [Defendant's] offices; thus, [Defendant] was not able to monitor Plaintiff's activity on her home-based laptops or intercept her e-mails at any time."). Lastly, since Sonrai did not appear to have any use and monitoring policies, it clearly did not notify Romano of such

policies. All of this leaves the Court to conclude that Romano's text messages with Kanabay were made in confidence because he had a reasonable expectation of privacy on his Sonrai-issued devices.[3]

In sum: the Court finds that the text messages were protected by the attorney-client privilege in the first instance because they reflect Romano's request for legal advice and Kanabay's provision of such advice, and Romano had a reasonable expectation that they would remain in confidence.[4]

### B. Notwithstanding The Privileged Nature Of Romano's Text Message Exchange With Kanabay, Romano Waived The Privilege By Failing To Act Promptly After He Had Notice That The Texts Were Inadvertently Disclosed

Sonrai concedes that Romano's text message exchange with Kanabay was inadvertently disclosed. (Dckt. #399 at 5.) Where, as here, otherwise privileged documents have been

---

[3] The Court does, however, reject Romano's assertion that Sonrai "improperly recovered" the text messages from the laptop that he returned to Sonrai. (Dckt. #420 at 4.) Although Romano may have had an expectation of privacy on the Sonrai-issued devices, he does not dispute that the laptop is Sonrai's property. Indeed, Kanabay informed Stieper that Romano would "promptly" turn the laptop over to her to "facilitate the exchange of the parties' property." (Dckt. #335 at Ex. 15.) Moreover, Romano – who acknowledged during his deposition that it would be appropriate for Sonrai to look at the computer of an ex-employee (Dckt. #335 at Ex. 1 at 135) – cites no authority to support the proposition that it was improper for Sonrai to do a forensic examination of its own laptop. Finally, the cases that Romano does cite are inapposite. *See, e.g., In re Ashley Madison Customer Data Sec. Breach Litig.,* 2016 U.S. Dist. LEXIS 57619, at *21-22 (E.D.Mo. Apr. 29, 2016) (party precluded from using attorney client communications that were "stolen" from the other party).

[4] In his motion, Romano seeks broad protection of any and all privileged communications between Romano and Kanabay surrounding his departure from Sonrai. For purposes of this ruling, however, the Court limits its consideration only to those purportedly privileged communications that are attached to Sonrai's renewed sanctions motion. In addition to the text messages, Sonrai attached an e-mail exchange between Kanabay, Romano, and a third-party (Jennifer Testa) to its motion for sanctions, (Dckt. #335 at Ex. 3). Romano does not argue that these e-mails are protected by the attorney-client privilege and the Court finds that the privilege does not extend to them for two reasons. First, the e-mails were either addressed to or sent from a third party so that they were not held in confidence between Romano and Kanabay. Second, the e-mails do not reflect any legal advice or a request for legal advice from Romano. Thus, Romano's motion for a protective order with respect to these e-mails is denied because they were never protected by the attorney-client privilege.

11

inadvertently disclosed, the court must determine whether the client has waived the attorney-client privilege.  *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 387-88 (7th Cir. 2008) ("[E]ven if the document is found to be [privileged] and inadvertently produced, the court must, nonetheless, determine whether privilege was waived.") (internal quotations omitted).  To do so, courts often consider the following factors: "(1) the reasonableness of the precautions taken to prevent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness."  *Judson*, 529 F.3d 371, 388-89 (7th Cir. 2008).[5]  Primarily at issue here is whether Romano's delay in taking steps to rectify the inadvertent disclosure supports a finding of waiver. The Court finds that it does.

Sonrai quoted verbatim a portion of the above text message exchange between Romano and Kanabay in the initial complaint filed against Romano and other defendants back on March 16, 2016, only five weeks after the texts were sent.  (Dckt. #1.)  In particular, the complaint included the following allegations against Romano:

> 39.     *After reacquiring the laptop and cellphone from Romano, Plaintiffs hired computer forensic experts to recover the information that had been "wiped."* During that process, Plaintiffs learned that prior to deleting the laptop hard drive, from October 16, 2015 through February 11, 2016, Romano had backed-up the hard drive on his separate backup devices.

