!

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SONRAI SYSTEMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16 C 3371 |
| | ) | |
| ANTHONY ROMANO, GEOTAB, | ) | Judge Thomas M. Durkin |
| INC., and HEIL CO., d/b/a | ) | |
| ENVIRONMENTAL SOLUTIONS | ) | Magistrate Judge Jeffrey I. Cummings |
| GROUP, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court is plaintiff Sonrai Systems LLC's motion for leave to disclose a rebuttal expert (Dckt. #427). For the reasons set forth below, Sonrai's motion is granted in part and denied in part.[1] On or before April 5, 2021, Sonrai shall provide defendants with the amended report of its rebuttal expert Majid Sarrafzadeh that includes only the portions of the report that are proper rebuttal as specified below. Defendants are granted leave to take the remote video deposition of Majid Sarrafzadeh on or before May 10, 2021.

**I.     BACKGROUND**

**A.     Sonrai's Allegations**

Plaintiff Sonrai brought this suit against its former employee Anthony Romano, Geotab, Inc., and Heil Co. alleging, *inter alia*, breach of fiduciary duty arising out of an alleged scheme

---

[1] Although the Court deferred its ruling on Sonrai's motion for leave to supplement the report of damages expert Suzanne Stuckwisch due to the limited re-opening of fact discovery, (*see* Dckt. #468 at 7), the parties did not argue that the limited fact discovery permitted might affect their liability expert reports. Accordingly, the Court issues its ruling on this liability expert-related motion in an effort to bring the discovery period in this case closer to its end.

by Romano to usurp Sonrai's customers and assist his new employer Heil in developing and

launching a product first developed by Sonrai, the Vector product (hereinafter, "Vector").

According to Sonrai,

> Vector is a comprehensive telematics and vehicle information system for the
> waste hauling industry. Among other things, Vector enables a waste hauling
> truck fleet operator to monitor all relevant data from the truck chassis and the
> waste collection body in near real-time. This gives the fleet operator benefits in,
> among other areas, transit visibility, work order management, dispatch operations,
> route optimization and tracking, and inventory asset optimization.

(Dckt. #119 – Sec. Am. Compl. at ¶ 12.) Sonrai's Vector system included certain components

sourced from defendant Geotab, including an electronic control monitoring device known as

GO7, which Sonrai alleges it further augmented to meet its needs. (*Id.* at ¶ 13; Dckt. #433-2 at

5.)

Sonrai has alleged that while Sonrai and Heil were discussing a licensing and potential

purchasing deal of Vector, Heil entered into a confidentially agreement with Sonrai, pursuant to

which Sonrai shared confidential information regarding Vector.[2] (Dckt. #119-2.) According to

Sonrai, after it rejected Heil's proposal to license the Vector product, Heil worked with Romano

– both while he was still employed by Sonrai and after he resigned – to develop a competing and

identical product and poach Sonrai's customers. To do so, Sonrai alleges that in September

---

[2] The confidentiality agreement provides, in relevant part, that certain confidential "Evaluation Material" exchanged between the parties would be used solely for the purpose of evaluating the potential deal between Sonrai and Heil. (Dckt. #119-2 at 2.) The agreement defines "Evaluation Material" as "all notes, analyses, compilations, studies, interpretations or other documents, product schematics, specifications or drawings, descriptive materials, manufacturing procedures and specification, software (source code or object code), sales and customer information, market data, business policies or practices …" (*Id.*) Under the agreement, Evaluation Material "does not include information which (i) is or becomes generally available to the public other than as a result of a disclosure by the Receiving Party or any of its Representatives in breach of the terms of this letter agreement, (ii) was within the Receiving Party's possession, and which the Receiving Party can show was within its possession, prior to its being furnished to the Receiving Party by or on behalf of the Disclosing Party pursuant hereto or (iii) becomes available to the Receiving Party on a non-confidential basis from a source other than the Disclosing Party …" (*Id.*)

2016, Heil purchased a company called Alliance Wireless Technologies, Inc., now known as "3rd Eye." (Dckt. #119 at ¶ 6.) Sonrai contends that before the acquisition, 3rd Eye was a vehicle safety camera company with no capabilities of making a Vector-like product. (*Id*. at ¶ 61.) Sonrai alleges that after Heil's acquisition of 3rd Eye, Heil "migrated" its Vector knock-off project ("Enhance") – and eventually Romano himself – to 3rd Eye. (*Id*.) Based on these allegations, Sonrai brings claims against Heil for, *inter alia*, breach of the confidentiality agreement and unjust enrichment based on Heil's "misuse of Sonrai's confidential information and the use of Romano on the project to knock-off Vector." (*Id*. at ¶ 21-22.) Defendants deny Sonrai's allegations.

