IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SONRAI SYSTEMS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>ANTHONY M. ROMANO, GEOTAB, INC.,<br>and HEIL CO. D/B/A/ENVIRONMENTAL<br>SOLUTIONS GROUP,<br><br>    Defendants. | Civil Action No. 1:16-cv-03371<br><br>District Judge Thomas M. Durkin<br><br>Magistrate Judge Jeffrey Cummings |

**DEFENDANTS' MOTION TO STRIKE SONRAI'S**
**SUPPLEMENTAL EXPERT REPORT AND FOR ATTORNEYS' FEES**

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ..................................................................................................... 1

II.  PROCEDURAL HISTORY...................................................................................... 2

III. ARGUMENT .......................................................................................................... 4

    A.   The Court Should Strike the 2021 Report as Improper  Under Rule 26(e)
        and as Violating the Court's Prior Orders ............................................... 4

        1.   Legal Standard for Proper Supplementation under Rule 26(e)........................4

        2.   The Court's Application of Rule 26(e) ..............................................................5

        3.   The 2021 Report Relies Upon Documents that the Court Ordered
            Sonrai Not to Provide and Stuckwisch Not to Consider...................................6

        4.   The 2021 Report Relies So Heavily On Improper New  Opinions
            Based on Information Sonrai Had Long Before the  2019 Report that
            the Court Should Strike the Entire 2021 Report .................................................8

            a.   Unjust Enrichment...................................................................................10

            b.   Sonrai's Supposed Relationships with Haulers.......................................10

            c.   Other Lost Customers...............................................................................11

            d.   Additional Incremental Operations Costs ...............................................12

            e.   Sonrai's Lost Profits by Customer – Inputs. ...........................................13

        5.   Conclusion: This Court Should Strike the 2021 Report In its Entirety. ..........16

    B.   The Court Should Order Sonrai to Pay Defendants'  Fees and Costs
        Associated with Filing This Motion Within 30 Days............................................. 17

IV. CONCLUSION...................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*3M Innovative Properties Co v. Dupont Dow Elastomers, LLC,*
  2005 WL 6007042 (D. Minn.) .................................................... 5

*Akeva, LLC v. Mizuno Corp.,*
  212 F.R.D. 306 (M.D.N.C. 2002) .............................................. 5

*Allgood v. Gen. Motors Corp.,*
  No. 1:02-cv-1077, 2007 WL 647496 (S.D. Ind. Feb. 2, 2007).................. 5

*Beller ex rel. Beller v. United States,*
  221 F.R.D. 689 (D.N.M. 2003)................................................ 4

*Berkheimer v. Hewlett-Packard Co.,*
  No. 12-cv-9023, 2016 WL 3030170 (N.D. Ill. May 25, 2016)............... 4, 17

*Carter v. Finely Hosp.,*
  No. 01-cv-50468, 2003 WL 22232844 (N.D. Ill. Sept. 22, 2003).............. 5

*Gilbane Bldg. Co. v. Downers Grove Cmty. High Sch. Dist. No. 99,*
  No. 02-cv-2260, 2005 WL 838679 (N.D. Ill. Apr. 5, 2005).................. 16

*Kenner v. United States,*
  181 F.R.D. 639 (D. Mont. 1998) ............................................ 5

*Metro Ford Truck Sales, Inc. v. Ford Motor Co.,*
  145 F.3d 320 (5th Cir.1998) ............................................ 4, 16

*Orgler Homes, Inc. et al. v. Chicago Regional Council of Carpenters, et al.,*
  No. 06-cv-50097, 2008 WL 7440130 (N.D. Ill. Mar. 6, 2008) ............... 17

*Reid v. Lockheed Martin Aeronautics Co.,*
  205 F.R.D. 655 (N.D. Ga. 2001)........................................... 17

*Rodriguez v. Vill. of Port Chester,*
  2021 WL 1644226 (S.D.N.Y. 2021)......................................... 5

*Solaia Tech. LLC v. ArvinMeritor, Inc.,*
  361 F. Supp. 2d 797 (N.D. Ill. 2005) ................................... 5, 16

*Stuhlmacher v. Home Depot USA, Inc.,*
  No. 2:10-cv-467, 2012 WL 5866297 (N.D. Ind. Nov. 19, 2012) ............... 5

*TAS Distrib. Co. v. Cummins Engine Co.,*
  491 F.3d 625 (7th Cir. 2007) ............................................ 11

## I.    <u>INTRODUCTION</u>

Plaintiff Sonrai's third attempt at re-writing its expert's damages report is improper under Rule 26(e) and represents the latest example, in a long list of delaying, costly examples, in which Sonrai ignores Court-ordered rules and deadlines and attempts to re-open settled issues in this already over-lengthy litigation. Sonrai served its damages report of Suzanne Stuckwisch on November 12, 2019 ("2019 Report," attached as Ex. B). Defendants deposed Stuckwisch and served their own experts' reports exposing the flaws in Stuckwisch's opinions and damages analysis. Since then, Sonrai has repeatedly tried to rehabilitate Stuckwisch's opinions through the guise of improper supplemental reports. Sonrai twice sought leave to file "supplemental" damages reports in July of 2020 (*see* Dkt. 406 and 416), and now has served a third "supplemental" Stuckwisch report, dated October 27, 2021 ("2021 Report"). The 2021 Report, attached as Exhibit A (with defense highlighting) is in fact a new report, and not a supplement, that violates this Court's orders (Dkt. 492, 505) and Rule 26(e).

