IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SONRAI SYSTEMS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 16 CV 3371 |
| v. | ) |
| | ) Judge Thomas M. Durkin |
| ANTHONY M. ROMANO, GEOTAB, | ) |
| INC., and HEIL CO., | ) Magistrate Judge Jeffrey I. Cummings |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sonrai Systems, LLC brought this suit on March 16, 2016, against its former employee Anthony Romano, Geotab, Inc. and Heil Co. alleging, *inter alia*, breach of fiduciary duty arising out of an alleged scheme by Romano to assist his new employer in developing and launching a product first developed by Sonrai. On November 20, 2019, Sonrai brought a renewed motion for sanctions against Romano asserting that Romano had engaged in spoliation of evidence in violation of Federal Rule of Civil Procedure 37(e). (Dckt. #323). Sonrai sought a default judgment on its claims against Romano, as well as Romano's counterclaims against it, along with an award of the attorney's fees and costs it incurred in bringing the motion.

On January 20, 2021, this Court issued a report and recommendation which recommended that the District Court grant in part and deny in part Sonrai's renewed motion for sanctions against Romano. *Sonrai Sys.*, *LLC v. Romano*, No. 16 C 3371, 2021 WL 1418405, at *17 (N.D.Ill. Jan. 20, 2021), *report and recommendation adopted*, No. 1:16-CV-03371, 2021 WL 1418403 (N.D.Ill. Mar. 18, 2021). In particular, this Court recommended that the District Court: find that Romano had destroyed or lost ESI (electronically stored information) in violation of Rule 37(e); impose the sanction of instructing the jury that it may or must presume

1

that the information was unfavorable to Romano; and award Sonrai the reasonable attorney's fees and costs that it incurred in connection with its renewed motion for sanctions. *Id.*[1] The District Court adopted this Court's recommendation in full. *Sonrai Sys., LLC v. Romano*, No. 1:16-CV-03371, 2021 WL 1418403, at *1 (N.D.Ill. Mar. 18, 2021).

On September 13, 2021, Sonrai filed its motion for order with respect to the monetary sanction entered against defendant Romano. (Dckt. #507). On September 16, 2021, the District Court referred the motion to this Court for final disposition given that this is not a dispositive motion as to any claim. (Dckt. #511); *see Cage v. Harper*, No. 17-CV-7621, 2020 WL 1248685, at *20 (N.D.Ill. Mar. 16, 2020) (a Rule 37 fee award is within a pretrial nondispositive matter). For the reasons set forth below, Sonrai's motion is granted in part and denied in part, and it is awarded $46,636.52 to compensate it for the reasonable attorney's fees and costs that it incurred in connection with its renewed motion for sanctions against Romano.

I.  **RELEVANT BACKGROUND**[2]

A.  **Timeline of Sonrai's Motions for Sanctions**

As evidenced by even a quick glance at the 500-plus-entry docket report in this case, the parties have engaged in a very long and hard-fought battle over the course of discovery. As part of that battle, back on September 6, 2017, Sonrai – through former counsel Paul Vickrey and his colleagues (hereinafter, "the Vickrey firm") – filed an initial motion to compel and for sanctions against Romano. (Dckt. ##120, 121). In that motion, Sonrai argued, *inter alia*, that its expert forensic investigation (conducted by Forensicon in early 2016) revealed that just before and

---

[1] The Court also recommended that the District Court deny Sonrai's separate motion for sanctions against defendant The Heil Co. (Dckt. #353).

[2] The Court presumes familiarity with the facts of this case and includes only those facts that are relevant to the motion before the Court.

shortly after Romano's January 11, 2016 resignation, he improperly transferred Sonrai files from his Sonrai-issued laptop to his own personal devices. (Dckt. #121 at 2-3). Citing recovered text messages with Romano's personal attorney, Kate Kanaby, Sonrai also argued that Romano scrubbed his Sonrai-issued laptop using programs such as "BackBlaze" and "CleanMyMac" and set his Sonrai-issued cell phone back to factory settings. (*Id*. at 3). Romano responded, (Dckt. #136), primarily objecting to the motion as premature because: (1) discovery was still ongoing and (2) he had not been permitted to conduct his own forensic discovery.

On October 23, 2017, Magistrate Judge Mason granted in part and denied in part Sonrai's motion to compel and for sanctions. (Dckt. #142). On the issue of spoliation, Judge Mason acknowledged the troubling evidence presented by Sonrai, directed Romano to respond to certain discovery requests, and opined that "any evidence that either Romano or his counsel is misleading the Court or Sonrai will result in sanctions." (*Id*. at 2). The parties subsequently engaged in further supplemental briefing regarding purportedly missing devices and, on December 4, 2017, Judge Mason ordered as follows:

> With respect to the four external hard drives, the Court finds that Sonrai will have the opportunity to inquire about the whereabouts of the hard drives if they choose to depose Romano. After that deposition, Sonrai is granted leave to re-file their motion for sanctions on the issue of whether Romano destroyed external devices or deleted or destroyed relevant documents.

