**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SONRAI SYSTEMS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 16 CV 3371 |
| v. | ) | |
| | ) | Judge Thomas M. Durkin |
| ANTHONY M. ROMANO, GEOTAB, | ) | |
| INC., and HEIL CO., | ) | Magistrate Judge Jeffrey I. Cummings |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Sonrai brought this suit against its former employee Anthony Romano, Geotab, Inc., and Heil Co. alleging, *inter alia*, breach of fiduciary duty arising out of an alleged scheme by Romano to usurp Sonrai's customers and assist his new employer, Heil, in developing and launching a product first developed by Sonrai, the Vector product (hereinafter, "Vector"). Specifically, Sonrai alleges that while Sonrai and Heil were discussing a licensing and potential purchasing deal of Vector, Heil entered into a confidentially agreement with Sonrai, pursuant to which Sonrai shared confidential information regarding Vector.

According to Sonrai, after it rejected Heil's proposal to license Vector, Heil worked with Romano – both while he was still employed by Sonrai and after he resigned – to develop a competing and identical product and poach Sonrai's customers. Sonrai further alleges that in September 2016, Heil purchased a company called Alliance Wireless Technologies, Inc., which now does business as "3rd Eye." (Dckt. #119 at ¶6). Before the acquisition, 3rd Eye was apparently a "vehicle safety camera company" with no capacity to create a Vector-like product. Sonrai alleges that after Heil's acquisition of 3rd Eye, Heil "migrated" its Vector knock-off

product (hereinafter, the "3rd Eye service verification product," or "Enhance") – and eventually Romano himself – to 3rd Eye. (*Id.* at ¶61).

Currently before the Court is defendants' motion to strike the supplemental expert report of Sonrai's damages expert Suzanne Stuckwisch and for attorney's fees. (Dckt. #523). In their motion, defendants ask the Court to strike Sonrai's "third attempt at re-writing [Stuckwisch's] damages report." (*Id*. at 4).[1] Sonrai filed a response, (Dckt. #539), and defendants filed a reply, (Dckt. #540). For the reasons set forth below, defendants' motion is granted in part and denied in part.

## I. BACKGROUND AND PRIOR RULINGS[2]

### A. Stuckwisch's 2019 Expert Report

Sonrai disclosed its initial damages report of Suzanne Stuckwisch (the "2019 Report") in November 2019. (Dckt. #523-2). Sonrai retained Stuckwisch to assess the economic damages Sonrai suffered as a result of defendants' alleged improper conduct with respect to its Vector product. In her twenty-nine-page 2019 Report, Stuckwisch set out to determine: (1) the amount of "lost profits" to Sonrai "that would have been generated by Sonrai customers or potential customers but for the actions" of defendants; and (2) the amount of damages based on defendant Heil "being unjustly enriched by using confidential Sonrai information and incorporating it into its copy-cat product, Enhance." (*Id*. at 25, 31).

---

[1] Citations to page numbers refer to the electronically stamped CM/ECF page number at the top of each document.

[2] The Court presumes familiarity with the facts of this case and includes only those facts that are relevant to the motion before the Court. The Court includes this detailed procedural background and explanation of its prior rulings to illustrate that it has addressed the appropriate scope of Stuckwisch's supplemental report in detail and need only determine whether the latest supplemental report falls within that scope and the proper purview of Rule 26(e).

In short, to calculate lost profits, Stuckwisch determined the fleet size for each customer at issue (there were six) and multiplied that by the price per Vector unit (which included the unit itself, related hardware, and monthly data services). (*Id*. at 27-28). Stuckwisch then determined Sonrai's variable costs for each of the three revenue sources (unit, hardware, and data services) and subtracted Sonrai's total costs from total revenue to determine lost profits per customer. (*Id*. at 28). She then calculated the net present value of profits to account for a phased rollout of units. (*Id*. at 29). In her 2019 Report, Stuckwisch calculated damages for lost profits in the amount of $45.8 million. (*Id*.)

Because Heil "did not produce [certain] financials," Stuckwisch relied on Heil's projections (related to the monthly subscription fee per truck, the cost of the subscription fee, the number of subscribers, and the number of units), to determine what portion of Heil's profits were attributable to the alleged improper use of Sonrai's confidential information. (*Id*. at 30-31.) Upon doing so, Stuckwisch calculated damages for unjust enrichment in the amount of $43.7 million. (*Id*. at 31).

After plaintiffs disclosed Stuckwisch's 2019 Report, defendants deposed Stuckwisch and eventually disclosed their own damages expert's report purportedly "exposing the flaws in Stuckwisch's opinions and damages analysis." (Dckt. #523 at 4).

## B.    Stuckwisch's Proposed 2020 Supplemental Report

In July 2020, Sonrai sought leave to file an eighty-page supplemental report from Stuckwisch based on what Sonrai viewed as newly obtained discovery that Stuckwisch had been unable to review before drafting the 2019 Report. (Dckt. #416, #417). Specifically, Sonrai sought leave to supplement the report based on: (1) the February 2020 depositions of Charles Palmer and Loris Stellato; (2) additional documents produced by Heil on March 11, 2020; (3)

3

additional documents obtained by Sonrai based on information provided by the Region of Peel, which were included in Sonrai's June 12, 2020 supplemental production to defendants; and (4) documents relied upon by defendants' experts, which Heil first produced on June 29, 2020. Attached to Sonrai's motion was the proposed supplemental report by Stuckwisch, which was purportedly based on this new discovery (the "Proposed 2020 Report"). (Dckt. #416 at 13-145). Defendants objected to the motion to supplement, (Dckt. #422), arguing that the Proposed 2020 Report was not a proper supplement under Federal Rule of Civil Procedure 26(e), but was instead a new report based on information Sonrai already had in its possession long before the 2019 report was disclosed.

