IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SONRAI SYSTEMS, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 16 CV 3371 ) ) Judge Thomas M. Durkin |
| ANTHONY M. ROMANO, GEOTAB, INC., and HEIL CO. | ) ) ) Magistrate Judge Jeffrey I. Cummings ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Currently before the Court is the parties' dispute regarding the appropriate amount of attorney's fees and costs that should be awarded to defendants Heil Co. and Geotab, Inc. for the work related to their motion to strike the supplemental expert report of plaintiff Sonrai Systems, LLC's damages expert. For the reasons set forth below, the Court awards attorney's fees to Heil in the amount of $17,095.50 and fees to Geotab in the amount of $11,634.00.

**I.      BACKGROUND**[1]

During expert discovery, defendants Heil and Geotab moved to strike the entire supplemental report of Sonrai's damages expert Suzanne Stuckwisch, arguing that it was based on evidence the Court previously prohibited Stuckwisch from considering and was not a proper supplement under Rule 26(e). The Court agreed in part and, on September 30, 2022, issued a Memorandum Opinion and Order granting in part and denying in part defendants' motion to strike. *Sonrai v. Romano*, *Sonrai Sys., LLC v. Romano*, No. 16 CV 3371, 2022 WL 4646323 (N.D.Ill. Sept. 30, 2022) (Dckt. #550) ("*Sonrai I*"). Specifically, the Court struck from the

---

[1] The Court presumes familiarity with the facts of this case and includes only those facts that are relevant to the fee dispute before the Court.

supplemental report ("Report"): (1) any reference to evidence specifically prohibited by the Court's prior orders; (2) portions of the supplemental report that did not stem from or relate to the new evidence that the Court permitted Stuckwisch to consider; and (3) sections of the Report that were based entirely on prior evidence and/or offered new theories. *Id*. at *9-12.

Furthermore, because the Court "agree[d] that Sonrai violated its prior orders by not more carefully working with Stuckwisch to ensure that her supplemental report was properly grounded in the categories of additional materials that were specified by the Court," the Court awarded Heil and Geotab "a portion of the attorney's fees and costs that they reasonably incurred in prosecuting [the] motion to strike." *Id*. at *13. The Court directed defendants to submit declarations specifying the fees and costs incurred to determine the amount of the fees and cautioned defense counsel to "exercise billing judgment to ensure that they include only those fees and costs [that] were reasonably necessary to prepare [the motion to strike] and the associated briefing." *Id*. Finally, the Court explicitly stated that it would consider "defendants' partial success" on the motion to strike and the degree to which Sonrai's expert complied with the Court's direction when preparing her revised Report when determining the amount of fees that it would award to defendants. *Id.*

On October 14, 2022, each defendant submitted a declaration and billing records identifying the fees it incurred in briefing the motion to strike, with Heil claiming $28,492.50 in incurred fees and Geotab claiming $46,037.25 in fees.[2] On November 2, 2022, the Court found,

---

[2] The Court directed defendants to submit their declarations and billing records to the Court's chambers e-mail address, as opposed to filing them. Sonrai submitted its response to defendants' submissions and defendants submitted their joint reply to the Court by e-mail as well. To ensure that the case record is complete, the parties shall electronically file their submissions and briefs on the court's docket on or before July 3, 2023. If the parties believe that any of these documents contain confidential information within the meaning of the Amended Agreed Confidentiality Order, (Dckt. #154), they can seek leave to file any such documents with a redacted version for public view and a complete version under seal.

2

based on the parties' joint status report, that Stuckwisch prepared her revised Report in conformance with this Court's ruling on defendants' motion to strike. (Dckt. #555).

Sonrai submitted its response to defendants' submissions on November 17, 2022. With respect to Heil, Sonrai asserts that Heil's requested fee award should be reduced by 40% (from $28,492.50 to $17,095.50) to account for defendants' limited success on their motion to strike and their expenditure of time on unnecessary portions of their briefs. Sonrai's Response ("Response"), at 1-4. Sonrai asserts that Geotab's requested fee award should be reduced by 89% (from $46,037.25 to $5,120) based on the reasons above and its assertion that Geotab's counsel are seeking fees at excessively high hourly rates and recovery for an excessive number of hours of work. *Id.*, at 1-7. In their November 18, 2022 reply, defendants dispute Sonrai's arguments but nonetheless acknowledge that their fee requests should be reduced to "60 to 75% of the total[s] requested." Defendants' Reply ("Reply"), at 2.

