UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SONRAI SYSTEMS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ANTHONY M. ROMANO AND THE HEIL CO. d/b/a ENVIRONMENTAL SOLUTIONS GROUP, <br><br> Defendants. | No. 16 CV 3371 <br><br> Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Sonrai filed this lawsuit alleging that Defendants schemed to usurp and interfere with Sonrai's business. Defendants move under Federal Rule of Evidence 702 to exclude the presentation of Sonrai's damages expert Suzanne Stuckwisch's testimony at trial. R. 694. For the following reasons, that motion is denied.

**Background**

Sonrai initially brought this action against Geotab, Inc. ("Geotab"), The Heil Co. ("Heil"), and Anthony Romano. Relevant here, Sonrai alleged that Geotab tortiously interfered with Sonrai's contracts and business expectancies with its customers Progressive and Waste Management; that Heil breached their letter agreement and tortiously induced Romano to breach his fiduciary duties to Sonrai; and that Romano breached his fiduciary duties. The underlying facts have been set forth at length in prior orders, and the Court assumes familiarity with those orders.

On November 12, 2019, in the midst of expert discovery, Sonrai disclosed an expert report from Stuckwisch on lost profits damages ("2019 Report"). Nearly two

1

years later, on October 27, 2021, Stuckwisch disclosed a supplemental expert report ("2021 Report"), which included a new section entitled "Additional Incremental Operations Costs" that was not in her 2019 Report. This section provided projections for costs associated with data storage, additional staffing, and working capital. She estimated these costs to be about $6 million, which would reduce the overall incremental profits to calculate the total lost profits. Then-Magistrate Judge Cummings struck this portion of the 2021 Report as an improper supplement because it was based on evidence available to Stuckwisch when she drafted her 2019 Report. Thereafter, Stuckwisch disclosed an amended report on October 21, 2022 ("2022 Report"), which did not include the aforementioned additional incremental operations costs. However, during subsequent depositions, Stuckwisch continued to opine that the additional incremental operations costs would be approximately $6 million and that she would reduce the incremental profits by that amount at trial.

In her 2022 Report, Stuckwisch calculated $59.4 million in lost profits for five customers whose sales were allegedly lost due to the purported wrongful conduct of Romano, Heil, and Geotab. Those customers were Progressive/Waste Connections, Waste Management, Republic, Waste Corp. of America, and Casella. Defendants then moved for summary judgment. The Court granted Geotab's motion for summary judgment and dismissed it from the case, while denying Romano's and Heil's motions for summary judgment.

In its opinion, the Court found that "the only evidence on the record is that Progressive stopped working with Sonrai because of Sonrai's own failures and not

2

because of Geotab." R. 657 at 10. The Court further disagreed with Sonrai's argument that its injuries were indivisible between Geotab and Heil/Romano. *Id.* at 20. The Court then allowed Stuckwisch to submit an amended report to remove calculations and analyses related solely to Geotab. *Id.* On October 25, 2024, Stuckwisch disclosed a second amended report ("2024 Report"), which deleted most mentions of Geotab and the damages alleged against it but opined that Heil and/or Romano caused lost profits of $59.4 million, the exact same amount that was set forth in her 2022 Report.

Defendants filed the pending *Daubert* motion to exclude Stuckwisch's testimony at trial, arguing that she failed to reliably apply a known methodology. Stuckwisch disclosed a third amended report on May 2, 2025, which the Court allowed, and which indicated that her methodology was unchanged, but increased the lost profits amount to $83.4 million based on updated evidence. On June 2, 2025, the Court held a *Daubert* hearing, where Stuckwisch testified. During the hearing, Sonrai acknowledged that Stuckwisch did not provide for additional incremental operation costs in her latest report. Afterwards, Defendants directed the Court to Judge Cummings' order striking the additional incremental operation costs portion. The parties submitted supplemental briefing on this issue.

## Legal Standard

Under Rule 702, a witness "who is qualified as an expert by knowledge, skill, experience, training, or education" may testify as an expert if the proponent shows that it is more likely than not that: (1) the witness's expertise "will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "the testimony is

3

based on sufficient facts or data;" (3) "the testimony is the product of reliable principles and methods;" and (4) the opinion "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also Varlen Corp. v. Libert Mut. Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019). "[T]he district court is a 'gate-keeper' who determines whether proffered expert testimony is reliable and relevant." *Autotech Tech. Ltd. P'ship v. Automationdirect.com*, 471 F.3d 745, 749 (7th Cir. 2006) (citation omitted).

