IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SONRAI SYSTEMS, LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 1:16-cv-03371 |
| ANTHONY M. ROMANO and HEIL CO. D/B/A/ENVIRONMENTAL SOLUTIONS GROUP, | District Judge Thomas M. Durkin |
| Defendants. | |

**DEFENDANT ROMANO'S RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW**

Defendant Anthony Romano renews his motion for judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50(b), and asks this Court to enter judgment in his favor disposing of all claims. In support of his motion, Romano adopts and incorporates by reference the Renewed Motion for Judgment as a Matter of Law filed by co-defendant Heil today (Dkt. 799) (the "Heil Rule 50 Motion"), specifically including the causation and damages arguments presented in the Heil Rule 50 Motion, which arguments apply equally to both Defendants.

Additionally, Romano is entitled to judgment as a matter of law because Sonrai failed to present sufficient evidence of Romano taking or using particularized, proprietary Sonrai data, as required to prove liability against Romano on the sole claim pled against him, for breach of fiduciary duty. For this reason also, Romano is entitled to judgment as a matter of law.

In the alternative, the Court should grant a new trial or remittitur, for the reasons set out in Defendants' Rule 59 motion, which is also being filed today.

**ARGUMENT**

Under Federal Rule of Civil Procedure 50(b), "the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b). "The standard for granting judgment as a matter of law mirrors the standard for granting summary judgment." *Beverly v. Abbott Labs.*, 107 F.4th 737, 748 (7th Cir. 2024). The Court's job is to "examine the record as a whole to determine whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, was sufficient to support the jury verdict[.]" *Hossack v. Floor Covering Assocs. of Joliet*, 492 F.3d 853, 859 (7th Cir. 2007) (affirming Rule 50 grant). "A mere scintilla of evidence supporting the jury's verdict will not suffice." *Id.* (citation omitted); *see also, e.g.*, *Perfetti v. First Nat'l Bank*, 950 F.2d 449, 452 (7th Cir. 1991) (vacating jury award where the plaintiff "presented almost exclusively indirect evidence" and "even that evidence was insubstantial" to sustain claim). Nor can a jury verdict rest on mere speculation or conjecture. *See, e.g.*, *Garrett v. Barnes*, 961 F.2d 629, 632, 634 (7th Cir. 1992) (affirming Rule 50 grant; "speculation cannot be the basis of a jury verdict").

I. **Romano is Entitled to Judgment as a Matter of Law because Sonrai's Singular Damages Theory is Legally Defective and its Causation and Damages Proof is Legally Insufficient.**

Setting aside the deficiencies with Sonrai's liability case against Romano, as discussed below, even if the evidence supported a finding that Romano breached a fiduciary duty owed to Sonrai (it does not), Romano is still entitled to judgment as a matter of law because Sonrai failed to offer sufficient evidence supporting a legally viable damages theory.

At trial, Sonrai pursued only one form of damages: lost profits that the Vector product would have generated "but for" (i) Romano taking confidential information from Sonrai in breach of his fiduciary duty, (ii) Romano then giving that confidential information to Heil, (iii) Heil then

using that confidential information to build a competing "copycat" product (identified as Enhance), and (iv) the Enhance product then diverting would-be Vector sales to Heil. Trial Tr. 990:22–991:13; 1006:11–19; 1009:2–1010:2 (Stuckwisch explaining her "but for" world). The jury subsequently awarded compensatory damages of $28,905,154 for these "lost" sales. The damage award cannot stand for at least three reasons, as more fully explained in the Heil Rule 50 Motion, and which reasons are equally applicable to both Defendants. Romano, therefore, adopts and incorporates the Heil Rule 50 Motion herein by reference.

**II.     The Fiduciary-Duty Claim against Romano Fails as a Matter of Law.**

Even if Sonrai's damages theory was legally coherent, and even if the jury had a legally sufficient basis on which to find causation and damages, the tort claim against Romano still fails, entitling Romano to judgment as a matter of law.