---

[5]  The *Judson* factors are consistent with Federal Rule of Evidence 502(b), which Sonrai relies on in its response brief.  *See Carmody v. Bd. of Trustees of Univ. of Illinois*, 893 F.3d 397, 406, n.2 (7th Cir. 2018) ("Rule 502 superseded several conflicting approaches to inadvertent disclosures, but the advisory committee notes endorsed the factors in *Judson Atkinson Candies*.").  However, as Romano points out, Rule 502(b) applies to the disclosure of privileged documents "*in a federal proceeding* or to a federal office or agency."  (emphasis added).  As such, the Rule is inapplicable here where the disclosure took place *before* the litigation began.  *See MSP Real Estate, Inc. v. City of New Berlin*, No. 11 CV 281, 2011 WL 3047687, at *2 (E.D.Wis. July 22, 2011) ("Federal Rule of Evidence 502(b) does not apply because the disclosure of documents by New Berlin did not occur 'in a Federal proceeding or to a Federal office or agency.'  Therefore, federal common law applies.").  Thus, the federal common law as explicated by *Judson* and related case law applies here.  In any event, the Court notes that the result would be the same if the analysis were conducted under Rule 502(b).  *See Carmody*, 893 F.3d at 406, n.2 (noting that "cases decided before adoption of Rule 502 remain 'pertinent to provide examples'"), *quoting* 8 Wright & Miller, Federal Practice & Procedure §2016.3 (3d ed.).

40.    *Recovered information from Romano's laptop included text messages* stating:

• "Should I scrub the phone."

• "I'm [f***ing] killing myself to clean this machine and get it to the Philly Airport by 9 o'clock. How much does our position lessen if you have it by Friday."

• "I just feel myself in a panic and scrambling to get this done."

(*Id*. at ¶¶ 39-40.) (emphasis added.)  Thus, Romano was placed on notice that Sonrai had recovered his text messages in mid-March 2016, roughly five weeks after his text message exchange with Kanabay occurred.

The significance of Sonrai's allegations regarding the text messages was neither hidden nor unappreciated.  In his memorandum in support of his motion to dismiss the complaint, Romano specifically referenced Sonrai's allegation that he had "wiped" his laptop and cell phone and that Sonrai had "recovered" the wiped data.  (Dckt. #23-1 at 18-19 (citing to paragraphs 38 and 39 of the complaint)).  In its response to the motion to dismiss, Sonrai asserted that Romano made a concerted effort to destroy Sonrai's confidential information and it again quoted the text messages regarding Romano's efforts to "clean" and "scrub" his Sonrai-issued devices.  (Dckt. #40 at 18-19).  Finally, in his March 29, 2017 ruling on the motion, Judge Durkin observed that Sonrai had "allege[d] that Romano held on to his laptop and phone after he left the company" and that Sonrai had "*quote[d] some allegedly suspicious text messages recovered from his laptop when he returned it.*"  (Dckt. #61 at 27) (emphasis added).

Thus, despite being put on notice in mid-March 2016 that Sonrai obtained access to his text messages with Kanabay through a forensic review of the laptop he returned, the record indicates that Romano did not object to Sonrai's possession and use of those messages until *17*

13

*months* later when Romano's counsel sent an August 31, 2017 letter to Sonrai asserting that any communications between Romano and Kanabay were privileged and demanding the destruction of any documents containing such privileged communications.[6]  (Dckt. #384 at Ex. 1.)  Romano attempts to excuse this delay by asserting that Sonrai initially hid the true nature of the text messages thereby delaying his discovery of the disclosure.  (*See* Dckt. #420 at 2 – arguing that Sonrai "sprinkled commentary and asserted allegations using the content of the texts without expressly identifying the source material.")  The Court rejects Romano's assertion.  Sonrai explained exactly how it obtained Romano's text messages (namely, by conducting a forensic examination on the laptop after Romano returned it) in the complaint itself.  Furthermore, although Sonrai did not explicitly identify Kanabay as the recipient of those texts in the complaint, Romano – who sent the provocative texts only five weeks before the complaint was filed – undoubtedly knew she was on the other end of that exchange.  Consequently, the Court finds that he knew or should have known of the inadvertent disclosure of the text messages when he received the complaint.  *See, e.g., Arch Coal, Inc. v. Fed. Ins. Co.,* No. 05 CV 00712, 2006 WL 1391317, at *2 (E.D.Mo. May 22, 2006) ("In evaluating promptness at least one court has considered when the disclosing party realized, or *should* have realized, the inadvertent disclosure") (emphasis added).