### B. Expert Discovery Timeline and the Parties' Liability Experts' Reports

On June 25, 2019, following a lengthy fact discovery period, this Court entered the following expert discovery schedule:

> Plaintiff is to disclose all experts by 9/30/19; depositions of plaintiff's experts are to be completed by 10/31/19; defendants are to disclose their experts by 12/9/19; and depositions of defendants' experts are to be completed by 2/3/20.

(Dckt. #304.) On October 1, 2019, over defendants' objection, the Court granted Sonrai's motion for extension of the expert schedule and ordered plaintiff to disclose the complete reports of its experts, both liability and damages, by November 12, 2019, and amended the remainder of the schedule accordingly, with a final expert closure date of March 16, 2020. (Dckt. #317.) Subsequently on November 14, 2019, the Court granted Sonrai's motion for leave to file – a few days late – the expert reports of liability expert Timothy Giardina, (*see* Dckt. #433-1), and damages expert Susan Stuckwisch. (Dckt. #322.)

Sonrai's liability expert Timothy Giardina is a principal member of a solid waste consulting firm with over 30 years of experience in the waste management field. (Dckt. #433-1

3

at 5.)  According to Giardina, Sonrai retained him to "independently evaluate the circumstances under which companies are using Sonrai Systems' Vector service verification technology … how they received access to it," and "how the Sonrai technology was being used in the industry." (*Id*.)  To do so, Giardina reviewed documents and deposition testimony provided by counsel, spoke to personnel of various waste companies about their use of service verification technology, and further relied on his experience in the field.  (*Id*.)  In Giardina's "professional opinion the Geotab and 3rd Eye features, benefits, data gathering capabilities and processes for management reports are substantially the same as Vector product by Sonrai systems."  (*Id.* at 6.)

Giardina, who interviewed certain companies that use Geotab and/or 3rd Eye technologies, further opined that:

> The Geotab device used by Rumpke pulls chassis data and GPS data, transmits it to the cloud and then presents it in a format for preventative maintenance; and provides GPS data for operationally managing the fleet in real-time on a visual map.  These are the same features and process the Vector system performed.

> The 3rd Eye product used by Advanced Disposal in Osceola County delivers service verification without human interaction on every stop serviced along with the GPS feature for real-time fleet visibility.  This service verification without driver interaction provides the same benefit of the Vector system.

(Dckt. #433-1 at 6-7.)  Giardina also observed that the 3rd Eye product changed significantly after being acquired by Heil; "the Vector system was highly valued by Heil and became a part of their strategic plan...that [became] the Enhance[] product of 3rd Eye; and that both the Vector and 3rd Eye products "have the same business development person as part of the team," *i.e.*, defendant Romano.  (*Id*.)  In addition, Giardina provided a generalized, non-technical description of the Vector system.  (*Id*. at 8.)

At his deposition, Giardina confirmed that in attempting to compare the Vector and 3rd Eye systems, he relied on documents and depositions from the case, conversations with

personnel in the waste industry (including Heil COO Dennis Keizer), and 3rd Eye's website. (Dckt. #433-4 at 9, 38-39, 41.) Giardina offered little in the way of specific technical testimony regarding the Vector or 3rd Eye systems and confirmed that he had not reviewed Sonrai's Vector instruction manual. (*Id*. at 21.) Giardina also conceded at his deposition that he offers no opinion as to how 3rd Eye gained access to the technology it is purportedly using in its Enhance system or how 3rd Eye and Heil went about developing that system. (*Id.* at 38.)