In granting Sonrai leave to propose a supplemental Stuckwisch report, the Court directed Sonrai to tender a report "that relates ***solely*** to the categories of documents and information provided ***after*** Ms. Stuckwisch's initial November 2019 report."[1] (Dkt. 492). Anticipating that Sonrai would include the defective analysis from the first two supplements (analysis unconnected to new evidence), and again attempt to salvage the 2019 Report through an improper supplement, Defendants' counsel raised their concerns to the Court. (Dkt. 490). In response, after ordering that the supplemental report relate only to new evidence, the Court ordered that "***[t]o the extent that the supplemental report strays … the Court will be inclined to strike any non−compliant portions and will consider sanctions in the way of fees and costs***." *Id.*

---

[1] Emphasis added throughout unless otherwise noted.

Despite the Court's admonitions, Sonrai did exactly what the Court forbade -- served a "supplemental" report that adds lengthy new opinions and analysis based on information that was already in Sonrai's possession before it served the 2019 Report.

Counsel for Heil met and conferred with counsel for Sonrai on November 19 and again on November 22, pointing out the areas in which, counsel believes, the report violates the Court's orders and Rule 26 by offering new opinions and analysis based on old evidence. Sonrai maintains that the report is proper and will not withdraw it. Defendants now file this motion to strike the 2021 Report in its entirety as an improper supplement. Defendants also request that the Court order Sonrai to pay their fees and costs for bringing this motion within 30 days of Defendants submitting an affidavit to Sonrai setting forth those fees and costs.

## II.    PROCEDURAL HISTORY

This Court issued two orders clearly spelling out what Sonrai and Stuckwisch could, and could not, do in preparing a supplemental expert report. The first order (Dkt. 492) states:

> For the reasons stated on the record, plaintiff is granted leave to provide a supplemental report of Ms. Stuckwisch that relates *solely to the categories of documents and information provided after Ms. Stuckwisch's initial November 2019 report, which are described in detail in paragraphs 2 and 6 of defendants' status report* [490]. Plaintiff's counsel is advised to carefully review defendants' previously filed opposition brief [422] and to work with Ms. Stuckwisch to ensure that her supplemental report relates solely to the categories permitted by this order. *To the extent that the supplemental report strays outside of those categories, the Court will be inclined to strike any non−compliant portions and will consider sanctions in the way of fees and costs*. As discussed on the record, defendant Heil shall produce the remaining contract documents by 6/18/21.[2] Plaintiff shall provide Ms. Stuckwisch's supplemental report by 7/26/21.

The categories of documents to which the Court referred were: two deposition transcripts and a few documents related to Progressive and Region of Peel obtained in 2020 (Dkt. 490 at ¶ 2); data

---

[2] Heil provided the remaining contract documents as directed.

Heil produced with its expert reports (*id.* at ¶ 2); fact depositions taken during re-opened fact discovery (*id.* at ¶ 6); and a version of Heil/3rd Eye sales data with customer names (*id.* at ¶ 6).

Sonrai did not file its supplemental report by July 26, but on that date moved to extend its deadline and to "clarify" the June 14 Order, (Dkt. 497.) Defendants opposed the motion, pointing out that Sonrai was not looking to "clarify" anything, but to expand the categories of information that the supplemental report could include. (Dkt. 499.) The Court issued a September 10 Order stating that Stuckwisch's supplemental report ***may consider*** the Regan declaration and those Sonrai "invoices that are considered in defense expert DeForest McDuff's report," but ***may <u>not</u> consider***, the following categories of documents:

- Sonrai's motion to re-open discovery (Dkt. 438);
- The Court's Report and Recommendation (Dkt. 470), and the Court's order adopting the Report and Recommendation (Dkt. 494), on sanctions issues;
- Heil's internal projections; and
- Sonrai invoices, other than those considered by McDuff.

(Dkt. 505.) The Court gave Sonrai until September 27, 2021, to tender a free-standing report encompassing both Stuckwisch's initial and supplemental findings. *Id.*

Sonrai failed to serve anything on September 27th, failed to notify Defendants as to why nothing was served, and failed to seek an extension.[3] Sonrai did nothing for over a month before seeking leave to serve its supplemental report "instanter" on October 28, 2021 (Dkt. 516), which the Court granted (Dkt. 517), giving Defendants until November 24 to file this motion (Dkt. 520). Because the 2021 Report is an improper supplement under Rule 26(e), and because the 2021 Report ignores and violates this Court's instructions, as discussed below, this Court should prohibit

---

[3] Defense counsel have reviewed the Stuckwisch Declaration attached to Sonrai's filing, and now understand the very difficult medical issues that faced Stuckwisch. Counsel would of course have agreed to an extension, had one been requested. Instead, Sonrai simply kept Defendants and the Court in the dark for more than a month after the due date.

Sonrai from using the entire Report, and award Defendants their fees and costs for being forced to bring this Motion.