(Dckt. #172).

The parties proceeded with written and oral discovery as directed. In August 2018, the Vickrey firm withdrew and attorney Edward Joyce (and, later, some additional colleagues, hereinafter, "the Joyce firm") substituted in as counsel for Sonrai. (Dckt. #199, 200, 206, 215). Eventually, on November 27, 2019, Sonrai – this time through the Joyce firm – filed its renewed motion for sanctions against Romano, again alleging that he improperly transferred data to his

3

personal devices and scrubbed his Sonrai-issued laptop and cell phone. (Dckt. #335). In support, Sonrai relied heavily on evidence uncovered by its new forensic expert, Sean Quellos of Digital Forensics Corporation ("DFC"), who Sonrai retained on March 12, 2019. (*See* Dckt. #508 at 54).

Shortly after filing the renewed motion for sanctions against Romano, Sonrai also filed a motion for sanctions against Heil, (Dckt. #354), arguing that an e-mail "artifact" recovered during DFC's investigation revealed that a Heil employee had deleted an e-mail string that Heil had a duty to preserve.

### B. The Court's Rulings on the Motions for Sanctions

Briefing and resolution of the motions for sanctions against Romano and Heil was delayed pending further relevant expert discovery and the onset of the COVID-19 pandemic. Ultimately, as stated above, the District Court accepted this Court's recommendation that it grant in part and deny in part Sonrai's renewed motion for sanctions against Romano, subject Romano to an adverse inference jury instruction, and require Romano to pay the reasonable attorney's fees and costs incurred by Sonrai in bringing its renewed motion. *Sonrai Sys.*, *LLC*, 2021 WL 1418405, at *17, *report and recommendation adopted*, *Sonrai Sys.*, *LLC*, 2021 WL 1418403, at *1.

### C. The Parties' Efforts to Reach Agreement on the Sanction Award

Following Judge Durkin's order adopting the Report and Recommendation, the parties met and conferred in an effort to determine the appropriate amount of attorney's fees and costs that Romano should pay Sonrai. In doing so, Sonrai's counsel – then still the Joyce firm – first "reviewed its timesheets and the timesheets of Sonrai's former counsel, the Vickrey law firm, to determine the work each firm did with respect to the Romano sanctions motion." (Dckt. #507 at

4

1). Sonrai's counsel then provided defense counsel with the billing entries from the Joyce and Vickery firms that purportedly related to the renewed sanctions motion, along with invoices for "out of pocket costs" for the experts who conducted the various forensic computer investigations in this matter. (*See* Dckt. #508). According to Sonrai's counsel, the total amount of fees and costs incurred for the renewed Romano sanctions motion was $356,860.70, broken down as follows:

- $28,611.50 for fees incurred by Sonrai's former counsel of the Vickrey firm between May 2016 and December 2017 in filing the initial motion for sanctions against Romano, (*See* Dckt. #508 at 41-44);

- $281,560.42 for fees incurred by the Joyce firm between February 2019 and February 2021 for the 665.59 hours of work performed purportedly relating to the renewed motion for sanctions, (*See* Dckt. #508 at 13-40);

- $14,241.78 for costs paid to "Forensicon" for forensic work performed between February 2016 and April 2016, (*See* Dckt. #508 at 45-51);

- $8,474.50 for costs paid to "QDiscovery" for forensic work in late 2017, (*See* Docket. #508 at 45, 52);

- $10,472.50 for costs paid to "Data Defenders" for forensic work in April 2017, (*See* Dckt. #508 at 45, 53); and

- $13,500 for costs paid to Digital Forensics Corp. for forensic work in April 2019, (*See* Dckt. #508 at 45, 54-58).

Defense counsel reviewed Sonrai's records and responded that the billing entries and invoices were "a bit broader than contemplated by the Court's order." (Dckt. #507 at 2). Specifically, defense counsel asserted that Romano has no obligation to pay for any fees and costs for work related to: (1) the initial motion for sanctions filed before Judge Mason; (2) the motion for sanctions against Heil; or (3) for work unrelated to the renewed motion (including the entire costs of the forensic experts) but necessary for litigating the merits of Sonrai's case. (Dckt. #508 at 60).