### C. Sonrai's Motion to Reopen Discovery

The issue of Stuckwisch's supplemental report was deferred while the parties and the Court resolved a multitude of other discovery issues and motions. One of those motions was Sonrai's motion for leave to re-open fact discovery in order to take the depositions of five individuals associated with Heil and/or 3rd Eye who Sonrai believed were intimately involved in Romano's alleged scheme.[3] (Dckt. #438). The genesis of that motion was Sonrai's recent contact with former 3rd Eye Vice President, Mark Regan, who had reached out to Sonrai's COO Dennis Keizer to inquire as to why he and other 3rd Eye employees had not been deposed in this litigation. In support of the motion, Sonrai submitted the declaration of Mark Regan, (Dckt. #438 at Ex. 2 – hereinafter the "Regan Declaration"). According to Regan, "while he was still employed with 3rd Eye, it was pursuing an agreement with former Sonrai contact Waste Management to install its competing product in Waste Management's 35,000-truck fleet," and

---

[3] Those individuals were: Mark Regan, Derrick Reed, Kyle Kummer, Richard Buteau, and Eric Monsen.

4

3rd Eye had "since successfully obtained an exclusive, multi-year contract with Waste Management." (Dckt. #468 at 3 (citing the Regan Declaration)).

Ultimately, this Court granted Sonrai's motion to re-open discovery in part and allowed Sonrai to take the five additional depositions. (Dckt. #468). Because those depositions could have impacted the scope of Stuckwisch's damages analysis, the Court determined that it was appropriate to defer ruling on the merits of Sonrai's then-pending motion to supplement Stuckwisch's report until after the depositions were completed. As such, the Court denied the motion to supplement without prejudice and with leave to amend or renew as appropriate. (*Id.* at 7). The Court further ordered that upon completion of the depositions:

> [T]he parties shall meet and confer to discuss whether, if at all, the testimony affects the parties' previously disclosed expert reports and whether further supplemental expert discovery is needed. The parties are encouraged to reach an agreement as to further expert supplementation and discovery if it reasonably appears – as Sonrai asserts – that the additional discovery will impact the analysis of Sonrai's damages expert Suzanne Stuckwisch.
>
> . . .
>
> The parties shall file a joint status report regarding expert discovery by March 19, 2021. In the event that they are unable to reach agreement regarding further expert discovery, the parties shall state their respective positions regarding whether Sonrai's motion to supplement and related briefs need to be amended or can be renewed and considered as is by the Court.

(*Id.*).

### D.    The Court's Prior Rulings on the Supplementation of Stuckwisch's Report

Unfortunately, following the depositions,[4] the parties were unable to reach a full agreement regarding the scope of further expert discovery and the supplementation of Stuckwisch's report. Indeed, on April 16, 2021, the parties filed a joint status report setting forth

---

[4] Sonrai decided against deposing Derrick Reed, so only four additional depositions were taken. (*See* Dckt. #475 at 1).

5

certain categories of documents that defendant Heil had agreed to supplement and others that remained in dispute. (Dckt. #484). Specifically, Heil had agreed to supplement its prior production by producing: "written contracts (if any) relating to the sale of the 3rd Eye service verification product for Waste Management, Republic Services, Inc., Waste Connections and Waste Corp. of America" and "sales data reflecting the sales of service verification technology by supplying the names of each customer who purchased the technology" (hereinafter, the "Heil contracts and sales documents"). (*Id*. at ¶¶2-3). Heil did not agree to produce "projections of revenue and profit for Heil's 3rd Eye positive service verification product," or "marketing plans for the launch of the 3rd Eye product." (*Id*. at ¶¶5-6).

The Court reviewed the parties' report, set a status hearing for May 26, 2021, and ordered the parties to prepare to discuss the following topics:

> (1) whether Sonrai should be granted leave to supplement the report of its damages expert to incorporate information from the [Heil contracts and sales documents] that Heil has agreed to produce that are identified in paragraphs 2 and 3 of the parties' joint status report and any pertinent testimony from the five individuals that the Court granted Sonrai leave to depose in its 1/20/21 order [468]; (2) whether Sonrai intends to pursue its request to supplement the report of its damages expert for some or all of the reasons stated in its prior motion to supplement [417]; (3) whether Heil should be compelled to produce documents reflecting its projections of revenue and profit for Heil's 3rd Eye positive service verification product and all of its marketing plans for the launch of the 3rd Eye product as referenced in paragraphs 5 and 6 of the parties' joint status report; and (4) whether the parties are mutually interested in having a settlement conference at this time.

(Dckt. #485). As reflected in the transcript, (Dckt. #538), these issues were discussed at length at the May 26 status hearing.

After hearing argument from the parties, the Court denied Sonrai's request for sales projections and marketing plans described in paragraphs 5 & 6 of the status report. (Dckt. #486 & #538 at 10-11, 16). However, the Court granted Sonrai leave to provide Stuckwisch with the supplemental discovery Heil provided to Sonrai by agreement – that is, the Heil contracts and

6

sales documents, and the transcripts from the four additional depositions – and ruled **"that Stuckwisch may supplement her initial [2019] expert report based on that discovery."** (Dckt. #486) (emphasis added). The Court further ordered the parties to meet and confer and submit a status report explaining whether Sonrai "still intends to pursue its prior motion to supplement Ms. Stuckwisch's report and, if so, on what basis." (*Id.*).

In early June 2021, the parties filed competing status reports outlining their respective positions as to how the supplementation of Stuckwisch's prior report should proceed. (Dckt. #489, Sonrai's Report, & #490, Defendants' report). Sonrai explained that it no longer sought leave to disclose Stuckwisch's proposed 2020 Report, (Dckt. #416 at 13-145), in light of the additional discovery completed since that time and the Court's recent order permitting Stuckwisch to supplement her initial 2019 Report with some of that discovery. (Dckt. #489 at 2). Instead, Sonrai expected that Stuckwisch would issue a revised, supplemental report that would reflect the supplemental information Stuckwisch relied on in her proposed 2020 Report (i.e., the Stellato and Palmer depositions; additional documents produced by Heil in March 2020; the Region of Peel documents; and the documents relied on by defendants' experts produced in June 2020), *and* the deposition transcripts of the 3rd Eye employees and the Heil contracts and sales documents. Sonrai agreed to notify Stuckwisch of defendants' prior objections to her proposed 2020 Report so that she could take those objections into consideration in preparing her revised, supplemental report.