## II. ANALYSIS

As this Court previously reiterated, the starting point for a court's evaluation of a fee request – including for an award of sanctions – "is a lodestar analysis; that is, a computation of the reasonable hours expended multiplied by a reasonable hourly rate." *Sonrai Sys., LLC v. Romano*, No. 16 CV 3371, 2022 WL 4551893, at *3-4 (N.D.Ill. Sept. 29, 2022) (Dckt. #548) ("*Sonrai II*"); *Houston v. C.G. Sec. Servs., Inc.*, 820 F.3d 855, 859 (7th Cir. 2016), *quoting Divane v. Krull Elec. Co.*, 319 F.3d 307, 317-18 (7th Cir. 2003); *see also Gray v. U.S. Steel Corp.*, 284 F.R.D. 393, 397 (N.D.Ind. 2012) (applying the lodestar analysis when determining an award of sanctions for discovery violations). Although the lodestar yields a "presumptively reasonable fee," *World Outreach Conf. Ctr. v. City of Chicago*, 896 F.3d 779, 783 (7th Cir. 2018), after the lodestar calculation, the court "may determine whether an adjustment is

warranted under the case-specific circumstances." *Nichols v. Illinois Dep't of Transportation*, 4 F.4th 437, 441 (7th Cir. 2021).

It is well settled that "[d]istrict courts have wide discretion in determining the appropriate amount of attorney's fees," and that the "party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed." *Spegon v. Cath. Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999). Furthermore, a determination of fees "should not result in a second major litigation." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 654 (7th Cir. 2011), *quoting Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

### B. The Court awards Heil 60% of its claimed lodestar calculation of attorney's fees incurred in bringing the motion to strike.

Heil – whose counsel assertedly "took the laboring oar in drafting the motion to strike" – has submitted the declaration of lead attorney James Thompson and billing records reflecting a lodestar calculation of $28,492.50 in attorney's fees for litigating defendants' motion to strike. Thompson Decl., at 3. Specifically, Heil's records reflect that three attorneys and one legal assistant from Lynch Thompson LLP spent 82.10 hours working on the motion to strike at the following rates:

| Timekeeper | Title (Year of Admission) | Hourly Rate | Number of Hours |
|---|---|---|---|
| James L. Thompson | Partner (1988) | $400 | 65.9 |
| Steven G. Mrowiec | Associate (2018) | $225 | 6.7 |
| Alexandra L. Rogers | Associate (2021) | $200 | 1.0 |
| Asia N. Adams | Legal Assistant (N/A) | $50 | 8.5 |

Sonrai does not object to the hourly rates claimed by Heil's attorneys and the Court finds that the rates – which Heil actually paid its attorneys – are reasonable and in line with those

prevailing in the community for the type of work required to prepare defendants' motion to strike. *See Sonrai II*, 2022 WL 4551893, at *8-9 (awarding Sonrai's counsel hourly rates ranging from $150-$425 for work on a motion for discovery sanctions); *Spegon*, 175 F.3d at 555 ("An attorney's market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question.") (internal quotation marks omitted); Thompson Decl., at 2-3.

Sonrai does object to the number of hours for which Heil's attorneys (and Geotab's attorneys for that matter) seek compensation on the grounds that defense counsel seek compensation for work on unnecessary portions of their briefs. Response, at 3-4. This objection is well-taken. As this Court previously found in its decision on the motion to strike:

> The parties spen[t] a significant portion of their briefs addressing issues that ha[d] already been resolved or [were] not properly before this Court, including whose "fault" it was that discovery was re-opened, whether defendants "stole" Sonrai's RFID technology, and whether Sonrai's Vector technology was, in fact, "groundbreaking."