District courts have "broad latitude to determine how to evaluate expert testimony." *United States v. Hill*, 818 F.3d 289, 297 (7th Cir. 2016) (citations omitted). The Court's primary concern is "the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced." *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993).

In 2023, Rule 702 was amended to "clarify and emphasize" the "more likely than not" standard for the admission of expert testimony and that "the sufficiency of an expert's basis[ ] and the application of the expert's methodology" are questions of admissibility, not weight. Fed. R. Evid. 702 Committee Notes on Rules—2023 Amendment. However, the amendment does not "impose[ ] any new, specific

procedures" or require the Court to "nitpick" an expert's opinion, so long as it meets the admissibility requirements by a preponderance of the evidence. *Id.*

## Discussion

Defendants do not challenge Stuckwisch's credentials or qualifications as an expert. Instead, Defendants raise other arguments about the reliability of Stuckwisch's testimony. The Court addresses each in turn.

First, Defendants argue that Stuckwisch did not follow any established methodology for calculating the alleged lost profits. Sonrai claims Stuckwisch employed the "before-and-after" methodology to calculate lost profits. The Association of International Certified Professional Accountants ("AICPA") "before-and-after" methodology requires the expert to construct a counterfactual world of the party's but-for revenue (the "before") and compare it to the party's actual performance after the allegedly infringing event or action (the "after"). R. 696-9 at 37. Neither party disputes that the AICPA is an accepted treatise used by damages experts.

In her 2024 Report, Stuckwisch described the methodology she used as follows:

> Damages are analyzed by considering the difference between the plaintiff's economic position if the harmful events had not occurred and the plaintiff's actual economic position. . . . Lost profits are then the profits Sonrai would have earned but for the defendants' harmful acts (the but-for scenario) and Sonrai's actual profits. . . . Sonrai's lost profits in this matter are at a minimum, equal to the sum of the incremental profits that would have been generated by its customers or potential customers but-for the actions of the named defendants.

5

R. 696-1 ¶¶ 130–31. Although she did not label it as the "before-and-after" methodology in her report,[1] it clearly tracks the methodology as accepted by the AICPA. As to the "before" period, Stuckwisch explained during the *Daubert* hearing that she calculated the but-for revenues and variable costs by reviewing invoices, contracts, and agreements. R. 745 at 60–63. Her report also detailed how she determined the timeframe for Sonrai's relationship with each customer, her projections about what sales would have been, and the costs associated with producing the Vector units. R. 696-1 ¶¶ 73–129, 132–44. Her "after" period revenues are effectively zero because the allegation is that Sonrai was pushed out by Defendants' conduct. *See* R. 745 at 23. She then calculated the lost profits on a customer-by-customer basis, R. 696-1 ¶¶ 145–49, which the Court previously indicated was acceptable. *See* R. 657 at 19.

Accordingly, Stuckwisch based her report on a valid and appropriately applied methodology. *See Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 765-66 (7th Cir. 2013) (District courts must ensure "that the expert is using a valid methodology (scientific or otherwise), that there is sufficient data to justify the use of the methodology in the particular case, and that the expert applied the methodology appropriately."). Any further criticisms go to the weight Stuckwisch's opinion should be given rather than its admissibility. *See Anderson v. Raymond Corp.*, 61 F.4th 505, 511 (7th Cir. 2023).

---

[1] Defendants object to Stuckwisch's declaration attached as an exhibit to Sonrai's response where she labels her methodology as the "before and after" approach. R. 706-1 ¶ 10. Stuckwisch stated during the *Daubert* hearing that it is not unusual for experts to exclude labels to their methodology in their reports. Labels are helpful, but not dispositive of whether an accepted methodology was employed.