As explained above and in the Heil Rule 50 Motion, Sonrai's single damages theory requires a "but for" universe in which Romano *took* confidential material from Sonrai during his employment and *used* that confidential material to compete post-employment. While Sonrai aired various "breach" theories during trial – Romano talking to Heil in December 2015 about leaving Sonrai; Romano failing to return his computer post-employment – only one breach theory matches its "lost profits" damage case and thus could have constituted the basis for the jury's finding: the supposed "taking [of] confidential and proprietary information from Sonrai and using that information to assist in some way the development of a copycat product[.]" Trial Tr. 991:2–6 (Stuckwish); *see also, e.g.*, *United States Gypsum*, 2009 U.S. Dist. LEXIS 107179, at *13 (in the competitor context, a plaintiff "can have suffered actual economic loss only to the extent that its competitor [ ] ***actually used*** the information allegedly obtained through Defendants' breach of duty") (emphasis added). To prevail on liability against Romano, therefore, Sonrai must present

sufficient evidence of the *taking* and *use* of Sonrai's confidential material; it did neither, entitling Romano to judgment as a matter of law.

### A. Sonrai's "Taking" Theory Fails as a Matter of Law.

To prevail on its breach of fiduciary duty claim, Sonrai must first prove that Romano took particularized, propriety Sonrai data. *See, e.g.*, *Griffin Asset Mgmt., LLC v. Clark*, 2023 U.S. Dist. LEXIS 170959, at *13 (N.D. Ill.) ("Even though a claim based upon downloading confidential information remains theoretically feasible, the claim pled here fails" because plaintiffs "do not say what information [defendant] usurped" or "what information about the [third-party] relationship was confidential"). The data taken must be valuable and confidential, *i.e.*, something that "came into being only as the result of years of work and great expense, and which was, when it came into being, entirely unique, and in and of itself a source of sales and profit, was a definite, appreciable and valuable property right[.]" *Boylston Coal Co. v. Rautenbush*, 237 Ill. App. 550, 559 (1st Dist. 1925). Retaining data that is already known from experience, or that is otherwise lawfully obtainable, is not a breach. *See*, *Veco Corp. v. Babcock*, 243 Ill. App. 3d 153 (1st Dist. 1993).

Here, the jury heard evidence that Romano connected an external hard drive on December 13–14, 2015, and downloaded unspecified data while on-site at Progressive on January 8–9, 2016. *See, e.g.*, Trial Tr. 342:5–16; 343:21–24; 639:3–641:8. But Sonrai produced no evidence showing what data Romano actually downloaded, let alone establishing that Romano downloaded particularized, proprietary Sonrai information on either date. Sonrai's forensic expert could not tell the jury what was transferred or downloaded (*see* Trial Tr. 647:24–649:4). Keizer could say only that the Progressive download "was not ACES' or Sonrai's business." *Id.* at 342:20–24.

Critically, Sonrai provided no evidence even *suggesting* what particularized, proprietary Sonrai data Romano *may* have downloaded in December 2015 or at Progressive in January 2016.

4

Instead, Sonrai relied entirely on the adverse inference and the jury's imagination. The Seventh Circuit has warned against such unbridled use of an adverse inference:

> [Plaintiff] is thus left asking a jury to award damages based solely on speculation as to what *might* be contained in the destroyed documents. And if this type of broad adverse inference based on the destruction of evidence – standing alone – were enough to support a jury's damages verdict, a jury could hypothetically award a plaintiff any amount of damages based on any theory of liability. This would be antithetical to the purpose of adverse-inference instructions: sanctioning misconduct while *leveling* the evidentiary playing field.

*Epic Sys. Corp. v. Tata Consultancy Servs.*, 980 F.3d 1117, 1135 (7th Cir. 2020) (citations omitted). While the adverse inference advised the jury to "assume that such evidence would have been unfavorable to Romano" (Dkt. 772 at 19), the inference cannot create confidential data for Romano to steal, and it does not relieve Sonrai of its burden to prove its case.

Because Sonrai failed to identify any particularized, proprietary Sonrai data that Romano took before leaving Sonrai, Romano is entitled to judgment as a matter of law.