On this record, the Court finds that Romano's 17-month initial delay in objecting to Sonrai's use of the privileged text messages and his additional protracted delay in seeking a protective order supports a finding of waiver.  As Sonrai observes, courts have found far shorter time periods of inaction are sufficient to affect a waiver.  *See e.g.*, *Walker v. White*, No. 16 CV

---

[6] After Sonrai failed to comply with these requests, Romano waited until May 29, 2020 – almost three additional years – to file this motion for a protective order.

7024, 2018 WL 2193255, at *4 (N.D.Ill. May 14, 2018) (holding that plaintiff failed to show "that prompt, reasonable steps were taken to rectify the alleged inadvertent disclosure" when counsel waited 45-days after the disclosure to request a clawback); *Harmony Gold U.S.A. v. FASA Corp.*, 169 F.R.D. 113, 117 (N.D.Ill. 1999) (two-week delay showed that plaintiff "dragged its feet in taking appropriate corrective action."); *see also Clarke v. J.P. Morgan Chase & Co.,* No. 08 Civ. 02400(CM)(DF), 2009 WL 970940, at *6 (S.D.N.Y. Apr. 10, 2009) (two month delay in claiming privilege showed that defendant did not promptly try to rectify disclosure) (citing cases).

### C. The Crime-Fraud Exception Applies To The Text Messages Between Romano and Kanabay.

Even if Romano did not otherwise waive his attorney-client privilege, Sonrai asserts that the crime-fraud exception excludes the text messages from the coverage of the privilege because Romano engaged in the text exchange with Kanabay immediately before and during his spoliation of evidence (namely, Romano's efforts to "clean" and "scrub" his Sonrai-issued devices of Sonrai data). *See Rambus, Inc. v. Infineon Techs. AG,* 220 F.R.D. 264, 281 (E.D.Va. 2004) ("Spoliation is the willful destruction of evidence or the failure to preserve potential evidence for another's use in pending or future litigation.") (internal quotation marks omitted); *Am. Family Mut. Ins., Co. v. Roth,* No. 05 C 3839, 2009 WL 982788, at *11 (N.D.Ill. Feb. 20, 2009). The parties dispute whether the crime-fraud exception applies to claims of spoliation – which is neither a crime nor a fraud (*Rambus,* 220 F.R.D. at 281) – as well as whether Sonrai has made the required showing for the application of the doctrine.

1.     **The crime fraud exception applies to communications related to a client's spoliation of evidence**

It is well settled that the protection offered by the attorney-client privilege is "not absolute." *Nagle*, 2010 WL 3896200, at \*5.  The crime-fraud exception "places communications made in furtherance of a crime or fraud outside the attorney-client privilege." *United States v. BDO Seidman*, *LLP*, 492 F.3d 806, 818 (7th Cir. 2007) (citing to *United States v. Zolin,* 491 U.S. 554, 563 (1989)). "This exception comes from the recognition that when legal advice relates 'not to prior wrongdoing, but to future wrongdoing,' the privilege goes beyond what is necessary to achieve its purpose." *Monco v. Zoltec Corp.*, No. 17 CV 6882, 2018 WL 11195522, at \*2 (N.D.Ill. Sept. 28, 2018), *quoting Zolin,* 491 U.S. at 562-63; *BDO Seidman,* 492 F.3d at 818 (explaining that the attorney-client privilege necessarily will protect the confidences of wrongdoers with respect to their prior – but not future – wrongdoing to achieve the privilege's purpose of promoting the broader public interests in the observance of law and the administration of justice) (internal quotation marks omitted).  As courts have explained, while "the confidentiality of communications and work product facilitates the rendering of sound legal advice," "advice in furtherance of a fraudulent or unlawful goal cannot be considered 'sound.'" *Rambus,* 220 F.R.D. at 281; *NXIVM Corp. v. O'Hara,* 241 F.R.D. 109, 135 (N.D.N.Y. 2007) (same).