On February 24, 2020, defendants disclosed a number of experts, including Heil's liability expert David Williams. (Dckt. #433-2.) Heil retained Williams (who is the president of E911-LBS Consulting) to assess "whether Sonrai was in possession of usable, non-public technology; whether it supplied any such technology to Heil; and whether Heil or 3rd Eye used any Sonrai-supplied technical information in connection with the current Heil/3rd Eye service verification products, either in the products themselves or in their development." (*Id*. at 4.) To do so, Williams reviewed documents and deposition testimony produced in this case and relied on his own apparent experience in the field of "technical product development and deployment." (*Id*. at 63, 126-43.)

In his report, Williams first broke down the Vector system into its component parts, explaining the purpose of each part.[3] (*Id*. at 11-17.) He then provided a historical summary of how technology evolved in the waste industry and where it stood at the time of Sonrai and Heil's "separation" to show, in his opinion, how many of the features "asserted by Sonrai to be proprietary and industry leading, were well-known in the industry at the time of the December 2015 'separation' of Sonrai and Heil." (*Id*. at 18-40.) Next, Williams reviewed the history of the

---

[3] According to Williams, "Sonrai testimony regarding allegedly misappropriated technology tends to be at a very general and non-specific level." (Dckt. 433-2 at 11.) Thus, Williams attempted to "break these general/non-specific assertions down into more detailed technology elements." (*Id*.)

development of the Vector system and further discussed the various components of Vector that came from Geotab. Williams opined that Vector's "near complete dependency" on Geotab's technology "for the vast majority" of Vector's capabilities "calls into question whether any of the capabilities at dispute in this case, called propriety by Sonrai, are actually propriety." (*Id*. at 41-61.) Williams went on to address other topics, including the minimal exchange of information between Sonrai and Heil; Heil's efforts to develop a product *prior* to any contractual agreement with Sonrai; and the distinguishing features of Heil/3rd Eye products that are based on a completely different platform and underlying technologies than the Vector system.

Ultimately, Williams concluded that "1) Sonrai provided very little technically useful information to Heil; 2) the information that Sonrai did provide was well understood in the industry and publicly available; and 3) Heil and/or 3rd Eye did not and do not utilize Sonrai's technology, confidential information, or evaluation material in any of their products or in the development of those products." (*Id*. at 4.)

At a status hearing on March 3, 2020, Sonrai's counsel explained that Sonrai recently disclosed a consulting expert that it may also seek to disclose as a rebuttal expert. (Dckt. #362 – 3/3/20 Hr'g. Tr. at 5.) After defendants objected that the parties' schedule never contemplated rebuttal experts, the Court – over defendants' objection – set a briefing schedule for plaintiff's motion to disclose a rebuttal expert. (Dckt. #361.) Unfortunately, shortly after that hearing, the COVID-19 pandemic brought this case to a standstill. Ultimately, the Court extended the final expert discovery deadline to July 31, 2020 and directed Sonrai to file its motion for leave to disclose a rebuttal expert by August 7, 2020. (Dckt. #392.)

### C. Sonrai's Motion for Leave to Disclose a Rebuttal Expert

On August 8, 2020 (thirty minutes after the August 7 filing deadline),[4] Sonrai filed its motion seeking leave to disclose rebuttal expert Majid Sarrafzadeh to rebut Heil's liability expert David Williams. (Dckt. #427.) Sonrai's one-page motion asserts that "Sarrafzadeh is being disclosed within the time set forth by the Court in its scheduling order and well within the time set forth in Federal Rule of Civil Procedure 26(2)(C)" and attached a copy of Sarrafzadeh's proposed rebuttal report. (Dckt. #427.) Sonrai later sought and was granted leave to supplement its disclosure regarding Sarrafzadeh with a list of the documents and data he considered when preparing his report and invoices for his work. (Dckt. #429 at 5-11; Dckt. #434.)

In their response (Dckt. #433), defendants assert that Sarrafzadeh's report does not comply with Rule 26(a)(2) because it fails to provide opinions and bases thereof and is otherwise incomplete because it incorporates illegible or undisclosed documents. Defendants further assert that Sonrai has submitted Sarrafzadeh's report in an improper attempt to cure the shortcomings of its initial liability expert, Timothy Giardina, rather than to rebut the report of Heil's expert. Finally, defendants argue that allowing Sonrai to disclose the rebuttal expert would be prejudicial if they are unable to depose Sarrafzadeh and would further cause unnecessary delay in this 2016 case.