## III.   ARGUMENT

### A.   The Court Should Strike the 2021 Report as Improper Under Rule 26(e) and as Violating the Court's Prior Orders

#### 1.   Legal Standard for Proper Supplementation under Rule 26(e)[4]

As Judge Gilbert recently ruled, "[e]xpert reports are not first drafts." *Berkheimer v. Hewlett-Packard Co.*, No. 12-cv-9023, 2016 WL 3030170, at *4 (N.D. Ill. May 25, 2016) (Rule 26 "does not say that an expert's report should contain her best stab at an opinion that then can be supplemented, corrected, changed or augmented with new, alternative opinions after she has had a chance to think about it more."). Rule 26(a)(2)(B)(i) requires that an expert's report include "a complete statement of all opinions the witness will express and the basis and reasons for them." Expert disclosure deadlines and sequencing would be meaningless if parties could repeatedly change, update, and bolster their expert opinions. Although Rule 26(e) allows for supplementing prior expert disclosures, supplemental "disclosures are not intended to provide an extension of the expert designation and report production deadline." *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir.1998) (affirming exclusion of an improper supplemental report); *see also Beller ex rel. Beller v. United States*, 221 F.R.D. 689, 695 (D.N.M. 2003) (allowing expert reports to be re-written by later supplements "would surely circumvent the full disclosure requirement implicit in Rule 26 and would interfere with the Court's ability to set case management deadlines, because new reports and opinions would warrant further consultation with one's own expert and virtually require new rounds of depositions").

---

[4] The Court already understands the guidelines that Rule 26(e) establishes for proper supplemental expert reports, as this issue was fully briefed when Sonrai first sought to file a supplemental Stuckwisch report (Dkt. 422) and the Court has already applied these guidelines in issuing directives to Sonrai in its two orders (Dkt. 492 and 505).

Rule 26(e) does "not grant a license to supplement a previously filed expert report because a party wants to." *Solaia Tech. LLC v. ArvinMeritor, Inc*., 361 F. Supp. 2d 797, 806 (N.D. Ill. 2005). The dividing line between proper supplementation and an improper attempt at a new report is whether the new expert opinions are based on information available to the parties when the original report was disclosed. *Carter v. Finely Hosp*., No. 01-cv-50468, 2003 WL 22232844, at *2 (N.D. Ill. Sept. 22, 2003); *Allgood v. Gen. Motors Corp*., No. 1:02-cv-1077, 2007 WL 647496, at *3 (S.D. Ind. Feb. 2, 2007) (striking supplement that offered new opinions on issues that had been in the case "since the beginning"). Courts routinely bar new expert opinions that a party attempts to introduce under the guise of a supplement. *Solaia Tech.*, 361 F. Supp. 2d at 806; *3M Innovative Properties Co v. Dupont Dow Elastomers, LLC,* 2005 WL 6007042 (D. Minn.) (Rule 26(e) "does not cover failures of omission because the expert did an inadequate or incomplete preparation"), *citing Akeva, LLC v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002) and *Kenner v. United States,* 181 F.R.D. 639, 640 (D. Mont. 1998). In the recently-decided, *Rodriguez v. Vill. of Port Chester*, 2021 WL 1644226, * 4 (S.D.N.Y. 2021) the court held that "experts are not free to continually bolster, strengthen, or improve their reports by endlessly researching issues they already opined upon or to continually supplement their opinions."

The party proffering a supposed supplement has the burden of proving that it is a proper supplement. *Stuhlmacher v. Home Depot USA, Inc.,* No. 2:10-cv-467, 2012 WL 5866297, at *2 (N.D. Ind. Nov. 19, 2012) (burden to show that a report is a proper supplement is on the party who is seeking to supplement the report); *Rodriguez*, 2021 WL 1644226 at * 4. Sonrai thus has the burden to demonstrate that the 2021 Report is proper under Rule 26(e).

## 2. The Court's Application of Rule 26(e)

The Court has already applied the strictures of Rule 26(e) by delineating for Sonrai the difference between permissible and impermissible Stuckwisch supplemental opinions. (Dkt. 492

and 505) as follows:

| **Proper Opinions Relate to** | **Improper Opinions Relate to** |
|---|---|
| 1. Materials related to Progressive and Region of Peel obtained by Sonrai in 2020 (Dkt. 490 at ¶ 2; 492) <br> 2. Materials Heil produced with its expert reports (Dkt. 490 at ¶ 2; 492) <br> 3. Information from depositions during re-opened discovery (Dkt. 490 at ¶ 6; 492) <br> 4. Heil/3rd Eye sales data with customer names (Dkt. 490 at ¶ 6; 492) <br> 5. The Regan declaration (Dkt. 505) <br> 6. Sonrai invoices that are considered in the McDuff report (*id.*) | 1. Information in Sonrai's possession before the 2019 Report (Dkt. 492) <br> 2. Sonrai's motion to re-open discovery (Dkt. 505) <br> 3. The Court's Report and Recommendation and the Court's order adopting the Report and Recommendation on sanctions issues (*id.*) <br> 4. Heil's internal projections (*id.*) <br> 5. Sonrai invoices other than those considered by the McDuff report (*id.*) |

### 3. The 2021 Report Relies Upon Documents that the Court Ordered Sonrai Not to Provide and Stuckwisch Not to Consider

The 2021 Report should be stricken because the Court's September 10 Order (Dkt. 505) instructed Sonrai not to provide, and Stuckwisch not to issue opinions related to, certain documents addressed in Sonrai's Motion to Clarify (Dkt. 497). But Sonrai provided the documents, and Stuckwisch relies on them in the 2021 Report, in direct violation of the Court's order. (Dkt. 505.)

The Court prohibited Sonrai from supplying Stuckwisch with the Report and Recommendation on sanctions, yet the 2021 Report lists this very document on page two of the "Documents Relied Upon (Legal Documents)" exhibit. (Ex. A, ex. 3[5], p. 124 of 166). Worse yet, Sonrai also apparently supplied Stuckwisch with Sonrai's reply in support of its sanctions request, as Stuckwisch cites to that advocate's brief to buttress her new opinions in the 2021 Report (Ex A at ¶ 100, fn. 175), although she omits it from her list of Documents Relied Upon (Ex. A, ex. 3).