The parties continued to meet and confer and defense counsel eventually identified for plaintiff's counsel the entries in the Joyce firm's billing records that were "arguably connected to the renewed motion for sanctions against Romano, as opposed to work that supports Sonrai's case in general." (Dckt. #508 at 60-75). Defense counsel reduced block billing entries that included both related and unrelated work by 50%, which resulted in a proposed total cost of $71,097.51 for the "arguably related" time of Sonrai's attorneys from the Joyce firm. (*Id*. at 60). Defense counsel further argued that the entries from six billing attorneys and one unidentified law clerk included "significant overlap and inefficiencies" and reiterated that it was often difficult to determine whether certain entries related to the renewed motion against Romano, or the motion for sanctions against Heil. (*Id*.). To account for such matters, Romano proposed a further 50% reduction and offered to settle the sanctions issue for $35,548.75. (Dckt. #508 at 60). Sonrai declined to accept Romano's offer and filed the renewed motion.[3]

## II.    ANALYSIS

The starting point for a court's evaluation of any fee petition – including for an award of sanctions – "is a lodestar analysis; that is, a computation of the reasonable hours expended multiplied by a reasonable hourly rate." *Houston v. C.G. Sec. Servs., Inc.*, 820 F.3d 855, 859 (7th Cir. 2016), *quoting Divane v. Krull Elec. Co.*, 319 F.3d 307, 317-18 (7th Cir. 2003); *see also Gray v. U.S. Steel Corp.*, 284 F.R.D. 393, 397 (N.D.Ind. 2012) (applying the lodestar analysis when determining an award of sanctions for discovery violations). Although the lodestar yields a "presumptively reasonable fee," *World Outreach Conf. Ctr. v. City of Chicago*, 896 F.3d 779, 783 (7th Cir. 2018), after the lodestar calculation, the court "may determine whether an

---

[3] The Court notes that since the filing of this motion, the Joyce firm has withdrawn from the case and Sonrai is represented by new counsel. (*See* Dckt. #526 & #527).

adjustment is warranted under the case-specific circumstances." *Nichols v. Illinois Dep't of Transportation*, 4 F.4th 437, 441 (7th Cir. 2021).

It is well settled that "[d]istrict courts have wide discretion in determining the appropriate amount of attorney's fees," and that the "party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999). Nonetheless, a party opposing a fee petition must state any objections "with particularity and clarity" in order to give the petitioner the opportunity to defend against any challenges. *One Way Apostolic Church v. Extra Space Storage, Inc.*, No. 16 C 1132, 2019 WL 10892090, at *3-5 (N.D.Ill. Mar. 25, 2019), *quoting Hutchison v. Amateur Elec. Supply*, Inc., 42 F.3d 1037, 1048 (7th Cir. 1994).

### A. The Reasonable Number of Attorney Hours for Which Sonrai is Entitled to Compensation

Here, having already determined that Sonrai was entitled to a monetary sanction for Romano's spoliation of evidence, the Court need only determine – within its discretion – the appropriate sanction award for the "reasonable" attorney's fees and costs Sonrai incurred "in connection with its renewed motion for sanctions." *Sonrai*, 2021 WL 1418405, at *17.

The party seeking a fee award must submit its billing records and "bears the burden of proving the reasonableness of the number of hours worked." *Herrera v. Grand Sports Arena, LLC*, No. 17-cv-0452, 2018 WL 651115, at *2 (N.D.Ill. Dec. 11, 2018) (citing *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 518 (7th Cir. 1993)); *Gonzalez v. Baker*, No. 2:20-cv-01879-JCM-DJA, 2022 WL 2080089, at *3 (D.Nev. June 8, 2022). The moving party must also "exercis[e] billing judgment, which means they must 'exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary.'" *Melikhov v. Drab*, No. 16 C 9332, 2018 WL 3190824, at *2 (N.D.Ill. May 21, 2018), *quoting Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

7

"What qualifies as a 'reasonable' use of a lawyer's time 'is a highly contextual and fact specific enterprise,' and the court has 'wide latitude' in awarding attorney's fees." *Melikhov*, 2018 WL 3190824, at *4, *quoting Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010). Among other things, the Court must assess the attorneys' time entries and must exclude from the lodestar hours that are excessive, redundant, vague, inadequately documented or otherwise unnecessary. *Hensley*, 461 U.S. at 434; *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). The Court must also carefully "'scrutinize fee petitions for duplicative billing when multiple lawyers seek fees.'" *Johansen v. Wexford Health Sources*, No. 15-CV-2376, 2021 WL 1103349, at *7 (N.D.Ill. Mar. 23, 2021), *quoting Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 858 (7th Cir. 2009).