For their part, defendants did not oppose Stuckwisch seeking to supplement her original 2019 Report with the additional discovery recently permitted by the Court. (Dckt. #490). They did, however, believe the Court should rule on their prior objections to the proposed 2020 Report

7

because the issues were fully briefed – at considerable expense to the defendants – and remained ripe before the Court.

The parties appeared for a status hearing on June 14, 2021, to discuss their competing positions. As reflected in the transcript, (Dckt. #493), the Court reviewed the categories of documents that were not in dispute and those that were, and granted Sonrai *"leave to provide a supplemental report of Ms. Stuckwisch that relates solely to the categories of documents and information provided after Ms. Stuckwisch's initial November 2019 report,"* more specifically:

(1) The 2020 depositions of Charles Palmer and Loris Stellato;

(2) Additional documents produced by Heil on March 11, 2020;

(3) The Region of Peel documents included in Sonrai's June 12, 2020 supplemental production to defendants;

(4) The documents relied on by defendants' experts and produced on June 29, 2020;

(5) The deposition transcripts of 3rd Eye employees Regan, Kummer, Monsen, and Buteau; and

(6) The Heil contracts and sales documents produced on May 24, 2021, and (subsequently) on June 18, 2021.

(Dckt. #492 (citing Dckt. #490 at ¶¶2, 6)) (emphasis added). The Court admonished Sonrai's counsel to carefully review defendants' prior objections to Stuckwisch's proposed 2020 Report and to work with her to "ensure that her supplemental report relates solely to the categories permitted by this order." (Dckt. #492). The Court went on to explain that *"[t]o the extent that the supplemental report strays outside of those categories, the Court will be inclined to strike any non-compliant portions and will consider sanctions in the way of fees and costs."* (*Id*.) (emphasis added). The Court set a deadline for the disclosure of Stuckwisch's revised, supplemental report, and directed the parties to meet and confer thereafter to discuss any remaining objections. (*Id*.).

8

Shortly after the status hearing, Sonrai filed a motion seeking further clarification of the Court's June 14, 2021 order and seeking leave for Stuckwisch to consider some additional categories of documents. (Dckt. #497). By its motion, Sonrai sought "clarification as to whether the Court's June 14, 2021 order (Dckt. #492) was a ruling as to what (if any) of the materials specifically presented to the Court that Stuckwisch could consider in her supplemental report *or* whether it was a broader ruling that Stuckwisch could consider only the specific materials, period." (Dckt. #505 at 1). The Court explained that its prior ruling was the former, reasoning that the Court ***"did not consider – and therefore, did not foreclose – the possibility that Sonrai might seek to provide Stuckwisch with other materials that were created or produced to Sonrai after her initial report***."[5] (*Id*.) (emphasis added). The Court went on to address the additional categories of documents that Sonrai sought leave for Stuckwisch to review in connection with her supplemental report.

Specifically, the Court held that Stuckwisch ***could*** consider the following categories of documents, in addition to those above: (7) the Regan declaration; and (8) Sonrai's invoices that were considered in defense expert DeForest McDuff's report. (Dckt. #505). However, the Court ruled that Stuckwisch ***could not*** consider: the motion to re-open discovery; the Court's January 20, 2021 Report and Recommendation, (Dckt. #470); the District Court Judge's March 18, 2021 Order adopting the Report and Recommendation, (Dckt. #494); and Heil's internal projections. (*Id*.). Finally, the Court granted Stuckwisch leave to issue a "free-standing report that encompasses both her initial and supplemental findings," and directed the parties to meet and confer thereafter regarding any objections. (*Id*. at 3).

---

[5] The Court notes that defendants exclude this portion of the Court's ruling on the motion to clarify from their recitation of the Court's prior rulings. (*See* Dckt. #523 at 6).

### E.        Stuckwisch's 2021 Supplemental Report

Stuckwisch ultimately issued her revised, supplemental report on October 27, 2021 (hereinafter, the "2021 Report").  In her now ninety-two-page report, Stuckwisch explains that since issuing her 2019 Report, she "reviewed the supplemental discovery provided to [her] and found that the new evidence significantly impacts [her] opinions and conclusions as provided in [her] Opening Report."  (Dckt. #523-1 at 8).  Stuckwisch lists the new evidence she reviewed in paragraph 9 of her 2021 Report, which includes the eight categories of documents permitted by the Court's prior rulings.[6]  (Dckt. #523-1 at 8-9).

In a section titled "Significance of the New Evidence," Stuckwisch explains how the new evidence, particularly the Heil contracts and sales data, required her to supplement and correct her original 2019 Report.  (*Id*. at 9-16).  Particularly, with respect to her lost profits analysis, Stuckwisch explained that the new evidence required her to update her "inputs, e.g., fleet size, sale price, cost, etc."  (*Id.* at 9, 16 (noting that Regan and Monsen offered estimates of fleet sizes at their recent depositions and that the defense expert even acknowledged that "fleet sizes were all over the board")).  As for her unjust enrichment analysis, the new evidence required her to "incorporate the new sales data" that she did not have at the time of the 2019 Report.  (*Id.* at 9-10).  Based on this updated analysis, Stuckwisch calculated damages for lost profits in the amount of $60.4 million (compared to $45.8 in the 2019 Report) and for unjust enrichment in the amount of $3.9 million (compared to $43.7 in the 2019 Report).