*Sonrai I*, 2022 WL 4646323, at *8. The discussion of these matters was not necessary for the Court's resolution of defendants' motion and the time spent on drafting the segments of defendants' briefs that concerned these matters is non-compensable. *See, e.g.*, *NRA Grp., v. Durenleau*, No. 1:21-CV-00715, 2022 WL 609207, at *8-9 (M.D.Pa. Mar. 1, 2022) (declining to award attorney's fees for time that was not reasonably necessary for the preparation of the successful motion for a protective order).[3]

Although defense counsel's time records are generally sufficient, they do not contain the level of detail necessary to enable the Court to determine precisely how much time counsel

---

[3] The Court further finds that Heil has sought compensation for a modest amount of non-compensable attorney work that was incurred either before defense counsel received Stuckwisch's Report or after defendants filed their reply in support of their motion. *See* Thompson Decl. (time entries for 10/14/2021 SGM (.2); 10/14/2021 SGM (.9); 10/14/2021 JLT (.9); 2/28/2022 JLT (.3)).

devoted to these non-compensable matters. Therefore, to account for the inclusion of this non-compensable time, the Court, in its discretion, will make an across-the-board reduction of 20% to the overall number of hours claimed by Heil. *See, e.g.*, *Harper v. City of Chi. Heights*, 223 F.3d 593, 605 (7th Cir. 2000) ("when a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage."); *Johansen v. Wexford Health Sources*, No. 15-CV-2376, 2021 WL 1103349, at *7 (N.D.Ill. Mar. 23, 2021) (applying an across-the-board percentage reduction to the overall hours to account for duplicate and excessive billing and fees sought for administrative tasks) (citing cases).

Sonrai further objects to Heil's proposed fee award on the ground that defendants were only partially successful in their efforts to strike Stuckwisch's Report. Once more, this objection is well-taken. Indeed, although defendants asked the Court to strike the Report "in its entirety as an improper supplement," (Dckt. #523 at 5), as explained above, the Court struck only those portions of the Report that violated its prior orders. As Sonrai highlights, this resulted in a 2.3% reduction (i.e., a $1.5 million reduction) in Stuckwisch's damages calculation. While certainly not an insignificant result, defendants' partial success also supports a reduction in fees. *Shea v. Galaxie Lumber & Const. Co.*, 152 F.3d 729, 736 (7th Cir. 1998) ("[D]istrict courts both can and should look to the degree of success a party achieves in deciding how generous a fee award should be."); *Sommerfield v. City of Chi.*, 863 F.3d 645, 651 (7th Cir. 2017) ("A reduction for limited success strikes us as entirely appropriate."). In its discretion, the Court finds that a further 20% reduction in Heil's lodestar is warranted to account for defendants' lack of success in striking the entirety of the Report. *See, e.g.*, *Montanez v. Simon*, 755 F.3d 547, 556 (7th Cir.

2014) (affirming a 50% reduction in lodestar to reflect plaintiff's lack of success on the merits); *Spegon*, 175 F.3d at 558-59 (same).

In sum, after reducing Heil's lodestar by 20% to reflect unnecessary and non-compensable work and by an additional 20% to reflect defendants' lack of success, the Court awards Heil 60% of its claimed lodestar fee ($17,095.50). !

> C. **The Court awards Geotab 25% of its claimed lodestar calculation of attorney's fees incurred in bringing the motion to strike.**

For its part, Geotab – whose counsel assertedly took the "laboring oar" in drafting the reply brief in support of the motion to strike (Reply, at 2) – has submitted the declaration of attorney Jason Balich and billing records reflecting a lodestar calculation of $46,037.25 in attorney's fees in litigating defendants' motion to strike. Balich Decl., at 5. Specifically, the records indicate that two attorneys and two paralegals from Wolf, Greenfield & Sacks PC ("WGS") in Boston, MA expended 64.5 hours at the following rates:

| Timekeeper | Title (Year of Admission) | Hourly Rate | Number of Hours |
|---|---|---|---|
| Michael Albert | Partner (1991) | $1,025-$1,055 | 6.9 |
| Jason Balich | Associate (2013) | $730-$820 | 55 |
| C. Babbit | Paralegal | $337.50 | 2.3 |
| S. Santos | Paralegal | $310.50 | 0.3 |

Sonrai objects to the hourly rates claimed by WGS's attorneys and paralegals on the ground that they are excessive. Response, at 5-6. Geotab defends the rates sought by its counsel by pointing to their combined 40 years of experience in intellectual property litigation and asserting that the hourly rates claimed by WGS – which reflect a 10% discount from WGS's standard rates – "are on par or lower than the billing rates of attorneys from other intellectual

7

properly litigation firms." Balich Decl., at 2-3. Geotab further points out that it actually paid the rates listed in Balich's Declaration. *Id.*, at 3.