Second, Defendants argue that Stuckwisch impermissibly premised her damages analysis on a single, counterfactual assumption: that all five of the haulers would have launched fleetwide rollouts of Vector. Defendants argue that there is no evidence to support this assumption, and that even if the assumption does derive from the evidence, she did not corroborate that assumption with other evidence. The Court addressed this issue in its summary judgment opinion, stating Stuckwisch explained the basis for her assumption and that the resolution of this issue is best left for the jury. *See* R. 657 at 19. What's more, her report stated that there was evidence of commitments made by third-party companies in the waste industry that they would have installed Vector on their entire fleet. R. 696-1 at 34. She also cited evidence that Waste Management and Progressive were considering rolling out Enhance—Heil's product that Sonrai claims is a copycat of Vector—for their entire fleets. *Id.* at 58. Further, during the *Daubert* hearing, Stuckwisch stated she considered the industrywide IBISWorld report to corroborate her fleet size inputs. Therefore, her assumption is based on evidence she reviewed and corroborated by an outside, industry source. The "soundness" of those factual underpinnings and Stuckwisch's ultimate conclusion based on those facts are matters left to the jury to weigh. *See Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1068 (7th Cir. 2013).

Third, Defendants argue Stuckwisch should be barred from testifying because she employed an "all-or-nothing" approach to damages where she failed to rule out or factor for alternative causes that contributed to Sonrai's lost profits, which is required by the AICPA. As detailed in the background section, Stuckwisch originally

7

attributed $59.4 million in lost profits indivisibly to Geotab, Heil, and Romano. After the Court granted summary judgment to Geotab, Stuckwisch amended her report but opined that the same amount of lost profits is attributable to Heil and/or Romano. Defendants contend that in doing so, Stuckwisch merely assumed all lost profits were caused by Defendants without accounting for other causes, like Progressive's own misconduct as alleged in a lawsuit Sonrai filed against Progressive, Geotab's conduct, Sonrai's decision to stop selling Vector, or, with respect to Progressive, Sonrai's own conduct. *See Zimmer, Inc. v. Stryker Corp.*, No. 3:14-CV-152-JD, 2018 WL 276324, at *4–6 (N.D. Ind. Jan. 3, 2018) (granting motion to exclude a damages expert's testimony because the expert merely assumed the lost revenues and profits were caused by defendants without considering the possibility they flowed from other non-actionable events).

When asked why the amount did not decrease with the dismissal of Geotab at the *Daubert* hearing, Stuckwisch explained that she calculated lost profits on a customer-by-customer basis, such that once a customer is lost, the entire revenue stream goes with it. R. 745 at 26, 51–55. Stuckwisch did not understand the Court's summary judgment opinion to say that any particular customer would not have been lost due to Heil and/or Romano's conduct. *Id.* at 27. She added that there is evidence that Defendants caused Sonrai to lose the customers independent of Geotab's conduct. *Id.* For example, Stuckwisch cited evidence that Romano downloaded Sonrai's data, made Progressive's data available to Heil without Progressive's authorization, and interfered with Sonrai's own dashboard for Waste Management.

8

R. 696-1 ¶¶ 103, 105, 113. Further, she cited evidence that after Romano's failed attempts to leverage his business relationships to acquire an ownership interest in Sonrai, he resigned and immediately started consulting with Heil to develop Enhance, the alleged Vector copycat. *Id.* ¶¶ 43–44. And it was these purported wrongful acts by Heil and Romano that she claims led to Sonrai holding off on its Vector sales efforts. R. 745 at 54–55. Regarding Sonrai's lawsuit against Progressive, Stuckwisch explained that it does not impact her damages. R. 696-6 at 16. In her view, her approach is not "all-or-nothing" because the jury can decide which customers, and their corresponding profits, were lost due to each Defendant.

Stuckwisch's methodology of calculating lost profits on a customer-by-customer basis is reasonable. And unlike in *Zimmer*, she does not merely assume that those lost profits were caused by Defendants, but instead connects their conduct to Sonrai's loss of customers. *See Turubchuk v. S. Ill. Asphalt Co.*, 958 F.3d 541, 554–55 (7th Cir. 2020) (expert supported his report with evidence and explained the "why" for his underlying opinion). Stuckwisch's opinion reliably applies the lost profits principles and methodology to the facts of the case and the Court will not prejudge the ultimate correctness of her conclusions. Her reasoning satisfies Rule 702's reliability standard. Defendants' criticisms can be explored on cross-examination.