**B.    Sonrai's "Use" Theory Likewise Fails as a Matter of Law.**

Even assuming those downloads contained particularized data proprietary and valuable to Sonrai, there is still no evidence that Romano subsequently *used* such proprietary data to compete, by giving it to Heil or otherwise. *See* Dkt. 772 at 21 ("An employee breaches his fiduciary duty if he downloads or copies proprietary employer data during employment ***in order to compete*** with the employer after his employment ends.") (emphasis added).  Following nine years of litigation, Sonrai did not show the jury a single email in which Romano or anyone at Heil referenced proprietary Sonrai data, nor did Sonrai show the jury a single email (or any document) that otherwise indicated that Romano gave proprietary Sonrai data to Heil or that Romano or Heil used proprietary Sonrai data to compete. This absence of evidence is telling, since Heil was not found

5

to have spoliated evidence and in fact produced thousands of documents in the case, with "Romano" as an agreed search term.

Instead, Sonrai's "use" case relied on only one witness's firsthand testimony, Tyler Mantel, and here is the entirety of that testimony:

> Q. Just so it's clear, Mr. Mantel, was Mr. -- did Mr. Romano use Sonrai information know-how and data in the development of Enhance?
> A. Yes.

Trial Tr. 447:8–11. This is not enough to sustain the verdict. Mantel did not specify what "information know-how and data" he was talking about, or how and when Romano acquired it.

Mantel's failure to connect the dots matters, because under Illinois law, "it is **not a breach** to carry the skills, information, knowledge, acquaintances, and over-all experience acquired during the course of his former employment into future employment." Dkt. 772 at 21 (emphasis added). Romano was free to use the information and knowledge he acquired while working at Sonrai after leaving – that "use" does not support a breach. Sonrai needed to prove Romano improperly used something more, and Mantel's vague testimony does not do so.

That is why, in *Veco*, there was no breach based on the "removal of [a] customer list and [certain] underwriting files" where there was "no evidence" of "confidentiality for the documents removed or copied by defendants." *Veco Corp. v. Babcock*, 243 Ill. App. 3d at 163. On the contrary, the documents were "already well known to [the employee] based upon his knowledge" while employed by the plaintiff. *Id*. This makes sense: if company data is "subject to memory" or is "publicly listed or otherwise readily obtainable[,]" an employee "cannot be compelled to erase [that] from his mind." *Revcor, Inc. v. Fame, Inc.*, 85 Ill. App. 2d 350, 357 (2d Dist. 1967).

Similarly, in *Kalnitz v. Ion Exch. Prods*, "[a]lthough there [was] testimony that [the employee] took some of the customer data home[,]" there was no breach because "various"

6

employees had access to that customer data (undercutting confidentiality), and as to pricing data, the salesperson remembered those details "from his many years of experience selling for [plaintiff]." 276 N.E.2d 60, 63 (1st Dist. 1971). Was that pricing information in *Kalnitz* confidential to the former employer? Sure. But a former employee does not breach a fiduciary duty when he uses confidential information learned at his former employer to compete post-employment, in the absence of a restrictive covenant – which is not applicable here. Also not applicable here are the duties owed by an officer, because Romano was not an officer of Sonrai.[1] *See Oliver v. Isenberg*, 2020 IL App (1st) 181551-U, ¶ 88 (explaining that officers may not use "information acquired, while employed as an officer, to one's competitive advantage post-employment.").

In short, Mantel's non-specific, spoon-fed Q&A – answering "yes" to whether Romano used unspecified "Sonrai information know-how and data" while at Heil – was not legally sufficient to sustain a breach finding. It was Sonrai's burden to produce evidence tying Romano's pre-resignation downloads to *improper* competition under the law, and it failed to do so – pointing to no contemporaneous documents at all, despite an extensive discovery record.