The title of the crime-fraud exception "'is a bit of a misnomer'" given that "many courts have applied the exception to situations falling well outside of the definitions of crime or fraud," *Rambus,* 220 F.R.D. at 281, *quoting Blanchard v. Edgemark Fin. Corp.,* 192 F.R.D. 233, 241 (N.D.Ill. 2000), so long as the other "type[s] of misconduct are 'fundamentally inconsistent with the basic premises of the adversary system.'"  *Rambus,* 220 F.R.D. at 281, *quoting In re Sealed Case,* 676 F.2d 793, 812 (D.C.Cir. 1982); *Madanes v. Madanes,* 199 F.R.D. 135, 149 (S.D.N.Y.

16

2001) (same); *Cleveland Hair Clinic, Inc. v. Puig,* 968 F.Supp. 1227, 1241 (N.D.Ill. 1996) (holding that crime-fraud exception applied to communications in furtherance of "bad faith litigation conduct").

Significantly, several courts have expressly extended the crime-fraud exception to cases involving spoliation of evidence. For example, in *Rambus, Inc.*, *supra*, the court was tasked with determining whether the exception extends to "materials or communication created for planning, or in furtherance of, spoliation." In finding that it did, the *Rambus* court reasoned as follows:

> It is self-evident…that any communication between lawyer and client respecting spoliation is fundamentally inconsistent with the asserted principles behind the recognition of the attorney-client privilege, namely, observance of law or the administration of justice. Indeed, by intentionally removing relevant evidence from litigation, spoliation directly undermines the administration of justice. Moreover, an attorney who counsels a client to spoliate evidence is not advancing the observance of the law, but rather counseling misconduct. Thus, there is no logical reason to extend the protection of the attorney-client privilege to communications undertaken in order to further spoliation.

220 F.R.D. at 283 (internal citations and quotations omitted); *see also Williams v. Big Picture Loans, LLC*, No. 3:17-CV-461, 2019 WL 1983048, at *15 (E.D.Va. May 3, 2019) (agreeing that "the crime/fraud exception applies to materials or communications to plan or further the spoliation of evidence"); *Wachtel v. Guardian Life Ins. Co.,* 239 F.R.D. 376, 380 (D.N.J. 2006) (exception encompasses "communications and work product used in furtherance of the spoliation of evidence"); *see also In re Sealed Case,* 754 F.2d 395, 401 (D.C.Cir. 1985) (applying crime/fraud exception in a case involving "willful, systematic and extensive" destruction of subpoenaed documents).

The Court finds the reasoning in *Rambus* to be persuasive. Furthermore, although the Seventh Circuit has yet to consider the question, this Court further finds it improbable that the Court of Appeals would conclude that a "client's interest in confidential communications

17

regarding the destruction of documents in anticipation of litigation would outweigh the societal need to assure the integrity of the process by which litigation is conducted which, of course, is the purpose of prohibiting spoliation of evidence." *Rambus,* 220 F.R.D. at 282. Consequently, the Court agrees that the crime-fraud exception can extend to cases of spoliation given that the type of misconduct at issue is "fundamentally inconsistent with the basic premises of the adversary system." *Madanes*, 199 F.R.D. at 148–49.

### 2. Sonrai has met its burden of showing that the crime-fraud exception should apply to the text messages

Sonrai, as the party advocating for the application of the crime-fraud exception, "must present prima facie evidence that 'gives colour to the charge' by showing 'some foundation in fact.'" *BDO Seidman,* 492 F.3d at 818, *quoting United States v. Al-Shahin,* 474 F.3d 941, 946 (7th Cir. 2001). Thus, in this case, Sonrai must provide a foundation in fact to show: (1) that Romano was planning or engaged in spoliation when the attorney-client communications took place; and (2) that the communications with Kanabay were in furtherance thereof. *See, e.g., Mattenson v. Baxter Healthcare Corp.,* 438 F.3d 763, 769 (7th Cir. 2006); *In re Heraeus Kulzer GmbH*, No. 09 CV 530, 2012 WL 1493883, at *1 (N.D.Ind. Apr. 26, 2012); *Rambus,* 220 F.R.D. at 283. "To satisfy the 'in furtherance of' element of the crime-fraud exception, a logical link must exist between the privileged communication and the proposed crime or fraud. That is, the legal advice must relate to future illicit conduct by the client; it must be the causa pro causa, the advice that leads to the deed." *In re Heraeus*, 2012 WL 1493883, at *1, *quoting In re Neurontin Antitrust Litigation*, 801 F. Supp. 2d 304, 309–310 (D.N.J. 2011). The "burden is not a particularly heavy one*," In re Grand Jury Investigation,* 445 F.3d 266, 274 (3d Cir. 2006), and the determination of whether the party advocating for the exception has made the prima facie showing is made in the court's sound discretion. *In re Sealed Case,* 754 F.2d at 399.