In its reply (Dckt. #436), Sonrai provides clarification for the illegible portions of Sarrafzadeh's report, asserts that Sarrafzadeh's report is an appropriate rebuttal to Williams' report, and further asserts that defendants will suffer no prejudice if Sarrafzadeh is allowed to serve as a rebuttal witness because Sonrai has agreed to produce him for a deposition.

---

[4] Defendants do not argue, and this Court does not find, that Sonrai's thirty-minute delay in complying with this Court's scheduling order caused any prejudice to defendants.

## II.     ANALYSIS

This Court "has discretion over discovery determinations, including whether to exclude improper expert reports." *Africano v. Atrium Med. Corp.*, No. 17 CV 7238, 2019 WL 5085338, at *1–2 (N.D.Ill. Oct. 10, 2019), *objections overruled*, No. 17 CV 7238, 2020 WL 5691596 (N.D.Ill. Sept. 3, 2020).  For the reasons stated below, the Court grants Sonrai's motion to disclose Sarrafzadeh as its rebuttal expert with his report modified as specified below to remove any portions that are not proper rebuttal.

### A.     Sarrafzadeh's report is not procedurally deficient under Rule 26(a)(2)(B).

Defendants first take issue with what they view as procedural deficiencies in Sarrafzadeh's report, including his failure to include specific Bates label citations to documents referenced and legible images, his improper reliance on deposition summaries (that were not previously produced), and his lack of concise opinions.  However, the Court finds that these alleged deficiencies have either been properly cured by Sonrai or are not ripe for disposition.

First, although Sarrafzadeh's report initially lacked proper citation to the documents he referenced and included illegible images, Sonrai has since identified each document by Bates number or other identifying information and it maintains that defendants are in possession of all of the referenced documents.  (Dckt. #436 at 3-4.)  In the amended report permitted below, Sarrafzadeh shall include those citations directly in the body of his report and shall make all reasonable efforts to re-insert legible images therein.

Second, although defendants correctly note that Rule 26(a)(2)(B) requires a "complete statement of all opinions the witness will express and the basis and reasons" underlying them, the Court disagrees that Sarrafzadeh's report is "sketchy, vague or preliminary in nature," (Dckt. #433 at 9).  The Court finds that Sarrafzadeh has disclosed eleven opinions that are delineated by

section headers following the header "My Opinions." (*See* Dckt. #427 at 8, 14, 16, 19, 28, 31, 32, 36, 40, 44). Moreover, Sarrafzadeh has offered a sufficiently detailed explanation for how and why he reached each of his opinions. *Cf. Finwall v. City of Chicago,* 239 F.R.D. 494, 501-02 (N.D.Ill. 2006), *objections overruled,* 239 F.R.D. 504 (N.D.Ill. 2006) (finding that untimely expert report was insufficient under Rule 26(a)(2)(B) where the expert failed to explain "how" and "why" he reached his conclusory opinion) (cited by defendants). The purpose of the disclosure requirements of Rule 26 is to "provide notice to opposing counsel as to what an expert will testify [to] before the deposition takes place." *Allstate Ins. Co. v. Electrolux Home Prod., Inc.,* 840 F. Supp. 2d 1072, 1079–80 (N.D.Ill. 2012) (citing *Ciomber v. Coop. Plus, Inc.,* 527 F.3d 635, 642 (7th Cir. 2008)). Here, the portions of Sarrafzadeh's report that the Court has determined contain rebuttal opinions are sufficiently concise to avoid any surprise to defendants at a deposition or otherwise.

Third, to the extent that defendants challenge the veracity and admissibility of Sarrafzadeh's opinions under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702, such a challenge is premature. Defendants can file a *Daubert* motion to challenge Sarrafzadeh's opinions consistent with a schedule set by the District Court. *See, e.g., Charleston Med. Therapeutics, Inc v. AstraZeneca Pharm. LP,* No. 2:13-CV-2078-RMG, 2015 WL 12805687, at *2-3 (D.S.C. July 8, 2015) (resolving motion to strike expert report on the ground that it was improper rebuttal and deferring *Daubert* challenge for later in the case).