---

[5] Upper case use of "Ex." are to exhibits attached hereto; lower case use of "ex." indicate included internal exhibits.

The Court prohibited Sonrai from supplying Stuckwisch with, and Stuckwisch from relying on, Heil's internal projections. (Dkt. 505.) The 2021 Report, however, relies pervasively on these internal Heil projections, despite the Court's order. For example, the 2021 Report lists a June 2017 Heil document with projections (HEIL0000806-825) in the list of "Documents Relied Upon (Bates)" (Ex. A, ex. 3, p. 133 of 166), and then cites that long-available document no less than six times in the 2021 Report. (Ex. A, fns. 23, 354, 356, 369, 462, 463.) As another example, Stuckwisch relies on a February 2017 Heil projections document (HEIL0002261-282) in five places. (Ex. A, fns. 362, 460, 465-67.) The 2021 Report cites and relies upon many other versions of Heil projections. (Ex. A, HEIL0001484-1505 (fn. 461); HEIL0002716-2734 (fn. 329, 354, 355); and HEIL3000493 (fn. 3).) All these documents are Heil projections that Sonrai already had in its possession as of the 2019 Report, but which the 2019 Report never cites or even includes as a document considered.[6] *See generally* Ex. B (2019 Report).

Finally, the Court barred Sonrai from supplying, and Stuckwisch from relying on, Sonrai invoices not considered by the McDuff report. (Dkt. 505.) Nevertheless, there are many such invoices that Stuckwisch did not consider in her 2019 Report, that the McDuff report does not cite, but that the 2021 Report includes. The 2021 Report cites and relies upon the following Sonrai invoices, none of which are listed in the 2019 Report's Exhibit 3, Documents Relied Upon (Ex. B, ex. 3) or in the McDuff Report's list of Materials Considered or Relied Upon (Ex. C):

| Sonrai Invoice | 2021 Report Citation (Ex. A) |
| --- | --- |
| SON_RO-098508-520 | Page 48, ¶ 119, fn. 236 |
| SON_RO-106524-533 | Page 46, ¶ 111, fn. 212 |
| SON_RO-092033 | Page 133 of 154, ex.4, fn. 1, 2, 3 |

---

[6] Stuckwisch's handling of HEIL0000806-824 and HEIL0003493 is especially troubling. She cites both documents as examples of how "documents I received prior to issuing my Opening Report" are in tension with later materials. (Ex. A, ¶ 5, fn. 3 and ¶ 24, fn. 23.) But Stuckwisch did not receive these documents prior to issuing her original report or rely on them, as they are not cited in the original report or her original list of "Documents Relied Upon." *See* Ex. B, ex. 3. This inaccurate description is especially troubling in the present setting, where analyzing whether the supplement is proper depends on being able to identify those documents that were not cited in the original report.

| Sonrai Invoice | 2021 Report Citation (Ex. A) |
|---|---|
| SON_RO-091544 | Page 133 of 154, ex.4, fn. 1, 2, 3 |
| SON_RO-091281 | Page 133 of 154, ex.4, fn. 1, 2, 3 |
| SON_RO-090501 | Page 133 of 154, ex.4, fn. 1 |
| SON_RO-099599 | Page 133 of 154, ex.4, fn. 1, 2 |
| SON_RO-119477 | Page 133 of 154, ex.4, fn. 3 |
| SON_RO-090499 | Page 133 of 154, ex.4, fn. 1, 2 |

The 2021 Report's inclusion and extensive reliance on the very categories of documents this Court specifically instructed Sonrai and Stuckwisch not to use in the supplement is reason alone to grant Defendants' motion to strike the 2021 Report.

> **4. The 2021 Report Relies So Heavily On Improper New Opinions Based on Information Sonrai Had Long Before the 2019 Report that the Court Should Strike the Entire 2021 Report**

The 2021 Report does not "supplement" the original 2019 Report, it completely re-writes, changes, and replaces it. The 2021 Report (Ex. A) is a wholly new document that stretches to 92 pages, compared to the 29-page 2019 Report (Ex. B). To assist the Court in contrasting the reports, Defendants' Appendix (Appendix 1) includes a redline version that compares the 2021 Report to the 2019 Report. The redline version of the 2021 Report (Appx 1) clearly demonstrates that most of the 2021 Report is entirely new. Even more problematic, under Rule 26(e), is the fact, as demonstrated by the highlighting in the attached version of the 2021 Report (Ex. A), that most of the new material in the 2021 Report is unconnected to any new evidence. Rather, the 2021 Report reveals Stuckwisch reconsidering and changing her prior analysis, usually based on information that was in Sonrai's possession when it served the 2019 Report, making it an improper supplement under Rule 26(e).