Finally, where – as here – the fees are awarded because of a party's bad faith, "the fee award may go no further than to redress the wronged party for losses sustained [and] it may not impose an additional amount as punishment for the sanctioned party's misbehavior." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1186 (2017). Accordingly, the Court will reduce the billable hours sought for purposes of the calculation of this fee award under Rule 37(a)(5)(A) to the extent the time entries are "*not strictly limited to time 'incurred in making the motion'* as required under the Rule." *Campbell v. Verma Sys., Inc.*, No. CV 21-272-BAJ-RLB, 2022 WL 879497, at *3 (M.D.La. Mar. 23, 2022) (emphasis added); *NRA Grp., v. Durenleau*, No. 1:21-CV-00715, 2022 WL 609207, at *8-9 (M.D.Pa. Mar. 1, 2022) (declining to award attorney's fees for time that was not reasonably necessary for the preparation of the successful motion for a protective order).

1. **Sonrai is not entitled to recover the attorney's fees incurred by the Vickrey firm in connection with the initial motion for sanctions.**

As explained above, Sonrai has included in its motion a request for $28,611.50 for the attorney's fees incurred by the Vickrey firm (Sonrai's former counsel) in connection with the first motion for sanctions filed against Romano in September 2017. Such fees were not contemplated by this Court's prior order, which expressly limited the sanction award to the fees and costs incurred in connection with the *renewed* motion for sanctions (which was filed in late November 2019). Accordingly, because the fees incurred by the Vickery firm were not incurred in connection with the preparation of the renewed motion for sanctions, they cannot be recovered. *Id.*[4]

2. **Sonrai has met its burden of showing that 121.42 hours of attorney work by the Joyce firm were reasonably incurred in connection with the renewed motion for sanctions against Romano.**

Relying on the contemporaneous billing entries of six attorneys and one law clerk, Sonrai asserts that the firm "reasonably spent" 665.59 hours preparing the renewed motion for sanctions against Romano. (Dckt. #508 at 13-14). Romano does not dispute that Sonrai is entitled to a portion of the fees for the Joyce firm's work. Instead, he argues that Sonrai has failed to meet its burden to show that the vast majority of the hours for which it seeks recovery were reasonably necessary to prosecute the renewed motion. For the following reasons, the Court largely agrees with Romano.

---

[4] The Court acknowledges that the Vickrey firm's initial motion for sanctions raised the same allegations of spoliation that ultimately wound up before this Court years later, and that the Joyce firm may have indeed relied on the work of the Vickrey firm as a foundation for its renewed motion for sanctions. Nonetheless, Judge Mason did not determine at that time that Romano engaged in sanctionable spoliation and – most importantly for present purposes – he did not order Romano to pay the attorney's fees and costs that Sonrai incurred in filing that motion.

9

To begin, the Court agrees that the sixty-eight entries identified and highlighted by Romano himself as "arguably related," (*see* Dckt. #514 (highlighted entries)), include work that was reasonably incurred in connection with the renewed motion for sanctions. Those entries include time billed for attorney conferences and correspondence regarding the motion for sanctions, research and briefing on the motion, a status hearing on the motion, and the attorneys' review of the opposing briefs, all of which constitutes attorney time incurred as a direct result of Romano's destruction of evidence. *See Melikhov*, 2018 WL 3190824, at *5 (allowing the recovery of fees for "meeting and conferring, bringing motions, and attending hearings related to Defendants' failure to satisfy their discovery obligations"); *Struve v. Gardner*, No. 1:19-cv-04581-RLY-MJD, 2021 WL 1948868, at *2 (S.D.Ind. May 14, 2021) (noting that "there are circumstances in which time spent prior to the filing of a discovery motion are properly included in a fee award under Rule 37").

Second, based on its review of the remaining disputed entries, the Court finds that three additional billing entries include work that was reasonably incurred in connection with the renewed motion. (Dckt. #508 at 31 (Nos. 102171, 102172, and 102173)).