---

[6] The Court notes that Stuckwisch also lists the deposition of Sonrai's rebuttal expert Majid Sarrafzadeh, dated May 7, 2021, as new evidence that she considered.  (Dckt. #523-1).  The Court did not consider this deposition in its prior rulings.  But, again, this Court, "did not foreclose . . . the possibility that Sonrai might seek to provide Stuckwisch with other materials that were created or produced to Sonrai after her initial report."  (Dckt. #505 at 1).

### F.    Defendants' Motion to Strike

The parties' inability to agree as to whether Stuckwisch's 2021 Report was a proper supplement prompted defendants to file a motion to strike.  (Dckt. #523).  In it, defendants ask the Court to strike the 2021 Report in its entirety as violating the Court's prior orders and as an improper supplement under Rule 26(e).  Providing red-lined and highlighted submissions, defendants argue the 2021 Report – which added sixty-three additional pages to the 2019 Report – is a new report, and not a supplement.[7]  (Compare Dckt. #523-1 (2021 Report) to Dckt. #523-2 (2019 Report)).  According to defendants,

> even more problematic, under Rule 26(e), is the fact, as demonstrated by the [Highlighted 2021 Report], that most of the new material in the 2021 Report is unconnected to any new evidence.  Rather, the 2021 Report reveals Stuckwisch reconsidering and changing her prior analysis, usually based on information that was in Sonrai's possession when it served the 2019 Report, making it an improper supplement.

(Dckt. #523 at 11).  Defendants argue that because the "improper and unauthorized opinions are so pervasive and so intertwined in the 2021 Report," the "only reasonable course of action is for the Court to strike the entire 2021 Report, leaving Sonrai the option of relying on its original expert report."  (*Id*. at 12-13).  Defendants also seek attorney's fees and costs incurred in filing the motion to strike.

---

[7] Defendants have submitted a highlighted version of the 2021 Report, (Dckt. #523-1), purporting to show the entirely new section titles (highlighted in blue) and the new opinions or analysis/facts known to Sonrai before the 2019 Report (highlighted in yellow) (hereinafter, the "Highlighted 2021 Report"). Defendants have also submitted a redlined version of the 2021 Report, (Dckt. #523-6), purporting to show every single deletion from and edit to the 2019 Report.  Finally, defendants have submitted a paragraph-by-paragraph analysis identifying each paragraph as either: (1) "Unchanged/Minimal Edits; (2) "Edits relate to evidence arguably not known to Sonrai as of Nov. 12, 2019;" or (3) New opinions or analysis/cites facts known to Sonrai as of Nov. 12, 2019."  (Dckt. #523-7).  By defendants' count, 64% of the paragraphs in the 2021 Report are new opinions or analysis including facts known to Sonrai at the time of the 2019 Report; 26% are edits that arguably relate to new facts and evidence; and 11% remain unchanged or include only minimal edits.  (Dckt. #523 at 12).

In response, Sonrai argues that Stuckwisch properly used the eight categories of new evidence permitted by the Court to "bolster her previous opinions, correct errors that were revealed by the new information, and reconcile any inconsistencies between the New Evidence and sources on which she previously relied." (Dckt. #539 at 10). To the extent that Stuckwisch relied on evidence not permitted by the Court, Sonrai has essentially agreed to withdraw those references. Finally, Sonrai argues that even if the Court considers the 2021 Report improper under Rule 26(e), the supplementations are "nonetheless substantially justified and harmless to defendants," and thus, need not be stricken. (*Id*. at 22).

## II.    STANDARD FOR SUPPLEMENTATION UNDER RULE 26(e)

Expert discovery is governed by Federal Rule of Civil Procedure 26, which dictates the time frame and substance of a party's expert disclosures. Fed.R.Civ.P. 26(a)(2). Among other things, a party's expert disclosure must include, *inter alia*, "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; [and] (iii) any exhibits that will be used to summarize or support them." Fed.R.Civ.P. 26(a)(2)(B).

Rule 26 also contemplates supplemental disclosures. Under Rule 26(e), if an expert "learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing," she must supplement her disclosure by the time pretrial disclosures are due. Fed.R.Civ.P. 26(e)(1)(A), (2); *see also Uncommon, LLC v. Spigen, Inc.*, 305 F.Supp.3d 825, 843 (N.D.Ill. 2018), *aff'd*, 926 F.3d 409 (7th Cir. 2019) ("Parties must timely supplement their expert disclosures to remedy an incomplete or incorrect disclosure."). The purpose of Rule 26(e) is to "prevent surprise at trial." *Kaepplinger v. Michelotti*, No. 17 CV

5847, 2021 WL 9183856, at *2 (N.D.Ill. July 20, 2021), *quoting Talbert v. City of Chicago*, 236 F.R.D. 415, 421 (N.D.Ill. 2006).

Although "[t]he Federal Rules of Civil Procedure do not define what constitutes a supplemental report . . . , by its nature, a supplemental expert report necessarily contains information that was not expressed in the original report, or there would be no need to supplement." *Gilbane Bldg. Co. v. Downers Grove Cmty. High Sch. Dist. No. 99*, No. 02 C 2260, 2005 WL 838679, at *8 (N.D.Ill. Apr. 5, 2005); *Kaepplinger*, 2021 WL 9183856, at *2. It is a "party's duty to supplement its expert disclosures when the party learns that something is incorrect with the original report." *Doe 1 v. City of Chicago*, No. 18-CV-3054, 2019 WL 5290899, at *6 (N.D.Ill. Oct. 18, 2019) (citing cases). Thus, a supplemental report is proper where, for example, "an expert's initial calculations were based on rough data and more current data has become available after the report was submitted." *Lexington Ins. Co. v. Horace Mann Ins. Co.*, No. 11 C 2352, 2015 WL 5174159, at *9 (N.D.Ill. Aug. 27, 2015) (citing cases); *Junger v. Singh*, 514 F.Supp.3d 579, 591 (W.D.N.Y. 2021) (updating damages calculation with use of the expert's initial methodology is a proper function of a supplemental report).