Although the Court does not question the IP expertise and credentials of the WGS attorneys or that the rates WGS claims for its attorneys and paralegals are, in fact, the rates that WGS charges for its IP work, the Court nonetheless agrees that the hourly rates sought are excessive under the circumstances here. This is so because the market rate for defense counsel for purposes of *this* fee award "is the rate that lawyers of similar ability and experience in the community normally charge their paying clients *for the type of work in question*." *Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007) (emphasis added); *Spegon*, 175 F.3d at 555 (same). The "type of work in question" needed to prosecute defendants' motion to strike did not require IP expertise.[4] Indeed, the crux of defendants' motion to strike was that Stuckwisch violated this Court's prior orders by relying on evidence the Court prohibited her from relying on. *See Sonrai I*, 2022 WL 4646323, at *1 n.2 ("The Court includes this detailed procedural background and explanation of its prior rulings to illustrate that it has addressed the appropriate scope of Stuckwisch's supplemental report in detail *and need only determine whether the latest supplemental report falls within that scope and the proper purview of Rule 26(e)*.") (emphasis added).

Courts in this Circuit have repeatedly refused to reflexively apply the billing rates that large law firm attorneys regularly charge for their services in fee-shifting litigation outside of the attorneys' regular areas of expertise. In *Cooper v. Casey*, 97 F.3d 914 (7th Cir. 1996), for example, the Seventh Circuit stated as follows:

---

[4] To be clear, the Court does not suggest that WGS's IP expertise will not be needed for the litigation as a whole. The hourly rates determined for WGS's attorneys herein are found to be reasonable rates solely for purposes of their work on defendants' motion to strike.

8

> The plaintiffs were represented by Kirkland & Ellis. A partner and two associates accounted for the bulk of the time that the firm put in on the case. They requested reimbursement at the rates at which they bill the paying clients of their firm, ranging from $120 to $320 an hour. The district judge allowed these rates on the ground that they were in fact the rates at which these lawyers bill their paying clients and therefore represent the opportunity costs of (that is, the earnings forgone by) their taking on the representation of the plaintiffs.
>
> . . .
>
> But the plaintiffs and the district court overlooked an important qualification: the reasonable fee is capped at the prevailing market rate *for lawyers engaged in the type of litigation in which the fee is being sought.*
>
> . . .
>
> Suppose the best lawyer in the United States charges $1,000 an hour and is worth every cent of it. Only his practice has nothing to do with civil rights; he is, let us say, an antitrust trial lawyer. He is requested to represent an indigent civil rights plaintiff, and he does so, giving the case his best shot, and, despite his inexperience in civil rights litigation, doing a superb job. Would he be entitled to an award of fees at the rate of $1,000 an hour? Not if the judge could have procured competent counsel for the plaintiff at a much lower rate. It is no more reasonable to pay a lawyer $1,000 an hour for services that can be obtained at $200 an hour than it is to pay $1,000 for an automobile hood ornament that you could buy elsewhere for $200. Judges have to be careful when they are spending other people's money.

*Id.*, at 920 (internal citations omitted); *see also Duran v. Town of Cicero*, No. 01 C 6858, 2012 WL 1279903, at *16, 18 (N.D.Ill. Apr. 16, 2012) (finding proffered evidence of hourly rates charged by large law firm attorneys to be of "limited relevance" because there was no indication that the work for which those rates were charged was the same as the "federal court trial work in [the] § 1983 case[]" in question).

The *Cooper* court vacated the fee award after holding that it would have been an abuse of discretion to award fees at Kirkland's normal billing rates even though there was no question that those were the normal billing rates of plaintiffs' counsel if defendants' evidence that a competent civil rights attorney could have been hired for a lower rate were correct. *Id.*, at 920-21. Similarly, in *K.O. v. Sec'y of Health & Hum. Servs.*, No. 13-472V, 2017 WL 4385751 (Fed. Cl.

Aug. 22, 2017), the court refused to award plaintiff compensation for a Jenner and Block attorney at his regular billing rate ($740/hour) for work to prepare a motion for redactions and instead awarded the attorney fees at an hourly rate ($340/hour) that was within the range plaintiff's other attorneys billed for performing the same type of work. *Id.*, at *3-4.