Fourth, Defendants argue Stuckwisch's testimony is unreliable because her calculation of additional incremental operation costs, which are a necessary component of lost profits, was stricken by Judge Cummings and never included in any amended reports.

The Court agrees that Stuckwisch's testimony would be unreliable without the deduction of additional incremental operation costs. But precluding Stuckwisch from testifying about those additional incremental operation costs is not the appropriate remedy. Instead, the proper path forward was to allow Stuckwisch to supplement her report and allow Defendants to depose her on the new report, and supplement their own rebuttal report if they wished. They can cross-examine Stuckwisch at trial about her calculation of additional incremental operation costs and why she did not perform this calculation in her first report.

Defendants suffer no substantial prejudice from this approach. As an initial matter, Defendants have been on notice that Stuckwisch intended to reduce her overall incremental lost profits number by certain incremental costs since her 2021 Report. Stuckwisch reaffirmed that position in response to Defendants' questioning at subsequent depositions. In addition, the evidence underlying that calculation was produced during fact discovery and has been available to Defendants for years. Perhaps most critically, the inclusion of these costs *reduces* the overall lost profits figure. In this way, allowing Stuckwisch to testify to the additional incremental operation costs only serves to favor Defendants.

Defendants point out that the Court recently struck Heil's damages supplement because of it was late and urge the Court to do the same with Stuckwisch's additional incremental operation costs calculation. But Heil's damages supplement, which it produced one month before trial, had a never-before-seen damages calculation. In contrast, as described, the incremental costs Sonrai seeks to

10

add have been known to Defendants for years and Defendants have had multiple opportunities to examine Stuckwisch about them. In short, there is no surprise here.

Last, this opinion is being issued after a hearing held on June 9, 2025, where the Court preliminarily denied the *Daubert* motion. Since then, Stuckwisch issued a supplemental report and was deposed. On the day the trial began, Defendants raised three additional arguments to exclude Stuckwisch's testimony. First, according to Stuckwisch, she was told by Chris Flood, CEO of Sonrai, that his family's business—which has an annual revenue of over $100 million—would fund Sonrai's working capital requirements, so she assumed there would be no cost for working capital. Defendants contend this assumption is improper. However, this assumption was also made in her 2021 Report under the additional incremental operations costs section. R. 523-1 at 79. For the same reasons given above, Stuckwisch's testimony will not be excluded on this basis. Second, Defendants contend that Stuckwisch did not consider as an alternative cause Romano's ability to freely leave Sonrai. Defendants fail to articulate how this is an "obvious alternative explanation" that Stuckwisch failed to account for that calls her reliability into question. *See* Fed. R. Evid. 702 Committee Notes on Rules—2000 Amendment. Even so, an expert need not "rule out every alternative cause." *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 434 (7th Cir. 2013). Arguments about alternative explanations can be explored on cross-examination. *See In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, No. 14-cv-5696, 2017 WL 1196990, at *25 (N.D. Ill. Mar. 31, 2017). Third, Defendants argue that Stuckwisch improperly assumed in the but-for world that

11

Vector is a monopoly product and has no competition. As explained during her depositions and *Daubert* testimony, her assumption is based on the understanding that there was nothing in the marketplace that compared to what Vector offered. R. 696-4 at 18, 35; R. 745 at 31, 36–37. This assumption is reasonable, although certainly it can be challenged.

In sum, Sonrai has shown by a preponderance of the evidence that Stuckwisch's opinion meets the requirements of Rule 702. Her expertise will help the jury understand the evidence and make a determination on damages. Her testimony will be based on sufficient facts and data and is the product of reliable methods, namely the "before-and-after" methodology. And her opinion reflects a reliable application of that method to the facts of the case. *See* Fed. R. Evid. 702; *Manpower*, 818 F.2d at 297 (court's concern is the validity of the methodology, not the quality of the data or conclusions produced). The weaknesses that Defendants identify are the proper subject of "vigorous cross-examination [and the] presentation of contrary evidence." *Daubert*, 509 U.S. at 596.

## Conclusion

For all these reasons, Defendants' Rule 702 motion to exclude the testimony of Stuckwisch is denied.

ENTERED:

*Thomas M Durkin*
Honorable Thomas M. Durkin
United States District Judge

Dated: June 20, 2025