The spoliation instruction is no solace here, either. As the Seventh Circuit observed in a similar context, it is not enough to present evidence that a spoliating party "downloaded information"; it must present evidence that the party "*actually used* this information" in a detrimental way. *Epic Sys. Corp. v. Tata Consultancy Servs.*, 980 F.3d at 1135 (affirming Rule 50 relief and damages vacatur in part). In other words, a party cannot rely on an adverse inference "to hold all the water for a finding that [the spoliating party] used other confidential information." *Id.*

---

[1] *See* June 10 Hr.'g. Tr. 7:18–8:9 (The Court: "Romano's title as vice president of Sonrai is irrelevant because he's neither a manager nor a member of the LLC."). This is a pure legal issue, and Sonrai offered no basis to revisit it.

at 1136. That lesson holds true here. Even with the spoliation instruction and Mantel's vague testimony, mere speculation does not satisfy Sonrai's burden of proving a breach of duty. *See, e.g.*, *Absher v. Momence Meadows Nursing Ctr.*, 764 F.3d 699, 713 (7th Cir. 2014) ("The jury's determination must be based in evidence – it cannot be based on mere speculation").

Mantel's other testimony – that Romano "logged into data systems that were Sonrai's in front of me" (Trial Tr. 440:20–25; *see also id.* at 441:1–8 (same effect, Romano "access[ed] a database")) – does not help Sonrai prove a breach, either. And neither does Mark Regan's related hearsay report – that Romano "showed [Kyle Kummer] how to look at Sonrai's system through a back door[.]" *See id.* at 496:15–497:3. By the time Romano was at Heil and supposedly accessing this "database" or "back door," Romano owed no fiduciary duty to Sonrai as a matter of law. *See* Dkt. 772 at 21 ("Once an employee leaves his employment, his duty of loyalty ends."). To be sure, actions like this may be the basis for a different tort or property claim, but that does not matter now – no such different claim was asserted at trial. It was Sonrai's burden to produce evidence that Romano did something impermissible under the theory pled, and it failed to do so. *Cf. e.g.*, *Anaya v. Birck*, 2024 U.S. Dist. LEXIS 87957, at *13–14 (N.D. Ill.) ("refusing to provide [property] post-termination" is not a breach; no "fiduciary duty is created merely because an employee possessed and refused to return information that its employer could not easily access").

Because Sonrai failed to show any improper use of particularized, proprietary Sonrai data, Romano is entitled to judgment as a matter of law.

**C.     Sonrai's Other Breach Theories Fail as a Matter of Law.**

That leaves Sonrai's other pre-resignation breach theories, which do not match the lost-profits damages case and thus fail for that reason. But even setting that aside, they fail for other reasons too.

8

1. **December 2015 Communications with Heil**

Romano's December 2015 communications with Heil do not support a breach of his fiduciary duties because no reasonable jury could conclude that they constituted unlawful competition at that time. Even assuming emails like PTX-50, PTX-53, and PTX-54 related to *post-employment* competition, the law is clear: an employee is free to "plan, form, and outfit a competing corporation" during his employment. *Veco* 243 Ill. App. 3d at 160; *Chicagoland Aviation, LLC v. Todd*, 2012 U.S. Dist. LEXIS 167796 at *13 (N.D. Ill.); *Voss Eng'g, Inc. v. Voss Indus.*, 134 Ill. App. 3d 632, 635–36 (1st Dist. 1985) ("Indeed, an employee may legitimately go so far as to form a rival corporation and outfit it for business while still employed"). Getting a new phone number and a new email address are proper – and understandable – too. *See* PTX-55 ("Got up at 4:15 this morning. New email address. Registered the domain: mswgis.com and setting up LLC.") The law allows and expects these things; after all, the "success of a person who is engaged in sales depends largely upon his personal friendships and the confidences inherent therein." *Prudential Ins. Co. v. McCurry*, 143 Ill. App. 3d 222, 226 (3rd Dist. 1986) (citation omitted). No rule of law forces an employee to wait until resignation to figure out his next move, or to abandon his business acquaintances forevermore; "[s]uch a rule would tend to destroy the freedom of employees and to reduce them to a condition of industrial servitude." *Mid-States Vending Serv., Inc. v. Rosen*, 77 Ill. App. 2d 83, 87 (1st Dist. 1966) (citation omitted).