18

The Court finds based on the record before it that Sonrai has made a sufficient showing that the text messages fall within the crime-fraud exception.  First, Sonrai has made a prima facie showing that Romano was planning and engaged in spoliation activity when he sought the legal advice of Kanabay during the text message exchange.  Four days before the text message exchange began, Stieper (Sonrai's attorney) sent Romano a letter in which he specifically informed Romano of his legal obligation to return Sonrai's corporate property including its confidential sales, customer, pricing, and proprietary mapping information and threatened to sue him for "misappropriation and misuse of Sonrai property."  Kanabay promptly responded to Stieper by confirming that Romano understood his legal obligations.  Nonetheless, Romano proceeded to wipe clean his Sonrai issued laptop and cell phone and deleted at least 19 GBs of Sonrai's data in the process.  Evidence that Romano deleted Sonrai's data in the face of his legal obligation to preserve and return the data and his knowledge that litigation was forthcoming more than suffices to establish a prima facie showing of spoliation.  *See Rambus,* 220 F.R.D. at 281; *Am. Family Mut.,* 2009 WL 982788, at *11.

Second, there can be no question that Romano's communications with Kanabay regarding how to proceed with the devices were made in furtherance of the spoliation.  Despite his knowledge that he had a legal obligation to preserve and return Sonrai's data, Romano sought legal advice from Kanabay regarding whether he should "scrub" his Sonrai-issued phone and "take it back to factory defaults."  Kanabay's response – "I'm not sure it matters…Be Sure to leave the app stuff you mentioned" – amounted to legal advice that could have reasonably been understood by Romano as a green light for his plan to wipe everything but two applications. (*See* Dckt. #335 at Ex. 16 – Romano: "Leaving 2 files on MAC desktop.[7]  Rep serv contract and

---

[7] Romano clarified in his deposition that he was referring to the MAC laptop, and not to a MAC desktop. (Dckt. #335 at Ex. 1 at 113-14).

Polk county invoice." Kanabay: "Love it."). Romano thereafter proceeded to scrub the devices, even "killing" himself to "clean" the laptop, and leaving nothing on the laptop but the "2 files."

Romano sought additional legal advice from Kanabay regarding the potential implications of returning the Sonrai-issued devices after the deadline set by Stieper's letter. (*See* Dckt. #335 at Ex. 16 – Romano: "How much does our position lessen if you have it by Friday?" Kanabay: "Don't kill yourself. Friday is fine. . . . Hard to believe one day diff will matter much."). Romano was seemingly uncomfortable with Kanabay's response and suggested that she inform Sonrai – falsely – that she had the devices in her possession but was unavailable to provide them on the date of the deadline. (*Id.* – "If u tell them i got it and not be available tomorrow. 2 birds dead 1 stone".) Kanabay did not agree with this plan but she did suggest that Romano drop the devices off with a third party early in the morning on the deadline date so that she could tell Sonrai that the devices were out of his hands if they asked. (*Id.*) Romano agreed with this plan. (*Id.*) For these reasons, there is "a reasonable basis to believe" based on this record that Kanabay's services were used by Romano in furtherance of his spoliation of evidence. *See In re Economou,* 362 B.R. 893, 898 (Bankr.N.D.Ill. 2007). Accordingly, Sonrai has shown that the crime-fraud exception is applicable and the text messages are not protected by the attorney client privilege for this reason as well as waiver.

## CONCLUSION

For all of the above reasons, defendant Anthony Romano's motion for a protective order to return and destroy attorney-client privileged documents (Dckt. #384) is denied. The text messages between Romano and Kanabay can be used in this litigation, including in connection with Sonrai's pending motions for sanctions against Romano and Heil.


**ENTERED:**



**Jeffrey I. Cummings**
**United States Magistrate Judge**


**Dated:   November 30, 2020**

21