Sonrai's objection that Sarrafzadeh improperly relied on deposition summaries is likewise premature. While it may be – as defendants contend – that an expert report based almost entirely on counsel's deposition summaries may not pass muster under *Daubert* or Rule

702, *see Sommerfield v. City of Chicago*, 254 F.R.D. 317 (N.D.Ill. 2008),[5] this issue – as stated above – is not currently before the Court. The Court presumes that Sonrai has provided defendants with the deposition summaries included in Sarrafzadeh's "Documents/Data Considered" list as it has previously agreed to do so. (*See* Dckt. #436 at 2.) If, however, the deposition summaries have not been provided, Sonrai shall provide them by March 29, 2021. *See* Fed.R.Civ.P. 26(a)(2)(B)(ii); *Allstate Ins. Co. v. Electrolux Home Prod., Inc.*, 840 F. Supp. 2d 1072, 1080 (N.D.Ill. 2012) ("An expert must disclose the materials given to him to review in preparation for testifying, even if in the end he does not rely on them in formulating his expert opinion …") (citation omitted). !

## B. The Court will permit the disclosure of the portions of Sarrafzadeh's report that are proper rebuttal.

From a substantive standpoint, defendants argue that Sarrafzadeh's report should be barred because it is not appropriate rebuttal but instead represents an improper attempt by Sonrai to bolster Giardina's initial liability report and opinions. Sonrai vehemently disagrees. After a thorough review of the reports at issue, the Court agrees, in part, with both sides. Although portions of Sarrafzadeh's report are not tied to Williams' opinions and may therefore be seen as improperly providing support for Sonrai's initial liability report, the Court finds that the majority of Sarrafzadeh's opinions are directly rebutting the opinions expressed by Williams in his report.

Rule 26(a) defines a rebuttal expert as one whose testimony is "intended solely to contradict or rebut evidence on the same subject matter identified by another party."

---

[5] Sonrai asserts that *Sommerfield* is distinguishable because "[t]he only documents that [the expert] reviewed in order to prepare his report were the plaintiff's Second Amended Complaint and the summary of depositions by the plaintiff's lawyer," *Sommerfield,* 254 F.R.D. at 320, whereas Sarrafzadeh simply included the deposition summaries in his "Documents/Data Considered" list among many other documents. (*See* Dckt. #429 at 5-6.) This appears to be a valid distinction. *See Sommerfield,* 254 F.R.D. at 320, 338 (granting in part and denying in part the motion to strike plaintiff's expert's report).

Fed.R.Civ.P. 26(a)(2)(C)(ii). As defendants contend, "[t]he proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party." *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008). "Testimony offered only as additional support to an argument made in a case in chief, *if not offered to contradict, impeach or defuse the impact of the evidence offered by an adverse party*, is improper on rebuttal." *Id.* (emphasis added); *see also Africano*, 2019 WL 5085338, at *1–2 ("Evidence that is only offered as additional support of a party's argument and that does not contradict any evidence introduced by the opposing party is not proper rebuttal.") (citation omitted).

"[T]he measure of proper rebuttal is not whether it offers support for arguments that could have been raised in the case-in-chief, but whether it directly refutes arguments offered by the opposition." *Africano*, 2019 WL 5085338, at *2 (citing *Pantaleo v. Hayes*, No. 08 CV 6419, 2011 WL 2517265, at *1 (N.D.Ill. June 23, 2011)); *Bakov v. Consol. World Travel, Inc.,* No. 15 C 2980, 2019 WL 1294659, at *11 (N.D.Ill. Mar. 21, 2019) ("Rule 26 does not automatically exclude evidence that an expert could have included in his original report") (internal quotation marks omitted). Consequently, "the mere fact that opinions offered in a rebuttal report touch upon the same subjects covered in an initial expert report does not require that the rebuttal be stricken." *Cage v. City of Chicago*, No. 09 C 3078, 2012 WL 5557410, at *5 (N.D.Ill. Nov. 14, 2012), *quoting Green v. Kubota Tractor Corp.*, No. 09 CV 7290, 2012 WL 1416465, at *5 (N.D. Ill. Apr. 24, 2012). Indeed, "rebuttal reports may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert." *Withrow v. Spears,* 967 F.Supp.2d 982, 1002 (D.Del. 2013) (internal quotation marks omitted); *Ernst v. City of Chicago,* No. 08 C 4370, 2013 WL 4804837, at *2 (N.D.Ill. Sept. 9, 2013) (same).