The 2021 Report includes completely new sections based on old information, including: (1) Allegations and Legal Framework (Ex. A, ¶¶ 33-43); (2) Industry Expo (¶¶ 78-81); (3) Defendants' Actions (¶¶ 90-95, 98-101); (4) Additional Incremental Operations Costs (¶¶ 188-

198); and (5) Other Potential Damages (¶¶ 217-236). In addition to this analysis, Defendants also sorted each paragraph in the 2021 Report into one of three categories: (1) paragraphs that are substantially unchanged from the 2019 Report; (2) paragraphs that contain new opinions based on new information obtained after the 2019 Report was served, and (3) new paragraphs based on information that was long known to Sonrai before the 2019 Report was served.[7] This analysis, attached as Appendix 2, reveals that a full **64%** of the paragraphs in the 2021 Report reflect new opinions based on old evidence. The breakdown of the categories is as follows:

Paragraphs in the Second Supplemental Stuckwisch Report



- ■ (1) Unchanged / Minimal Edits
- ■ (2) Edits relate to evidence arguably not known to Sonrai as of Nov. 12, 2019
- ■ (3) New opinions or analysis / cites facts known to Sonrai as of Nov. 12, 2019

This is precisely the type of expert analysis based on readily available materials that courts routinely and consistently reject and strike as improper supplementation, and the type of information that this Court expressly told Sonrai not to include in a supplement. (Dkt. 492.) As seen in Ex. A, which highlights the third category of opinions based on previously known information, the improper and unauthorized opinions are so pervasive and so intertwined in the

---

[7] Included in this category is information that Sonrai has long known and well covered in discovery (i.e.. Romano's January 2016 departure from Sonrai), even when Stuckwisch cites a new deposition for supporting the existence of the information.

2021 Report that the only reasonable course of action is for the Court to strike the entire 2021 Report, leaving Sonrai the option of relying on its original expert report.

The impropriety of the 2021 Report as a proper supplement is even more obvious when the Court considers its specific sections.

### a.    Unjust Enrichment

The unjust enrichment section of the 2021 Report at paragraphs 200-207 and 211-216 reveals that Sonrai and Stuckwisch seemingly know how to prepare and offer a proper supplement when there actually is new, supporting material. Here, Stuckwisch's offers new conclusions based largely on new evidence, as in a proper supplement.[8] Stuckwisch testified that she based her original analysis on projections because she did not have sales data. (Dkt. 499 at 5-6.) By the time she prepared the 2021 Report, Stuckwisch had received that sales data and relied on it instead of the less reliable projections. The unjust enrichment analysis in the 2021 Report also attempts to incorporate other new evidence in the form of testimony from the re-opened fact discovery. Thus, while this single section reveals that Sonrai and Stuckwisch understand what a supplement should look like, this section is, unfortunately, a complete outlier within the 2021 Report.

### b.    Sonrai's Supposed Relationships with Haulers

The 2021 Report adds dozens of new paragraphs in Section VIII - Lost Customers, describing Sonrai's supposed relationships with Progressive (¶¶ 111-132), Waste Management (¶¶ 142, 145-157), Republic (¶¶ 163-167), and WCA (¶¶ 168-170). The 2021 Report offers these new paragraphs not because they are based on new evidence, but because the 2021 Report is trying to correct an omission from the 2019 Report. A plaintiff cannot recover lost profits unless it can

---

[8] Heil rejects the report's conclusions and would need to probe its analysis at deposition if it were allowed to be offered. As the Unjust Enrichment analysis relates solely to Heil, Defendants Geotab and Romano take no position as to this portion of the 2021 Report.

prove it had a reasonable expectation of making the lost sales. *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007) ("when seeking the recovery of lost profits, a claimant must establish these lost profits with 'reasonable certainty.'"). The original report (Ex. B at 14-16) contains a few paragraphs about Sonrai's work with Progressive, briefly mentions Waste Management but includes nothing about Sonrai's supposed relationships with any other haulers. At Stuckwisch's deposition (and in Defendants' expert reports), Defendants highlighted this weakness in the Sonrai case, questioning Stuckwisch about her basis for presuming that Sonrai ever could have made fleet-wide sales to all the largest haulers in North America. (Ex. D (Stuckwisch Dep. Tr.) at 149:11-151:20.) The 2021 Report attempts to correct this glaring omission, but relies on long-available information, such as Sonrai's history of prior RFID installations (WM, ¶ 142; Republic, ¶ 111), and nothing new, to address this defect. That is not permissible supplementation.

### c. Other Lost Customers.

The 2021 Report adds a new opinion concerning lost profits from "Other Refuse Companies" with a jaw-dropping 74,800 trucks producing $7.1 million in fanciful, new lost profits. (Ex. A at ¶¶ 45, 208, 210, 212, 217.) While the 2019 Report includes Waste Management, Republic, Progressive/Waste Connections, WCA and Casella in its lost profits analysis (Ex. B at pp. 23-27, ex. 4), for no reason that is ever explained, the 2021 Report's lost profits analysis drops its analysis of Casella and replaces it with a catch-all category labeled "Other Refuse Companies." In the 2019 Report, Casella accounted for 700 trucks. (*Id.*) The Lost Profits analysis in the 2021 Report (exhibit 4 in Ex. A) never identifies the "other refuse companies" that together total 74,800 trucks and over $7 million in imagined damages; the relevant footnote providing support (Ex. A, ex. 4, fn. 7) cites only a 2016 Heil document (HEIL 0000249-283) that was in Sonrai's possession in November 2019, but that the 2019 Report never considers. (Ex. B.) In the entire new Section

XI "Other Potential Damages" (¶¶ 217-236), the 2021 Report provides no support for any of the new "Other Customers" lost profits numbers. Equally importantly, the only materials the 2021 Report cites in its brand new "Other Refuse Companies" section are materials that were in Sonrai's possession before November 2019. Sonrai and Stuckwisch simply hope to increase the total damages, on no principled basis and, critically for this analysis, based on ***no new evidence***. This is obviously improper for a supplemental report.