Third, the Court finds that the remaining entries were not reasonably expended in connection with the renewed motion for sanctions against Romano and, therefore, must be excluded. While the Court is "not obligated to conduct a line-by-line review of the bills to assess the charges for reasonableness," *Rexam Beverage Can Co. v. Bolger*, 620 F.3d 718, 738 (7th Cir. 2010), the remaining entries:

> (1) Are too vague to determine whether they relate to the renewed motion for sanctions against Romano, *or* to the motion for sanctions against Heil, *or* to discovery for the case in general (*see, e.g.*, Nos. 101988-89, 102010, 102014, 102022, 102031, 102072, 102179, 102197). *See Montanez*, 755 F.3d at 556 ("The district court has broad discretion to strike . . . vague or unjustified billing entries.");

10

> (2) Relate to the motion for protective order filed by Romano related to the attorney-client privilege, which was not encompassed in this Court's sanction award and would have likely been filed in connection with dispositive motions or at trial notwithstanding the sanctions motion (*see*, *e.g.*, Nos. 102213, 102215, 102218). *See Karsch v. Blink Health Ltd.*, No. 17-cv-3880(VM)(BCM), 2019 WL 2708125, at *26 (S.D.N.Y. June 20, 2019) (excluding "[o]ther legal work – such as, for example, defendants' motion concerning plaintiff's waiver of the attorney client privilege"); *NRA Grp., LLC v. Durenleau*, No. 1:21-cv-00715, 2022 WL 609207, at *9 (M.D.Pa. Mar. 1, 2022) (declining to include hours spent on tasks unrelated and unnecessary to the discovery motion at issue); or

> (3) Relate to communications with and about the forensic work of DFC, but – as discussed in more detail below – do not distinguish whether the work was necessary to the motion itself, or to the case in general. *See Karsch*, 2019 WL 2708125, at *26 ("not every discovery-related expense . . . is recoverable").

Within its discretion, the Court excludes these entries from the lodestar calculation. *See Sommerfield v. City of Chicago*, 863 F.3d 645, 651 (7th Cir. 2017) ("[T]he court may feel compelled to exclude unnecessary hours . . . before calculating the lodestar."); *Montanez*, 755 F.3d at 556; *Pouncy v. City of Chicago*, No. 15-CV-1840, 2017 WL 8205488, at *8 (N.D.Ill. Dec. 11, 2017) (striking hours that were not sufficiently detailed to permit the court to determine whether the hours expended were reasonable and necessary).

Lastly, as acknowledged by the parties, a great deal of the sixty-eight entries identified by Romano as "arguably related" and the additional entries permitted by the Court above were block-billed. Block-billing is the "practice of lumping several tasks into a single time entry." *Sommerfield v. Knasiak*, No. 08-CV-3025, 2021 WL 5795303, at *13 (N.D.Ill. Dec. 7, 2021). Although it not a prohibited practice, block billing "does not provide the best possible description" of an attorney's work, *Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 569 (7th Cir. 2006), and it can "frustrate[] the court's and the opposing party's ability to determine how much time the lawyer spent on reasonably necessary litigation tasks by making it unclear exactly how much time was spent on which tasks," *Somerfield*, 2021 WL 5795303, at *13.

11

Block billing is particularly problematic where – as here – the Court must ascertain the reasonableness of the amount of time devoted to a discrete motion that was prepared while counsel was working on multiple tasks related to the case as a whole.

Here, by the Court's count, forty of the permitted entries were block-billed. A review of those entries shows that some include work clearly related to the motion plus clearly unrelated work, while others include work related to the motion *plus* unidentified or vague work descriptions, making it difficult to discern the appropriate number of hours to allocate to the related time. Because deducting all of the block-billing entries would be inconsistent with the purposes of the Court's sanction award – meant to compensate counsel for the amount of time reasonably expended on the motion – the Court, in its discretion, will reduce each of the forty block-billed entries by 50% to account for the non-compensable and/or vague portions of the entries. *See, e.g., Gibson v. City of Chicago*, 873 F.Supp.2d 975, 987 (N.D.Ill. 2012) (reducing certain block billing entries by half because the entries "should have specified the time for each individual task" but included only vague descriptions); *Sommerfield*, 2021 WL 5795303, at *13 (reducing mixed block-billed entries by one-third); *In re Direct Media Power, Inc.*, No. 18 C 7397, 2019 WL 4601736, at *7 (N.D.Ill. Sept. 23, 2019) (the amount by which fees should be reduced for block-billing is a matter of discretion). The hours incurred in the remaining permitted entries that were not block-billed will be included in full. *See, e.g., NRA Grp.*, 2022 WL 609207, at *8 ("Entries awarded in full are solely and specifically related to the motion for a protective order.").