Nonetheless, it is well settled, that "parties cannot use Rule 26(e)'s supplemental disclosure obligation to extend original deadlines or 'sandbag one's opponent with claims and issues which should have been included in the original report.'" *Doe 1*, 2019 WL 5290899, at *6, *quoting Trinity Homes, LLC v. Ohio Cas. Ins. Co. Grp.*, No. 1:04-CV-01920-SEB, 2011 WL 2261297, at *3 (S.D.Ind. June 8, 2011). "Nor can parties issue new expert opinions under the guise of supplements." *Doe 1*, 2019 WL 5290899, at *6; *Berkheimer v. Hewlett-Packard Co.*, No. 12 C 9023, 2016 WL 3030170, at *4 (N.D.Ill. May 25, 2016), *objections overruled*, No. 12 C 9023, 2019 WL 12528900 (N.D.Ill. July 1, 2019) ("The Rule does not say that an expert's

report should contain her best stab at an opinion that then can be supplemented, corrected, changed or augmented with new, alternative opinions after she has had a chance to think about it more . . .").  Although "[t]he line between supplemental opinions and new opinions is not always clear . . . the decision regarding how to make the distinction likely depend[s] on the facts of the case," *Gilbane Bldg. Co.*, 2005 WL 838679, at *8, and is within the District Court's sound discretion.  *Talbert*, 236 F.R.D. at 419 ("Judges have vast discretion in supervising discovery and in declining to . . . exclude evidence.").

## III.    ANALYSIS

With the above standard and the Court's numerous prior rulings as guideposts, this Court has thoroughly reviewed Stuckwisch's 2021 Report to determine whether it is a proper supplement to her 2019 Report, in whole or in part.  Before addressing that determination, however, a few points warrant clarification at the outset.

First, the parties spend a significant portion of their briefs addressing issues that have already been resolved or are not properly before this Court, including whose "fault" it was that discovery was re-opened, whether defendants "stole" Sonrai's RFID technology, and whether Sonrai's Vector technology was, in fact, "groundbreaking."  These matters need not be addressed to resolve this motion.

Second, defendants' suggestion that Stuckwisch's 2021 Report was untimely under either this Court's deadline or the timeline dictated by Rule 26(e) is without merit.  (*See* Dckt. #523 at 6).  This Court ordered Sonrai to disclose the supplemental report by September 27, 2021.  (Dckt. #504).  Due to personal reasons, Stuckwisch was unable to complete the report by that date, and Sonrai sought leave to disclose her report *instanter* on October 28, 2021.  (Dckt. #516).  The Court granted that motion.  (Dckt. #517).  As for Rule 26(e), that rule requires experts to

14

disclose any supplements "by the time the party's pretrial disclosures under Rule 26(a)(3) are due." No pretrial disclosure deadlines have been set. As such, the portions of Stuckwisch's 2021 Report that the Court has determined are appropriate supplementary content will not be excluded because they are undisputedly timely by the terms of this Court's prior order and Rule 26(e). *See Kaepplinger*, 2021 WL 9183856, at *2 ("Because [the expert's] supplemental report was disclosed far in advance of [the pretrial disclosure deadline] the report is timely."); *Black & Decker Corp. v. Positec USA Inc.*, No. 11-CV-5426, 2015 WL 5612340, at *14 (N.D.Ill. Sept. 22, 2015) ("Tate's supplemental expert report was timely disclosed and will not be excluded.").

Third, underscoring some of defendants' arguments is an unstated assumption that this Court's rulings allowing Stuckwisch to consider certain new evidence would not – and could not – result in her citation to additional evidence not previously cited in the 2019 Report; changed data inputs; and/or amended opinions.[8] But this assumption defies logic given the mandatory requirement of Rule 26(e) that an expert "*must* supplement or correct its disclosure or response" upon learning that it is "incomplete or incorrect." *See Wilson v. Sundstrand Corp.*, No. 99 C 6944, 2003 WL 22012673, at *7 (N.D.Ill. Aug. 25, 2003) ("Federal Rule of Civil Procedure 26(e)(1) imposes an *obligation* to supplement an expert disclosure if the party learns that in some material respect the information disclosed is incomplete or incorrect.") (emphasis in original).

Naturally, when allowing Stuckwisch to consider additional evidence – in particular, the relevant financial data from Heil – the Court contemplated that the supplement would differ from

---

[8] For example, Sonrai argues that the "Court has already applied the strictures of Rule 26(e) by delineating for Sonrai the difference between permissible and impermissible supplemental opinions." (Dckt. #523 at 8). But the Court did not delineate Stuckwisch's permissible "opinions;" rather the Court delineated the additional evidence Stuckwisch could consider to appropriately supplement or correct her prior opinions.

the 2019 Report. Otherwise, "there would be no need to supplement." *Gilbane Bldg. Co.*, 2005 WL 838679, at *8. Indeed, it would have been surprising if Stuckwisch made no changes to her analysis based on the material evidence she considered since issuing her 2019 report. And, of course, the veracity of the permitted portions of the 2021 Report can be flushed out at her continued deposition and on cross-examination at trial. *See Black & Decker*, 2015 WL 5612340, at *14 ("To the extent that Plaintiffs are doubtful of the basis or accuracy of Tate's revised cost calculations, these are proper topics to pursue during cross-examination."); (Dckt. #523 at 13, n.8 (acknowledging defendants' ability to probe Stuckwisch's analysis at deposition if the supplemental report is not stricken)).