The Court will follow a similar path in this case by awarding fees to the WGS attorneys at hourly rates that are within the range of reasonable market rates that the Court has already determined for the Heil attorneys who worked side-by-side with the WGS attorneys on the motion to strike. Specifically, the Court finds it appropriate to award fees for the work of Mr. Albert at the $400/hour rate of Mr. Thompson, a highly qualified and well-credentialed attorney who has practiced for three years longer than Mr. Albert. Thompson Decl., at 4-6. The Court further finds it appropriate to award fees for the work of Mr. Balich (who has practiced since 2013) at the rate of $300/hour. This rate is more than the rates awarded for the lesser experienced associate attorneys who represent Heil (namely, Mr. Mrowiec, who has practiced since 2018 and was awarded fees at $225/hour, and Ms. Rogers, who has practiced since 2021 and was awarded fees at $200/hour), but less than the rate of Messrs. Thompson and Albert, the far more experienced partners representing defendants. Finally, the Court will reduce the extremely high hourly rates claimed by WGS's paralegals to the $50/hour rate claimed for legal assistant Adams because the work performed by the paralegals in connection with defendants' motion to strike was administrative in nature and not the specialized IP-related work for which the paralegals' time is billed out at well over $300 per hour. *Compare* Balich Decl., at 4-5 (describing the nature of the paralegals' work) *with Johansen*, 2021 WL 1103349, at *7 (describing administrative and clerical tasks).

10

Applying the above hourly rates results in a revised lodestar calculation for WGS as follows:

| Timekeeper | Title (Year of Admission) | Hourly Rate | Number of Hours |
|---|---|---|---|
| Michael Albert | Partner (1991) | $400 | 6.9 |
| Jason Balich | Associate (2013) | $300 | 55 |
| C. Babbit | Paralegal | $50 | 2.3 |
| S. Santos | Paralegal | $50 | 0.3 |

Thus, the revised lodestar calculation is $19,390, a 58% reduction from the initial $46,037.25 lodestar that Geotab claimed.

As stated above, Sonrai also asserts that Geotab's counsel took a subordinate role in briefing the motion to strike and the number of hours for which they seek compensation is excessive and unnecessarily duplicative of the work performed by Heil's counsel. Response, at 6. Accordingly, Sonrai asserts that WGS's compensable hours should be reduced by roughly 80% from 64.5 to 12.8 hours. The Court disagrees that such a steep reduction is appropriate because Geotab's counsel did take the "laboring oar" in drafting defendants' reply brief. Reply, at 2.

Nonetheless, some reduction is appropriate. WGS attorneys spent over 32 hours drafting the reply brief, with Heil's counsel expending an additional 10 or so hours on the reply. *See* Balich Decl.; Thompson Decl. Given the procedural – as opposed to substantive – nature of the motion at issue, the Court in its discretion finds that this is an unreasonably excessive number of hours expended on a reply brief. *Melikhov v. Drab*, No. 16 C 9332, 2018 WL 3190824, at *4 (N.D.Ill. May 21, 2018), *quoting Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010) ("What qualifies as a 'reasonable' use of a lawyer's time 'is a highly contextual and fact specific

enterprise,' and the court has 'wide latitude' in awarding attorney's fees."). And, again, as with Heil, much of the reply brief was spent "correcting" Sonrai's "misstatements of fact" on issues that were unnecessary to the Court's resolution of the motion. Accordingly, the Court – in its discretion – will make an across-the-board reduction of 20% to Geotab's lodestar calculation to account for the excessive or otherwise unnecessary hours of time worked by the WGS attorneys.

Finally, Sonrai asserts that a further reduction to the lodestar that Geotab seeks to recover is warranted based upon defendants' lack of success on their motion to strike the Report. For the reasons stated with respect to Heil, the Court agrees and, in its discretion, it will further reduce Geotab's claimed lodestar by 20% to account for defendants' lack of success in striking the entirety of the Report. For these reasons, the Court awards attorney's fees to Geotab in the amount of $11,634, which is roughly 25% of its claimed lodestar fee.

## CONCLUSION

For the above reasons, the Court hereby orders plaintiff Sonrai Systems, LLC to pay to defendant Heil Co. the sum of $17,095.50 and pay to defendant Geotab, Inc. the sum of $11,634.00 to compensate defendants for the reasonable attorney's fees they incurred in prosecuting their motion to strike the supplemental expert report of Sonrai's damages expert Suzanne Stuckwisch. !

**DATE: June 27, 2023**

_____
**Jeffrey I. Cummings**
**United States Magistrate Judge**