There is no evidentiary basis for a breach finding based on this December 2015 correspondence, even if one had been tied to Sonrai's damages theory (it was not).

2. **Romano's Employment Ended on January 15, 2016**

To the extent Sonrai argues that Romano's duty of loyalty extended beyond his resignation on January 15, 2016, to February 4, 2016, based on a final Polk County project, in order to argue

9

that his January 18, 2016 consulting agreement with Heil (PTX-69) was a breach, the Court should reject that argument as a matter of law. The evidence is undisputed that Romano resigned on January 11, 2016 (DTX-103); the resignation was effective January 15, 2016 (DTX-237); and he completed an exit interview with Keizer on January 15, 2016 (Trial Tr. 692:3-4). Further, unrefuted evidence confirms that Romano's compensation and benefits ended on January 15, 2016; Sonrai had no direction or supervision over his subsequent Polk County work; he was free to complete that work as he saw fit; he set his own schedule; and he had to use what he considered to be his personal device to complete the work (further undercutting any non-pled suggestion that his failure to return the device by January 15 was a breach). *See* Trial Tr. 694:7–697:6; 743:21–744:22. That testimony stands unrebutted, and it allows only one finding: Romano was at most an independent contractor after January 15, 2016 through February 4, not an employee. *See, e.g.*, *Shoemaker v. Elmhurst-Chicago Stone Co.*, 273 Ill. App. 3d 916, 921 (1st Dist. 1994) (reversing judgment and holding as a matter of law that truck driver was not an employee where the entity "did not control the manner in which the job was done but rather specified the particular [ ] task" and "could not hire or fire" the driver directly); *Lang v. Silva*, 306 Ill. App. 3d 960, 973 (1st Dist. 1999) (free-lance status, nature of the payment, and working for other companies, all indicated independent contractor status). "The question [of employment status] may be decided as a matter of law . . . when the relationship is so clear as to be indisputable," as is the case here. *Lang v. Silva*, 306 Ill. App. 3d at 973. Allowing the jury to even consider that Romano's fiduciary duties might have continued beyond January 15, 2016, was error.

Further, Sonrai introduced no evidence that Romano's closeout work on the Polk County, Florida "project" to repay "an advance on some expenses" (Trial Tr. 332:20–333:7 (Keizer); *id.* at 567:2–19 (Flood)) made him an "employee." It defies logic to suggest that a company can accept

10

Case: 1:16-cv-03371 Document #: 801 Filed: 07/25/25 Page 11 of 12 PageID #:26483

a resignation, hold an exit interview, but request the completion of a one-off project to repay a personal debt, all the while seeking tort, punitive, and contract damages because the employee signed a consulting agreement with another firm post-resignation, post-exit interview. Neither common sense nor the law supports that view.

There is no evidentiary basis for a breach finding based on Romano's post-employment Polk County work, even if one had been tied to Sonrai's damages theory (it was not).

### III. The Court should Conditionally Grant a New Trial if it Grants this Motion.

In conjunction with resolving this motion, the Court must also "conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed." *See* Fed. R. Civ. P. 50(c)(1). Here, a new trial should be conditionally granted for all the reasons set out in Defendants' Rule 59 motion, also filed today.

### CONCLUSION

For the reasons stated herein and in the Heil Rule 50 Motion, the Court should enter judgment as a matter of law in favor of Romano (and Heil) on all counts.

Date: July 25, 2025                                                                 Respectfully submitted,

**Anthony M. Romano**

Nathan A. Hall (ARDC 6308423)
CHRISTENSEN HSU SIPES, LLP
224 S. Michigan Ave., Suite 1300                      By: */s/ Nathan A. Hall*
Chicago, Illinois 60604                                              *One of his attorneys*
Phone: (312) 634-1014

11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon all counsel of record on July 25, 2025 via the Court's electronic filing system.

>*/s/ Nathan A. Hall*
>*Counsel for Defendant Romano*