Thus, when evaluating whether a proposed rebuttal report is appropriate, the "'focus is not on the similarity between the initial and rebuttal reports, but rather on whether the opinions expressed in a rebuttal report rebut the same subject matter identified in the other party's expert report.'" *Cage,* 2012 WL 5557410, at *5, *quoting Green,* 2012 WL 1416465, at *5. As a colleague in this District further elaborated:

> The sequence of disclosures of experts' opinions envisions a winnowing process, not an expansion. By way of example, a plaintiff's initial (sometimes referred to as "affirmative") expert report may identify opinions #1, #2, and #3. Subsequently, a defendant's expert report (sometimes referred to as "response reports") may rebut opinions #1, #2, and #3, but also add opinions #4, #5, and #6. That defendant's expert report is a proper rebuttal in that it contradicts the first three opinions. But that defendant's expert report may also be an appropriate initial expert report by presenting opinions #4, #5, and #6. Under these circumstances, Rule 26(a)(2)(D)(ii) envisions that the plaintiff be given the opportunity to provide – if it chooses – a rebuttal expert to contradict opinions #4, #5, and #6. But what is not permissible is allowing plaintiff to now—by way of a "rebuttal"—offer opinions #7, #8, and #9.

*McCann v. Cullinan*, No. 11 CV 50125, 2016 WL 4593835, at *3 (N.D.Ill. Sept. 2, 2016), *report and recommendation adopted sub nom. McCann v. Ogle Cty.,* No. 11 CV 50125, 2016 WL 5807922 (N.D.Ill. Oct. 5, 2016).

With these principles in mind, the Court finds that a majority of Sarrafzadeh's report serves as proper rebuttal to Williams' report. In particular, in his opinions specified below, Sarrafzadeh contradicts, impeaches, or defuses the impact of Williams' opinions:

    a.  In his first opinion, Sarrafzadeh explains why Williams' report reflects Williams' "misunderstanding of Vector's components" (Dckt. #427 at 8-13); [6]

    b.  In his second opinion, Sarrafzadeh criticizes Williams' opinion that the 130 custom exception rules that Vector incorporates "do not represent any sort of innovative,

---

[6] The page citations here (and throughout this opinion) refer to the CM/ECF marked pages as opposed to the internal page numbers of the document.

engineering design level work that might be considered proprietary, confidential material" and asserts that Williams' opinion is "incorrect" (*Id.* at 14-16);

c. In his third opinion, Sarrafzadeh criticizes Williams' opinions that "the dashboard developed by Sonrai is obviously based on the information needed by waste haulers" and that "the similarities between Sonrai's dashboard and Heil's 3rd Eye dashboard results from shared expectations and use across the waste hauling industry and asserts that Williams' opinions are "incorrect" (*Id.* at 16-23);

d. In his fourth opinion, Sarrafzadeh asserts that Williams analysis is "flawed" because "the fact that technologies incorporated into Vector were previously available does not mean Vector was not proprietary" (*Id.* at 24-27);

e. In his sixth opinion, Sarrafzadeh criticizes and disagrees with Williams' opinion that "Vector, unlike 3rd Eye, samples data" by offering his "opinion that Heil/3rd Eye uses a form of sampling" as well (*Id.* at 31-32);

f. In part of his eighth opinion, Sarrafzadeh criticizes and disagrees with Williams' opinion that Heil's "3rd Eye verification product does not rely on the same type of Exception Rules" as used by Sonrai's Vector and he further disagrees with several other purported distinctions that Williams makes between Vector and 3rd Eye (*Id.* at 40 (from line 19 at "Williams states, '[T]he Heil 3rd Eye service verification product . . .") through 44 only);