### d.     Additional Incremental Operations Costs

The Additional Incremental Operations Costs section of the 2021 Report (Ex. A, ¶¶ 188-198) tries to cure an omission from the 2019 Report. The 2019 Report opined that, but for Defendants' conduct, Sonrai would have made profits of $45.8 million profit on Vector sales of more than $90 million. (Ex. B, ¶ 54, ex. 4.) At Stuckwisch's deposition, it became clear that the 2019 Report ignored real world problems such as staffing – installation teams, tech support, customer service, sales support, payroll, and accounting – access to capital, availability of product (Geotab devices and cables), and the impact of making $90 million in new Vector sales on the infrastructure of a company that had only $2.5 million in total revenue in 2015, only a fraction of which was from Vector. (Ex. D at 120-122.) The "Additional Incremental Operations Costs" section of the 2021 Report (Ex. A, ¶¶ 188-198) tries to cure this omission. Every citation in this section, however, is to evidence that was in Sonrai's possession in November 2019: deposition transcripts (Ex. A, fns. 392, 393, 396); a single Sonrai document, SON_RO-40994-4100 cited four times (fns. 389, 399, 402, 404); some information apparently pulled from the internet (fn. 398); and an assumption that the disposal and recycling business operated by Chris Flood's family could have and would have been willing and able to fund any Sonrai capital needs (¶ 199). But at no time does the 2021 Report base any analysis on evidence uncovered since November 2019.

### e.    Sonrai's Lost Profits by Customer – Inputs.

The first 63 pages and 170 paragraphs of the 2021 Report set up the report's main opinion, the lost profits calculation described at ¶¶ 171-187. (Ex. A.) As the highlighting on Exhibit A reflects, most of this analysis has been added since the 2019 Report and, other than a brief mention of information about Waste Management from the 2021 Monsen deposition (¶ 174), every other new opinion is based on information that was available to Sonrai in November 2019 – conversations with Sonrai's officers (fns. 382-84); depositions taken in 2019 (fns. 363, 381); Sonrai documents (fns. 363, 380-81); and Heil documents produced prior to November 2019 (fns. 369-71, 374-75) -- or is untethered to any supporting materials (¶¶ 171-73, 175, 180, 182, 184). The 2021 Report's discussion of Lost Profits is thus improper supplementation.

The extent to which Stuckwisch re-worked her entire expert report can also be seen when reviewing the computational analysis in the version of exhibit 4 included in the 2021 Report. Attached Exhibit E contains the 2021 and 2019 versions of Stuckwisch's exhibit 4, her Lost Profits analysis. Exhibit E highlights in yellow the changes in exhibit 4 from the 2019 Report to the 2021 Report and highlights in orange where the support for these revisions is information and documents that were in Sonrai's possession in November 2019 (excluding invoices in Sonrai's possession in 2019 that Stuckwisch did not consider in 2019 but which appear in the McDuff report). The first page of Exhibit E is reproduced below.

Exhibit 4: Sonrai's Lost Profits by Customer - Inputs

| Company | Damages Start Date | Fleet | | | | GO7 Device & Other (One-time, Per Device)[1] | | | | | Recurring Monthly Data (Per Device, Per Month)[2] | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Total | Installed Vectors | Event Validation N/A | Install Potential | Vector | Cables & Accessories | Installation | Total Costs | Hardware Profit | Data Fee | Data Cost | Data Profit |
| Progressive / Waste Connections | 3/1/2016 | 8,400 | 293 | 5% | 7,702 | $246.70 | $184.00 | $0.00 | $139.00 | $291.70 | $45.00 | $23.00 | $22.00 |
| Waste Management | 2/1/2017 | 24,000 | 15 | 5% | 22,786 | $246.70 | $184.00 | $0.00 | $139.00 | $291.70 | $45.00 | $0.00 | $45.00 |
| Republic Services | 1/1/2017 | 16,000 | 48 | 5% | 15,154 | $325.00 | $184.00 | $0.00 | $139.00 | $370.00 | $45.00 | $23.00 | $22.00 |
| Waste Corp. of America | 6/1/2017 | 1,800 | 19 | 5% | 1,692 | $246.70 | $184.00 | $0.00 | $139.00 | $291.70 | $45.00 | $23.00 | $22.00 |
| Other Refuse Companies | 1/1/2018 | 74,800 | 0 | 5% | 71,060 | $246.70 | $184.00 | $0.00 | $139.00 | $291.70 | $45.00 | $23.00 | $22.00 |

Footnotes:

[1] Vector price is based on quotes and invoices to customers. For example, Progressive's agreed upon price for the hardware is $246.70 [SON_RO-000851], [SON_RO-092031], [SON_RO-091544], [SON_RO-091281], [SON_RO-090501], [SON_RO-099599]. Republic's agreed upon price for the hardware is $325 [SON_RO-086789]

Cables & Accessories: 9Pin Harness or T Harness 6 pin ($41 - $56/each), GO7 OBD II ext pack ($20) and Digital I/O Aux cable or Garmin IO w/traffic ($100-$131). For example, [SON_RO-000850], [SON_RO-000851], [SON_RO-092033], [SON_RO-103861], [SON_RO-091544], Keizer Deposition Exhibit 46 [SON_RO-081218], [SON_RO-090429], [SON_RO-090500], [SON_RO-090501]. For this analysis, revenue from cables & accessories is calculated as the midpoint of the prices for each product.