For these reasons, the Court finds that Sonrai's attorneys devoted 161.88 hours of work related to the renewed motion for sanctions. However, the Court further finds that this amount of time is excessive given the nature of the motion and includes unnecessary duplication of effort

12

given the number of attorneys involved. *Cf. Mouloki v. Epee*, No. 14 C 5532, 2017 WL 2791215, at *1, 5-6 (N.D.Ill. June 27, 2017) (reducing plaintiff's request to recover for 102.70 hours of work in connection with a motion to compel based on the claim that defendants wrongfully failed to preserve and produce certain relevant emails to 53.74 hours due to excessive time spent on drafting briefs and other tasks). Accordingly, the Court, in its discretion, will apply an across-the-board reduction of 25% in the number of hours for which Sonrai will be compensated, which results in a total of 121.41 hours.[5] *See Johansen*, 2021 WL 1103349, at *7-8 (applying across-the-board percentage reduction due to duplicative and excessive fee entries); *Smith v. Rosebud Farm, Inc.*, No. 11-CV-9147, 2018 WL 4030591, at 85 (N.D.Ill. Aug. 23, 2018) (striking the entries for categories of billings that clearly are not recoverable and then reducing the hours by a reasonable percentage as a result of excessive billing and errors in the billing records).

        **3.**      **Sonrai has failed to meet its burden to support the hourly rates requested in its fee petition.**

In the context of a fee petition, a reasonable hourly rate is "one that is 'derived from the market rate for the services rendered.'" *Melikhov v. Drab*, No. 16 C 9332, 2018 WL 3190824, at *3 (N.D.Ill. May 21, 2018), *quoting Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011); *Montanez*, 755 F.3d at 553 ("A reasonable hourly rate is based on the local market rate for the attorney's services."). In particular,

> the best evidence of the market rate is the amount the attorney actually bills for similar work. However, if that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases.

*Montanez*, 755 F.3d at 553.

---

[5] The Court notes that Romano suggests that a range of 75-110 hours worked on the renewed motion would be reasonable. (Dckt. #513 at 8).

13

The party seeking fees bears the burden of "produc[ing] satisfactory evidence – *in addition to the attorney's own affidavits* – that the requested rates are in line with those prevailing in the community." *Spegon*, 175 F.3d at 555, *quoting Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (emphasis in original). "If the fee applicant does not satisfy their burden to produce satisfactory evidence that the requested rates are in line with those prevailing in the community, the Court 'has the authority to make its own determination of a reasonable rate.'" *Melikhov*, 2018 WL 3190824, at *3, *quoting Pickett*, 664 F.3d at 640; *Montanez*, 755 F.3d at 553. In making that determination, the Court can review publicly available information about rates charged by similarly experienced attorneys in the community for similar work and the attorney's experience. *Montanez*, 755 F.3d at 554; *Spregon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999); *Melikhov*, 2018 WL 3190824, at *3; *In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 5497275, at *8 (N.D.Ill. Oct. 3, 2013), *amended*, No. 11 C 8176, 2014 WL 2809016 (N.D.Ill. June 20, 2014), *aff'd*, 799 F.3d 701 (7th Cir. 2015) (reviewing attorney's LinkedIn profile to ascertain his level of experience).

Romano asserts that Sonrai has failed to meet its burden of showing that the hourly rates it claims for the Joyce attorneys are reasonable and the Court agrees. Despite the clear precedent cited above and this Court's express order that Sonrai should "submit a fee application with supporting affidavit(s)," *Sonrai Sys.*, 2021 WL 1418405, at *16, n.20, Sonrai submitted only a two-paragraph affidavit from attorney Edward Joyce, which averred that the facts in Sonrai's motion are true and correct. (Dckt. #508 at 6). This self-serving affidavit does not mention the hourly rates sought by the Joyce firm attorneys, nor does it state the years of practice and areas of specialty of each attorney or the rates the attorneys typically bill clients for similar work. As such, the affidavit utterly fails to establish the billing rates of the Joyce firm attorneys. *See, e.g.,*

14

*Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir. 2000) ("an attorney's self-serving affidavit alone cannot establish the market rate for that attorney's services"); *Melikhov*, 2018 WL 3190824, at *3 (same).

Moreover, Sonrai did not state in its brief what hourly rates it seeks for the Joyce firm attorneys. Instead, information about the claimed hourly rates can only be discerned by a review of the attorneys' billing entries, which are not definitive because they contain more than one billing rate for each of the principal attorneys. In particular: attorney Edward Joyce bills at varying rates of $1,000 per hour, $675 per hour, and on a flat rate basis (which typically results in a far lower rate for each hour of work), (Dckt. #508 at 13, 18, 19, 21, 22, 32, 33); attorney Robert Carroll bills at rates of $500 per hour, $200 per hour, and on a flat rate basis, (Dckt. #508 at 18, 20, 30, 32, 33); and attorneys Joan Mannix and Rowena Parma bill at a rate of $500 per hour and on a flat rate basis, (Dckt. #508 at 13, 15, 17, 21).