Finally, although the Court appreciates defendants' detailed comparison of the 2019 Report to the 2021 Report and their submission of the Highlighted 2021 Report, (Dckt. #523-1), it will not assume – as defendants urge – that every highlighted paragraph (that is, 64% of the paragraphs) is improper supplement and must be stricken. Indeed, even defendants implicitly concede that every highlighted paragraph should not be stricken. For example, although defendants have highlighted six of the eleven paragraphs in the "Unjust Enrichment" section as being improperly based on evidence already known to Sonrai, (*See* Dckt. #523-1 at 84), they assert in their motion that the Unjust Enrichment section represents a "complete outlier" because it is a "*proper* supplement." (Dckt. #523 at 13) (emphasis added).[9]

Accordingly, the Court will not simply strike every highlighted paragraph as improper supplement or engage in a line-by-line review of the Highlighted 2021 Report. Instead, the

---

[9] The Court further notes that defendants' highlighting is not entirely reliable. For example, defendants highlight paragraph 172 of the 2021 Report (which reads: "Sonrai's lost profits in this matter are at a minimum, equal to the sum of the incremental profits that would have been generated by its customers or potential customers but-for the actions of the named defendants"), as improper rebuttal. (Dckt. #523-1 at 70). However, this exact language is included in the 2019 Report. (*See* 523-2 at 25, ¶39).

Court will focus solely on the specific objections advanced by defendants, who bear the burden of showing that they are entitled to the relief they seek. *See, e.g., Grady v. Illinois Bell Tel. Co.*, No. 94 C 3115, 1996 WL 473657, at *5 n.5 (N.D.Ill. Aug. 13, 1996) ("a moving party must point out in their motion specifically just what language or statements in the affidavit they seek to have stricken") (internal quotation marks omitted); *Solaria Tech. LLC v. Arvin Meritor, Inc.*, 361 F.Supp.2d 797, 810-811 (N.D.Ill. 2005) (citing *Grady* and refusing to strike various paragraphs of an expert's supplementary declaration on the ground that defendant did not specifically object to them and instead made only general objections); *DHI Grp., Inc. v. Kent*, 397 F.Supp.3d 904, 937 (S.D.Tex. 2019) (denying plaintiffs' motion to strike and exclude a defense expert where plaintiffs failed to show that they were entitled to the requested relief). The Court turns to those objections now and orders as follows.

### A. The Court strikes any reference to evidence specifically prohibited by this Court's prior orders.

Defendants first argue that Stuckwisch blatantly violated this Court's prior orders by considering certain evidence that the Court expressly barred her from considering, namely: (1) the Court's Report and Recommendation on sanctions and a related brief; (2) Heil's internal projections; and (3) Sonrai invoices that were not relied on by defense expert McDuff. The Court addresses each purported violation in turn.

#### 1. Stuckwisch's references to the Court's Report and Recommendation and Sonrai's reply brief in support of its sanctions motion are stricken.

Defendants argue that, in violation of this Court's order, (Dckt. #505), Stuckwisch: (1) improperly relied on the Court's Report and Recommendation by including it as a line item in Exhibit 3 listing "Documents Relied Upon (Legal Documents)," (Dckt. #523-1 at 113); and (2) improperly cited to Sonrai's reply brief in support of its motion for sanctions in the body of the

17

report itself, (Dckt. #523-1 at 47, n.175). They are correct. Indeed, Sonrai concedes that the Report and Recommendation should be stricken from the exhibit list. In light of this Court's prior ruling that "the Court's sanctions order does not reflect any data inputs that Stuckwisch might consider in calculating damages," (Dckt. #505), any reference to the Report and Recommendation, even if only in the list of exhibits relied upon, must be stricken from the 2021 Report. For the same reason, the Court strikes paragraph 100, which cites to the reply brief on the motion for sanctions.

### 2. Stuckwisch's references to Heil's internal projections are stricken.

Next, defendants argue that Stuckwisch improperly cites to and relies on Heil's internal projections, (*see* Dckt. #523 at 10 – listing references to projections), that this Court has twice ruled should not be considered, (Dckt. #486 & #505). In response, Sonrai acknowledges the Court's rulings, but argues that Stuckwisch did not rely on these projections for her supplementations, "other than to provide context for how the New Evidence impacted her original calculations." (Dckt. #539 at 13). Notwithstanding this position, Sonrai agrees to strike those references if the Court finds they are outside the scope of this Court's orders. The Court does so find and, accordingly, the references to Heil's internal projections are stricken.

### 3. Stuckwisch's reliance on nine Sonrai invoices referenced in defendants' expert report and at Palmer's deposition did not violate the Court's orders.

Finally, defendants list nine Sonrai invoices referenced in the 2021 Report, (Dckt. #523 at 10-11), and argue that Stuckwisch was not permitted to rely on those invoices because they were not referenced in defense expert McDuff's report. (*See* Dckt #505 at 2 – permitting reliance on invoices considered in McDuff's report). In response, however, Sonrai points out that all but one of these invoices were referenced in Attachment B-2 to McDuff's report and the remaining

invoice was marked as an exhibit to Palmer's February 2020 deposition. Defendants do not rebut these points in their reply and, thus, the Court considers the issue conceded. Stuckwisch's citation to the listed invoices did not violate this Court's order.

**B.** **The Court strikes the portions of the 2021 Report that do not stem from or relate to the new evidence the Court permitted Stuckwisch to consider.**

Defendants argue that, beyond just violating the Court's order, the majority of Stuckwisch's 2021 Report is improper under Rule 26(e) because she alters her opinions and analysis based solely on evidence that was already in Sonrai's possession and/or knowledge when she issued her initial 2019 Report. Again, when addressing this argument, the Court focuses solely on whether the sections of the report specifically addressed by defendants were improper.[10]

**1.** **Sonrai's Supposed Relationships with Haulers**

Defendants argue that the 2021 Report "adds dozens of new paragraphs in Section VIII – 'Lost Customers,' describing Sonrai's supposed relationships with Progressive (¶¶ 111-132), Waste Management (¶¶ 142, 145-157), Republic (¶¶ 163-167), and WCA (¶¶ 168-170)." (Dckt #523 at 13). According to defendants, Stuckwisch added these paragraphs "not because they are based on new evidence, but because the 2021 Report is trying to correct an omission from the 2019 Report," related to whether Sonrai had a "reasonable expectation of making the lost sales." (*Id.* at 14 (citing *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007) ("when seeking the recovery of lost profits a claimant must establish these lost profits with 'reasonable certainty.'")). The 2019 Report included only a few paragraphs about Sonrai's relationships with Progressive and Waste Management. (Dckt. #523-2 at 16-18). Defendants

---

[10] These sections relate to Stuckwisch's lost profit analysis because, as explained above, defendants have essentially conceded that Sonrai's unjust enrichment analysis was properly supplemented in her 2021 Report.

highlighted this purported weakness at Stuckwisch's deposition, and now argue that Stuckwisch has added these paragraphs solely to "address this defect." (Dckt. #523 at 14).