g. In his ninth opinion (*Id.* at 44-45), Sarrafzadeh criticizes and disagrees with Williams' opinion that Heil's 3rd Eye product was developed "independent of Sonrai" (Dckt. #433-2 at 3 (identifying sections of Williams' report that make this point));

h. In his tenth opinion, Sarrafzadeh criticizes Williams for failing to offer opinions regarding "critical issues" concerning Vector and whether Sonrai supplied Heil with confidential material (Dckt. #427 at 45); and

i. In his eleventh opinion, Sarrafzadeh criticizes Williams for "lacking, in [thirty] critical respects, necessary information as a foundation for his opinions" (*Id.* at 45-50).

These portions of Sarrafzadeh's report are proper rebuttal to "defuse the impact" of Williams' report even if Giardina *could* have addressed some of these issues in his initial report. *See Africano*, 2019 WL 5085338, at *2; *Bakov*, 2019 WL 1294659, at *11; *Pantaleo*, 2011 WL 2517265, at *1; *United States ex rel. Brown v. Celgene Corp.*, No. 10 CV 3165, 2016 WL 6542730, at *4 (C.D.Cal. June 29, 2016) ("[T]he fact that evidence *could* have been addressed in a party's case-in-chief does not necessarily preclude its admission in rebuttal.") (emphasis in original).

The cases cited by defendants in support of their argument that the entirety of Sarrafzadeh's rebuttal report should be disallowed are distinguishable. In these cases, the proposed rebuttal expert report: (1) was untimely and tried to change methodologies to account for deficiencies to the party's initial expert analysis, *Bowman v. Int'l Bus. Mach. Corp.,* No. 11 CV 0593, 2013 WL 1857192, at *4, 7 (S.D.Ind. May 2, 2013); (2) was untimely, concerned the expert's testimony about inappropriate topics (such as the applicable law and the alleged deficiencies of the opposing experts' qualifications), and contained a damages analysis that should have been put forward in plaintiff's case-in-chief, *Frerck v. Pearson Educ., Inc.,* No. 11 C 5319, 2014 WL 477419, at *4-5 (N.D.Ill. Feb. 6, 2014); and (3) improperly tried to "backdoor" in an appraisal report that "would effectively grant the plaintiff the relief that the District Judge

denied," *Paris v. Amoco Oil Co.,* No. 00 C 8206, 2002 WL 252821, at *3 (N.D.Ill. Feb. 21,

2002). The Seventh Circuit's decision in *Braun v. Lorillard Inc.,* 84 F.3d 230, 237 (7th Cir.

1996), where the Court affirmed the decision to deny plaintiff the opportunity to present a

rebuttal witness who had previously been disapproved as a witness in plaintiff's case-in-chief, is

likewise distinguishable.

However, the Court does agree that certain portions of Sarrafzadeh's report are not

appropriate rebuttal because they neither contradict, impeach, nor defuse the impact of Williams'

opinions and would instead solely serve to bolster the initial liability opinions of Giardina.

These portions of Sarrafzadeh's report are as follows:

a.  His fifth opinion concerning "Geofencing/Zoning" (Dckt. #427 at 28-30);

b.  His seventh opinion concerning "Route Optimization" (*Id.* at 32-35); and

c.  A portion of his eighth opinion concerning "Use of Vector in Heil's 3rd Eye Product
    (*Id.* at 36 – 40 (through line 18 only)).

The appropriate course of action where, as here, a portion of a proposed rebuttal report is

appropriate rebuttal and a portion is not "is to limit the proposed rebuttal expert's testimony

rather than striking it altogether." *See, e.g., Noffsinger v. The Valspar Corp.*, No. 09 C 916, 2011

WL 9795, at *7 (N.D.Ill. Jan. 3, 2011); *Cage,* 2012 WL 5557410, at *2; *Baldwin Graphic Sys.,

Inc. v. Siebert, Inc.,* No. 03 C 7713, 2005 WL 1300763, at *3 (N.D.Ill. Feb. 22, 2005) (striking

part of proposed rebuttal report but allowing defendant to present that portion of the report that

was actually rebuttal). Indeed, one court has made clear that it would be "clearly erroneous and

contrary to law" to strike the portion of a proposed rebuttal report that "did not constitute

improper rebuttal." *Bowman,* 2013 WL 1857192, at *8. Accordingly, Sonrai is ordered to

present an amended version of Sarrafzadeh's report by April 5, 2021 that is limited to the

portions that constitute rebuttal as specified above, and Sarrafzadeh's testimony will be limited accordingly.