Installation: Mr. Flood testified that Sonrai would contract individuals or teach the customer to install it, as a result installation revenue is $0. "Q. When you were contemplating charging an installation fee, that was going to be remitted to Sonrai by Progressive? A. Whoever the service person was that was going to go put them on. Q. Would they be a contractor of Sonrai? A. Actually, I think we were trying to teach an employee of Progressive to put these on. Q. Okay. A. And they were going to actually take it on themselves." [Flood Deposition, April 18, 2019, p. 150.]

GO7 cost is $99 based on Mr. Flood deposition testimony that Sonrai paid $99 to ATI to procure a GO device from Geotab [Flood deposition, p. 143] Mr. Flood testified that Sonrai got other hardware including cables from Geotab for $30 to $50. [Flood Deposition, April 18, 2019, p. 147-148.] Cables & accessories costs are calculated as the midpoint of the cost range or $40.

[2] Data Price is $45 per truck per month based on customer invoices and quotes for Vector data management. See for example, [SON_RO-000851], [SON_RO-091544], [SON_RO-092033], [SON_RO-103861], [SON_RO-091281], Keizer Deposition Exhibit 46 [SON_RO-81218], [SON_RO-090499]. Mr. Flood testified that the data fee (monthly cell charge associated with housing the data received from the trucks in the Sonrai website on the GeoTab platform) of $45.29 per truck per month is what Palmer proposed for the rollout of Sonrai products on all 4,860 Progressive trucks for a minimum of three years [Flood Deposition, April 18, 2019, p. 150 and Exhibit 4] - however, invoices indicate Progressive pays $45 per month per truck (see also [SON_RO-099599] - "our $45 per unit rate"). Data fee assumes the less expensive, non-Garmin option. [Keizer Exhibit 46]

Conversation with Mr. Flood - the data cost is $23. I note that in his deposition, Mr. Flood testified that the data cost to Sonrai was $30: "Q. And how much would Sonrai remit to ATI or Geotab per truck? A. I believe it was $30 per vehicle." [Flood Deposition on April 18, 2019, p. 151.]

Nearly every input (and thus every conclusion) in the Lost Profits analysis has been changed from the 2019 Report to the 2021 Report, all based on materials that were available in November 2019. Starting with the inputs under the heading "GO7 Device & Other (One-Time, Per Device)," Exhibit E reveals the following:

- Vector. The Exhibit 4 in the 2021 Report changes the assumed price per device for customers other than Progressive, based on previously available evidence, i.e. Flood's deposition and Sonrai invoices always available to Sonrai, most of which also were not cited in the McDuff report. Fn. 1, ¶¶ 1, 4.

- Cables & Accessories. The 2021 Report changes for all customers the assumed cost of cabling to install the Vectors, based on old evidence, i.e. Flood's deposition and numerous Sonrai invoices, one of which Stuckwisch considered in her first report, many of which neither she nor McDuff previously addressed and which are barred by the September 10 Order. Fn. 1, ¶¶ 2, 4.

- Installation. The 2021 Report changes the installation cost from $75 or $85 per customer to $0, citing Chris Flood's April 2019 deposition. Fn. 1, ¶ 3.

14

- <u>Total Costs</u>. Since all the inputs changed, the computed Total Costs necessarily change for all customers in Exhibit 4 of the 2021 Report.[9]

Under the heading "Recurring Monthly Data (Per Device, Per Month)," Exhibit E reveals the following:

- <u>Data Fee</u>. The computation changes for Progressive/Waste Connections, based on Sonrai invoices that were available in November 2019 and that this Court directed not be considered as part of the Second Supplement (Dkt. 505). Fn. 2, ¶ 1.

- <u>Data Cost</u>. The 2021 Report changes the assumed cost to Sonrai of providing data for every customer, based on long-available evidence -- the Flood deposition and conversations with Flood and Keizer. Fn. 2 ¶ 2, fn.4, ¶ 4.

Changes also abound in the customer-specific inputs:

- <u>All Customers</u>. The 2021 Report adds a 5% reduction to all customers' assumed fleets, an adjustment that was not part of original exhibit 4. New exhibit 4 offers no support for this change; Paragraph 180 discusses it but provides no evidentiary justification. Apparently, Stuckwisch thinks it makes sense now, but not in 2019.

- <u>Progressive/Waste Connections</u>. The analysis in the 2021 Report has the following changes: the assumed fleet size, based on old evidence, a Heil document and two deposition exhibits (fn. 3, ¶ 2); and the number of trucks outfitted with Vectors, based on old evidence – Sonrai quotes, Keizer's deposition, and a conversation with Keizer. Fn. 3, ¶ 3.[10]

- <u>Other Refuse Companies</u>. As discussed above, this is a completely new addition to exhibit 4, replacing a prior line item for Casella, that represented 700 trucks and just above $400,000, with a vague catch-all claiming 71,060 lost Vector sales and $7,051,787 hypothetical lost sales (ex. 4 p. 1, 8.) What scant support Stuckwisch provides for this new inclusion – in exhibit 4, fn. 7 and 2021 Report fns. 415-450 – all relates to old evidence available to Sonrai in November 2019 and addresses a tiny fragment of the imagined 71,060 supposedly lost sales.

The 2021 Report thus has changed nearly every meaningful input in the Lost Profits analysis. This is a completely new and different analysis than the one contained in exhibit 4 of the

---

[9] The Hardware Profit computation (like the Data Profit computation in the next column) was not included in the 2019 Report's exhibit 4, so it also is new. In addition, if the computation had been reflected in the 2019 Report, that computation also would have changed since it is computed from the other changed inputs.

[10] The analysis is the same for the other three haulers (Waste Management, Republic and WCA) that are specifically identified – several inputs change for each customer, and Stuckwisch does not ground the changes in new evidence.