Because Sonrai has failed to establish the hourly rates for the Joyce firm attorneys, the Court will determine their rates in reliance on publicly available information about the attorneys' credentials and rates charged by similarly experienced attorneys in the community for similar work. Unlike with cases concerning other areas of law (such as in civil rights, employment discrimination, and Fair Labor Standard Act litigation), there is not an abundance of case law discussing market rates for attorneys with varying levels of experience in general commercial litigation such as this case. Nor have the parties cited any fee awards involving the Joyce firm attorneys. The Court found one recent case where attorney Paul Vickery received an attorney's fee award at an hourly rate of $425 in a civil rights case based upon his substantial litigation practice in the commercial and IP sectors. *See Williams v. City of Chicago*, No. 17 C 5186, 2022 WL 971604, at *4 (N.D.Ill. Mar. 31, 2022). The Court finds that the qualifications of Vickery

15

(who has forty-one years of litigation experience) are sufficiently analogous to the qualifications of attorney Joyce (whose practice areas include business litigation, general litigation, and appellate issues[6]) to support the use of an hourly rate of $425 for Joyce in this litigation.[7]

With respect to attorney Robert Carroll, who has nineteen years of experience and whose areas of expertise include fraud, breach of fiduciary duty, and breach of contract litigation, the Court notes that his stated hourly rate ranges between $250 to $475 per hour.[8] The Court finds it appropriate to award him fees at $362.50, which is the mid-point of the range of his stated hourly rate. Attorney Joan Mannix (who was licensed to practice in 1989) specializes in representing clients in appellate proceedings.[9] The Court finds it appropriate to award her fees at $297, which is the average hourly rate for civil litigation in Chicago.[10] (*See* Dckt. #513 at 7).[11] The Court likewise finds it appropriate to award fees to attorney Rowena Parma, who was licensed to practice in 1992 and appears to specialize in stockholder suits[12] at the rate of $297 per hour. Finally, little is known about the credentials and experience of attorney Victoria Worley, who

---

[6] Super Lawyers. *Edward T. Joyce, Attorney Profile* (Last Accessed Sept. 29, 2022) https://profiles.superlawyers.com/illinois/chicago/lawyer/edward-t-joyce/4f0f03d0-55fb-4308-940a-a9792209a956.html.

[7] The fact that Joyce, who was licensed to practice in 1967, has even more experience than Vickery is largely irrelevant given the extensive amount of experience that both attorneys possess. *See Awalt v. Marketti*, No. 11 C 6142, 2018 WL 2332072, at *3 (N.D.Ill. May 23, 2018).

[8] Avvo, *Robert D. Carroll, Attorney* Profile (Last Accessed Sept. 29, 2022), https://www.avvo.com/attorneys/60603-il-robert-carroll-1130716.html.

[9] LinkedIn, *Joan Mannix, Profile* (Last Accessed Sept. 29, 2022) https://www.linkedin.com/in/joan-mannix-052739ba.

[10] An attorney's inexperience in a particular area is a permissible reason to discount her hourly rate. *Moulaki*, 2017 WL 2791215, at *2.

[11] Citing Clio, *How Much Do Lawyers Charge In Illinois* (Last Accessed Sept. 29, 2022) https://www.clio.com/resources/legal-trends/compare-lawyer-rates/il/.

[12] Law 360, *Rowena Parma* (Last Accessed Sept. 29, 2022) https://www.law360.com/firms/edward-t-joyce-associates/attorneys/rowena-t-parma.

was licensed to practice in 2020. Accordingly, the Court finds it appropriate to award her fees at the rate of $150 per hour. *See, e.g., Brzowski v. Sigler*, No. 17 C 9339, 2021 WL 4283206, at *4, 5 (N.D.Ill. Sept. 21, 2021); *Cooper v. City of Chicago*, No. 16 C 3519, 2018 WL 3970141, at *16 (N.D.Ill. Aug. 20, 2018).

The resulting lodestar calculation – based on the hours permitted above – for the Joyce firm attorneys is as follows:

| Attorney Name | Compensable Hours | Hourly Rate | Fee Award |
|---|---|---|---|
| Edward Joyce | 20.10 | $425.00 | $8,542.50 |
| Robert D. Carroll | 71.72 | $362.50 | $25,998.50 |
| Joan Mannix | 3.68 | $297.00 | 1,092.96 |
| Rowena Parma | 2.48 | $297.00 | $736.56 |
| Victoria Worley | 23.44 | $150.00 | $3,516.00 |
| **Total** | | | **$39,886.52** |

### 4. Sonrai is entitled to recover $6,750 in costs.

Sonrai also seeks to recover costs for the work performed by Forensicon in 2016 ($14,241.78), by QDiscovery in 2017 ($8,474.50), by Data Defenders in 2017 ($10,472.50), and by DFC in 2019 ($13,500). (Dckt. #508 at 45-58). The standard for determining whether Sonrai can recover these costs on this motion is whether the costs were incurred in connection with its renewed motion for sanctions. The costs that Sonrai incurred for the work of Forensicon, QDiscovery, and Data Defenders in 2016 and 2017 were clearly not incurred in connection with the renewed motion for sanctions, which was not filed until November 2019, but were instead incurred during the general course of discovery. Accordingly, Sonrai is not entitled to recover these costs. *See Karsch*, 2019 WL 2708125, at *26 (noting that "not every discovery-related expense . . . is recoverable" for a sanction award for spoliation).