The Court has reviewed the paragraphs in this section and finds that they are within the scope of Rule 26(e) and this Court's orders. More importantly, it is of no moment that the additions to this section might also address an alleged shortcoming highlighted by defendants at Stuckwisch's deposition or in defendants' expert reports. *See Gilbane Bldg. Co.*, 2005 WL 838679, at *8 (a supplemental report is "not inherently improper just because supplementation was prompted by questions or challenges to the expert's opinion raised by opposing counsel.") (citing *Wilson*, 2003 WL 22012673, at *7); *Uncommon*, 305 F.Supp.3d at 844 ("The supplementary report may be intended in part to rebut an opposing party's expert."). Simply put, the Court does not find that the additions to this section – describing in more detail the relationships between Sonrai and various haulers with ample citations to new evidence – "differ so substantially from the opening report that they introduce entirely new theories or angles." *Uncommon*, 305 F.Supp.3d at 844. Accordingly, these paragraphs may stand.

### 2. Other Lost Customers

Next, defendants argue that the 2021 Report adds a new opinion concerning lost profits for a category of "Other Refuse Companies," with "a jaw-dropping 74,800 trucks producing $7.1 million in fanciful, new lost profits." (Dckt. #523 at 14 (citing ¶¶ 45, 208, 210, 212 217)). As defendants explain, the 2019 Report included lost profits for customers Waste Management, Republic, Progressive/Waste Connections, WCA, and Casella, while the 2021 Report drops its analysis of Casella – which accounted for merely $0.6 million in the total lost profit calculation in the original report – and replaces it with the catch-all "Other Refuse Companies," now accounting for $7.1 million of the total lost profit calculation. (Compare Dckt. #523-2 at 7 with

Dckt. #523-1 at 23).  Defendants argue that because the only support for this $7 million in additional damages is a 2016 Heil document previously in Sonrai's possession, this new opinion is based on no new evidence and must be stricken.  (Dckt. #523-1 at 136 n.7 – citing HEIL 0000249-282 at 254).[11]  The Court agrees.

Sonrai attempts to write off this additional category of "Other Refuse Companies" as merely an organizational change based on the organization of the information in HEIL0000249, which Sonrai concedes it previously had in its possession.  But Sonrai – and Stuckwisch herself – have failed to sufficiently link this addition of the "Other Refuse Companies" – and the accompanying $7 million in further damages – to any of the new evidence permitted by the Court.  Accordingly, any analysis related to the category of "Other Refuse Companies" is stricken from the 2021 Report.[12]  If Stuckwisch deems it appropriate, she may continue to rely on the Casella analysis from her 2019 Report.

### 3.  Additional Incremental Operations Costs

Next, defendants take issue with a section titled "Additional Incremental Costs," (Dckt. #523-1 at ¶¶ 188-198), in which Stuckwisch addresses specific "real world" additional costs that Sonrai would have incurred had it – but for defendants' conduct – sold the anticipated Vector units to its customers.  Such incremental costs include materials for the Vector system, additional staffing, and additional working capital.

As defendants correctly note, the 2019 Report did not account for these additional costs (a shortcoming addressed at Stuckwisch's deposition), and every citation in this section is to

---

[11] Defendants inaccurately refer to this document as HEIL 0000249-283.

[12] To be clear, with this ruling, the Court is not striking every reference to HEIL 0000249 in the 2021 Report.  To the extent that other references to that document are not otherwise stricken by this Court's order, they may stand.

documents in Sonrai's possession at the time of the initial report. Again, even though this additional analysis *lowered* Stuckwisch's lost profits assessment – as Sonrai contends – Sonrai has failed to link it to any new evidence permitted by the Court's rulings. Consequently, the "Additional Incremental Costs" section, (¶¶ 188-198), is stricken, and Stuckwisch shall update her calculations accordingly.

### 4. Sonrai's Lost Profits by Customer – Inputs

Finally, defendants attack Exhibit 4 to the 2021 Report, which sets forth the figures used in Stuckwisch's lost profit analysis (described at ¶¶ 171, 187). (*See* Dckt. #523-1 at 523-5 at 3-17 – Comparing Ex. 4 from the 2019 Report to Ex. 4 in the 2021 Report). Defendants argue that every key input has changed and the support for each new input is documents that were already in Sonrai's possession. Accordingly, defendants contend that Stuckwisch's lost profit analysis, based on the figures in amended Exhibit 4, is improper supplement. The Court disagrees.

Again, in its simplest form, to calculate lost profits in both reports, Stuckwisch determined the fleet size for each potential customer, multiplied that by the price per Vector unit (which included the unit itself, related hardware, and monthly data services), and then subtracted Sonrai's total costs from total revenue to determine lost profits per customer. As Stuckwisch explains in her 2021 Report – and Sonrai reiterates in its response – her review of the new evidence left her prior inputs inconsistent and speculative, requiring her to update her lost profits calculation with revised inputs for fleet size, sale price, etc. In doing so, she considered both the new evidence permitted by the Court, such as deposition testimony and invoices considered by the defense experts, along with evidence previously in Sonrai's possession. While the factual inputs have changed, her theory and methodology to calculate lost profits simply has not and the Court will allow this analysis to stand. *See, e.g., Junger*, 514 F.Supp.3d at 591 (updated

damages calculation based on the methodology initially used is proper under Rule 26(e)). Again, defendants will have an opportunity to challenge the validity of Stuckwisch's updated analysis another day.