### C. Defendants will not suffer prejudice as a result of this order.

Defendants also argue that they will be prejudiced if the Court permits the disclosure of Sarrafzadeh's report because they will be forced to either:

> address, at trial, a technical expert whose opinions are cryptic and who was not deposed because disclosure came after expert discovery closed; OR Defendants will be prejudiced because this Court will re-open expert discovery in this 2016 case, extending it yet again, so that Defendants can take more expert depositions testimony and, if necessary, seek leave to offer sur-rebuttal expert disclosures.

(Dckt. #333 at 18-19) (emphasis in original). Respectfully, the Court disagrees.

First, in its "extremely broad discretion in controlling discovery," *Saunders v. City of Chicago*, No. 12 CV 9158, 2017 WL 36407, at *8 (N.D.Ill. Jan. 4, 2017), the Court will re-open expert discovery until May 10, 2021 for the sole purpose of allowing defendants to take the remote deposition of Sarrafzadeh should they choose to do so. Sonrai does not object to presenting Sarrafzadeh for a deposition and the deposition will allow defendants to seek any additional follow-up and clarification regarding Sarrafzadeh's rebuttal opinions in advance of trial. Furthermore, defendants will have the opportunity to raise their *Daubert* challenge to Sarrafzadeh's testimony at a later date. *See Martin v. China Manufacturers All., LLC,* No. 11-CV-0711-MJR-PMF, 2013 WL 12051727, at *2 (S.D.Ill. Apr. 1, 2013) (finding no prejudice in allowing expert's supplemental report and affidavit where defendants would be allowed to re-depose the expert and to address the supplemental report and affidavit at an upcoming *Daubert* hearing).

Second, in light of the Court's January 20, 2021 order allowing a brief re-opening of fact discovery – and any requisite supplemental expert damages discovery – this period of time

allotted for further proceedings regarding Sarrafzadeh will not unnecessarily delay the final close of discovery or the final resolution in this case. While defendants' frustration with the lengthy discovery process is understandable, as this Court recently contemplated, the delays in this matter are "attributable to a number of different circumstances," and not solely to plaintiff as defendants often contend. (Dckt. #468 at 2.) Furthermore, no dispositive motion schedule has been set and, unfortunately, a trial date in the immediate future is highly unlikely given the trial backlog caused by the COVID-19 pandemic. *See* "U.S. Dist. Ct. for the N.D. of IL Tenth Amended General Order 20-0012" (continuing the suspension of civil and criminal jury trials until at least April 5, 2021).

Finally, although defendants contemplate the potential need to seek leave to offer a "sur-rebuttal" expert, the Court does not anticipate that such testimony will be necessary or appropriate given the limits that have been placed on Sarrafzadeh's report and prospective testimony. *See United States v. Purkey,* 428 F.3d 738, 759 (8th Cir. 2005) ("surrebuttal is typically thought appropriate only when new matters are raised in the rebuttal testimony"). In any event, the Court and the parties will cross this bridge when and if they come to it.

**CONCLUSION**

For the foregoing reasons, plaintiff Sonrai Systems, LLC's motion for leave to disclose a rebuttal expert (Dckt. #427) is granted in part and denied in part. By April 5, 2021, plaintiff shall provide defendants with the amended report of its rebuttal expert Majid Sarrafzadeh that includes only the portions of the report permitted above. The amended report shall also include the proper citation to each document referenced therein and plaintiff shall attempt to replace any

illegible images with legible images. Defendants shall take the remote video deposition of Majid Sarrafzadeh on or before May 10, 2021.

**Dated: March 22, 2021**

**Jeffrey I. Cummings**
**United States Magistrate Judge**