2019 Report. Every question that Defendants asked Stuckwisch at her deposition about the 2019 lost profits calculation is irrelevant to this new analysis. Every critique that the defense experts made of the original Stuckwisch report – and there were many such criticisms – would need to be re-considered and re-done if this Court allowed Sonrai to completely change its entire damages theory, based on no new evidence, two years after submission of the 2019 Report.

### 5. Conclusion: This Court Should Strike the 2021 Report In its Entirety.

The Court was crystal clear with Sonrai as to what Stuckwisch could, and could not, include in a supplemental report. (Dkt. 492, 505.) Instead of following the Court's clear instructions and serving a proper supplemental report, Sonrai chose instead to serve an improper report that violates not only what is permissible under Rule 26(e), but also the Court's express orders. Even where snippets of the Report cite new evidence, or offers an Unjust Enrichment re-do that arguably might be proper supplement, the arguably permissible portions are so intertwined with the overwhelming and improper majority of the report that the Court's only recourse is to strike the 2021 Report in its entirety. Indeed, it is unfair for Sonrai to foist onto the Defendants and the Court the task of discerning the few arguably proper needles in the 2021 Report's stack of hay, where the Court's directions were so clear. This is a situation of Sonrai's own making, electing not to follow this Court's directives about proper supplementation.

Given the Court's clear warnings, it should come as no surprise to Sonrai, therefore, that the Court would strike its unauthorized and improper report, as courts routinely do under these circumstances. *Solaia Tech.*, 361 F. Supp. 2d at 806 ("Rule 26(e) does "not grant a license to supplement a previously filed expert report because a party wants to."); *Gilbane Bldg. Co. v. Downers Grove Cmty. High Sch. Dist. No. 99*, No. 02-cv-2260, 2005 WL 838679, at *8 (N.D. Ill. Apr. 5, 2005)(striking supplemental expert report and awarding sanctions, as new report could not fairly be characterized as a supplemental report); *Metro Ford Truck Sales,* 145 F.3d at 324

(affirming exclusion of report; supplemental "disclosures are not intended to provide an extension of the expert designation and report production deadline"); *Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655, 662 (N.D. Ga. 2001) (rejecting supplemental report to enforce court-imposed deadlines.); *Berkheimer*, 2016 WL 3030170 at *4 (striking improper "supplemental" report with opinions broader and deeper than those in original report). This Court should strike the 2021 Report in its entirety because it represents an improper attempt by Sonrai to mis-use Rule 26(e) to permit it to authorize a top-to-bottom re-write of its flawed, original expert report.

### B. The Court Should Order Sonrai to Pay Defendants' Fees and Costs Associated with Filing This Motion Within 30 Days

The Court made clear to Sonrai that if Sonrai chose to violate the Court's instructions, and instead file a report that strayed outside of the prescribed bounds, the Court would be inclined to grant Defendants the fees and costs associated with bringing a motion to strike. (Dkt. 492.) Sonrai has violated the Court's orders, serving a 92-page report, as a supposed supplement to a 29-page report, that relies little on new evidence and adds countless pages of new analysis to correct oversights and omissions from the 2019 Report. This Court should force Sonrai to bear the consequences of its actions by striking the 2021 Report and by ordering Sonrai to pay the fees and costs Defendants incurred in bringing this motion to strike. An order requiring Sonrai to pay Defendants' fees and costs is well within the Court's powers and would be appropriate to compensate Defendants for needing to bring this motion. *See, e.g. Orgler Homes, Inc. et al. v. Chicago Regional Council of Carpenters, et al.,* No. 06-cv-50097, 2008 WL 7440130, at *1 (N.D. Ill. Mar. 6, 2008) (ordering such fees be paid because "defendants should not bear the cost for … plaintiff's expert's mistakes").

IV.     **CONCLUSION**

This Court should strike the 2021 Report in its entirety as an improper supplement under Rule 26(e) and for violating this Court's prior orders. The Court should also order Sonrai to pay Defendants' fees and costs for filing this motion within 30 days of Defendants submitting an affidavit to Sonrai setting forth those fees and costs.

Dated: November 23, 2021

Respectfully submitted,

Kathleen A. Lyons
OLSON & CEPURITIS, LTD.
20 N. Wacker Drive, 36th Floor
Chicago, IL 60606
Tel: (312) 580-1180
aolson@olsonip.com
klyons@olsonip.com

*/s/ Jason W. Balich*
Michael A. Albert
Jason W. Balich (*pro hac vice*)
Marie McKiernan (*pro hac vice*)
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
(617) 646-8000
malbert@wolfgreenfield.com
jbalich@wolfgreenfield.com
mmckiernan@wolfgreenfield.com

*Counsel for Defendant Geotab, Inc.*

*/s/ Nathan A. Hall*
Nathan A. Hall
Braden Gregory
Christensen Hsu Sipes LLP
224 South Michigan Ave., Suite 1300
Chicago, IL 60604
nate@chs.law
braden@chs.law

*Counsel for Defendant Anthony Romano*

*/s/ James L. Thompson*
James L. Thompson
Lynch Thompson LLP
150 S. Wacker Drive, Suite 2600
Chicago, Illinois 60606
(312) 346-1600
jthompson@lynchthompson.com

*Counsel for Defendant Heil Co.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 23, 2021, I caused a true and accurate copy of the foregoing document to be filed electronically with the Clerk of the Court by using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.


*/s/ James Thompson*