Finally, the Court turns to Sonrai's request for $13,500 in costs for the work performed by DFC in 2019. There can be no dispute that Sonrai (and the Court) relied heavily on the

forensic investigation of DFC to assess whether Romano engaged in improper spoliation subject to sanctions in this matter. *See generally Sonrai*, 2021 WL 1418405, at *4-5, 7-8 (reviewing the DFC investigation conducted by Sean Quellos in detail and relying on those findings to show that Romano destroyed relevant evidence). Unfortunately, Sonrai has failed to submit detailed invoices for DFC/Quellos' investigation that might support its assertion that the April 8, 2019 wire transfer of $13,500, (*see* Dckt. #508 at 58), covered work related to the Romano sanctions motion. Instead, Sonrai has submitted only the March 12, 2019 agreement between Sonrai and DFC, which outlines the scope of the agreed upon work, and – by its own terms – refutes any assertion that Sonrai relied on DFC's work *solely* in connection with the renewed motion for sanctions against Romano.

To begin, the agreement describes two phases of DFC's proposed investigation. (Dckt. #508 at 54-57). Phase 1 is described as the "preliminary evaluation and [was] intended for collecting evidence and gathering facts" to form an "objective understanding" of the state of Sonrai's network in an effort to, among other things, identify whether any identified breach remained active. (*Id*. at 54). Phase 1 also appeared to involve "penetration testing and security audit" as well as a "network security assessment." (*Id*. at 57). Phase 2, on the other hand, is described as a "full forensic examination" that would only be necessary if "more time [was] required [following Phase 1] to close and remedy the breach" or if "private and privileged information ha[d] been compromised." (*Id*. at 56). Under the terms of Phase 2, DFC agreed to consult with Sonrai regarding "preparation of subpoenas to obtain information on owners of any IP addresses involved with the breach for the purpose of filing civil or criminal charges." (*Id*.). Finally, in both Phases 1 and 2, to the extent DFC determined any deleted information was recoverable, DFC agreed to work with Sonrai to recover deleted content. (*Id*. at 57).

18

Here, based on the limited information provided by Sonrai with respect to DFC, it is not entirely clear whether DFC proceeded fully through Phases 1 and 2 during its investigation.[13] What is clear, however, is that in addition to investigating Romano's potential destruction of evidence relevant to the sanctions motion, DFC also served to assist Sonrai in protecting its IT networks for general business purposes. Furthermore, to the extent that DFC did proceed to Phase 2, it is that Phase – with references to civil litigation and more detailed analysis – that would have proven most relevant to this Court's review of the issue of spoliation.

Finally, the Court notes that Sonrai also relied on DFC's forensic investigation in support of its motion for sanctions against Heil. *See Sonrai*, 2021 WL 1418405 at \*17 (describing Sonrai's motion against Heil based on an e-mail artifact recovered during DFC's investigation). But, as explained above, Sonrai did not prevail on that motion and it is not entitled to recover any costs related to it.

For all of these reasons, Sonrai has failed to show that it is entitled to recover the entirety of the DFC costs in connection with this motion. The Court – within its discretion and in the absence of detailed invoices from DFC – will award Sonrai 50% of the cost of DFC's investigation and will therefore include costs in the amount of $6,750 in the sanction award.

---

[13] The $13,500 wire transfer receipt provided to the Court does not specify which Phase it covered. Notably, the total amount falls somewhere between the 30 day-service quote and the 15-day service quote set forth in the agreement for Phase 1. (Dckt. #508 at 55). Phase II does not include a quote because it cannot be accurately estimated until the after the completion of Phase 1. (*Id*. at 57).

## CONCLUSION

For the reasons stated above, plaintiff's motion for order with respect to the monetary sanction [507] is granted in part and denied in part. Plaintiff is awarded $39,886.52 in attorney's fees and $6,750.00 in costs for a total of $46,636.52.

**DATE: September 29, 2022**

_____
**Jeffrey I. Cummings**
**United States Magistrate Judge**