**C.    The Court strikes the sections of the 2021 Report that are based entirely on prior evidence and/or offer new theories.**

In passing, defendants point to some of the "new sections" in the 2021 Report and argue that they must be stricken as improper supplement because they are based on old information. (Dckt. #523 at 11). The Court has reviewed those sections and agrees.

**1.    Allegations and Legal Framework (¶¶ 33-43), Industry Expo (¶¶ 78-81), and Defendants' Actions (¶¶90-95, 98-101).**

In these sections, Stuckwisch adds a more detailed description of the facts underlying this matter along with "her understanding" of the legal framework. In doing so, she relies on evidence previously in Sonrai's possession (such as the Second Amended Complaint or prior deposition testimony) along with a couple of citations to the deposition of Sonrai's rebuttal expert. As such, these sections could have been included in Stuckwisch's original report and are not proper supplementary material. It bears repeating that "expert reports are not first drafts" to be revised merely because the expert has had further time to think about it. *Berkheimer*, 2016 WL 3030170, at *4. Accordingly, these paragraphs are stricken. Stuckwisch may rely on her initial description of the allegations of the case from her 2019 Report if she deems it appropriate.

**2.    Other Potential Damages (¶¶ 217-236)**

In this section, Stuckwisch purports to describe "other" categories of damages to Sonrai in addition to lost profits. For example, citing mostly to evidence already in Sonrai's possession, Stuckwisch opines that Sonrai suffered damages to the value of its brand name; may have lost "other customers" not previously addressed in the 2019 Report; and may have lost revenue

23

related to the zone importation device and/or through an International Fuel Tax Agreement. Although Stuckwisch may not have included lost profits associated with each of these supplemental categories of damages in her calculations, the Court finds these new opinions and theories of damages to be improper because they were never disclosed in her 2019 Report. Accordingly, the Other Potential Damages section is stricken.

In sum: for the reasons stated above, the Court orders Sonrai and its attorneys to work with Stuckwisch to prepare an amended 2021 Report that fully conforms to the rulings stated herein. Sonrai must thereafter produce the amended 2021 Report to defense counsel no later than October 21, 2022. To the extent that Sonrai has any questions about the parameters of this Court's ruling, plaintiff's counsel are directed to meet and confer with defense counsel to reach a common understanding and, if necessary, request a status call with this Court to seek clarity.

### C.    The Court will defer ruling on defendants' request for fees and costs incurred in filing the motion to strike.

"Rule 37(b) sanctions provide the district court with an effective means of ensuring that litigants will timely comply with discovery orders" and "both the decision to sanction and the choice of an appropriate sanction" are left to the trial court's discretion." *Melendez v. Illinois Bell Telephone Co.*, 79 F.3d 661, 670-71 (7th Cir. 1996); *Jensen v. BMW of N. Am., LLC*, 331 F.R.D. 384, 386 (S.D.Cal. 2019) (courts have "broad discretion regarding the type and degree of discovery sanctions [they] may impose pursuant to Rule 37 and [they] can impose any sanction [they] see[] as just"). Here, defendants assert that Sonrai violated this Court's prior orders regarding the materials that Sonrai could and could not include in Stuckwisch's supplemental report, (*see* Dckt. #540 at 12 (citing Dckt. #492, #505)), and they seek an order requiring Sonrai to pay the attorney's fees and costs that they incurred in connection with this motion. (Dckt. #540 at 16-17). As discussed above, the Court agrees that Sonrai violated its prior orders by not

more carefully working with Stuckwisch to ensure that her supplemental report was properly grounded in the categories of additional materials that were specified by the Court. The Court also finds that Sonrai necessitated this motion by refusing to have Suckwisch remove certain of the prohibited materials from the 2021 Report until *after* the motion was filed.

At the same time, the Court considers the fact that defendants' motion was not entirely successful. As explained above, material portions of the 2021 Report to which defendants specifically objected contain appropriate supplementary material based on or related to the volume of new material that the Court found Stuckwisch could consider. Consequently, the Court did not strike the entire 2021 Report as defendants sought. The Court also considers the fact that defendants will be able to re-depose Stuckwisch regarding the amended version of her 2021 Report, which she must produce to conform to the rulings contained herein. Defendants will also be free to seek leave to present rebuttal reports from own their experts if they feel such reports are warranted.

For these reasons, the Court in its discretion will award defendants a portion of the attorney's fees and costs that they reasonably incurred in prosecuting this motion to strike. On or before October 14, 2021, defense counsel are ordered to provide Sonrai and the Court (through a submission to the Court's chamber's email address: chambers_cummings@ilnd.uscourts.gov) with affidavits/declarations specifying the attorney's fees and costs they incurred in preparing and briefing the motion to strike. Defense counsel are cautioned to exercise billing judgment to ensure that they include only those fees and costs they were reasonably necessary to prepare this motion and the associated briefing.

The parties are ordered to file a joint status report on October 28, 2022, to state whether Stuckwisch's amended 2021 Report complies with this Court's rulings. If defendants believe

that the Report is not in conformance, they are instructed to specifically explain why. The parties are also ordered to include a proposed agreed schedule for taking Stuckwisch's deposition and any other related expert discovery for the Court's consideration. The Court will thereafter set a schedule for further proceedings and determine the amount of attorney's fees and costs that it will award to defendants based on a consideration of Sonrai's violations of this Court's orders, defendants' partial success on their motion to strike, and the degree of Sonrai's compliance with this Court's order regarding the preparation of Stuckwisch's amended 2021 Report.

## CONCLUSION

For the foregoing reasons, defendants' motion to strike Sonrai's supplemental expert report and for attorneys' fees, (Dckt. #523), is granted in part and denied in part as described above.


DATE: September 30, 2022

_____
**Jeffrey I. Cummings**
**United States Magistrate Judge**

26